FILED
2011 Oct-07  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. – BIRMINGHAM, and PEMCO AIRCRAFT ENGINEERING SERVICES, INC.,** ) | Removed from the Circuit Court of Jefferson County, Alabama 11-903218 |
| **Plaintiffs,** ) | |
| **VS.** ) | Civil Action No. |
| **THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. and BOEING AEROSPACE SUPPORT CENTER,** ) | |
| **Defendants.** ) | |

### NOTICE OF REMOVAL

Defendants The Boeing Company, Boeing Aerospace Operations, Inc., and Boeing Aerospace Support Center (collectively, "Defendants") hereby remove the above-captioned matter from the Circuit Court of Jefferson County, Alabama to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1452.

### BACKGROUND

1.      On February 15, 2011, Alabama Aircraft Industries, Inc., Alabama Aircraft Industries, Inc.-Birmingham, and Pemco Aircraft Engineering Services, Inc. (collectively, "AAII") filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). *In re Alabama Aircraft Industries, Inc., et al.*, Case No. 11-10452 (PJW).  On September 6, 2011, the Bankruptcy Court

entered an order (the "Bankruptcy Court Order") granting AAII's motion (the "AAII Bankruptcy Motion") for, among other things, the formation of a litigation trust (the "Litigation Trust").

2.      The Bankruptcy Court Order purportedly authorized AAII to establish the Litigation Trust and vest certain causes (presumably those against Defendants) in the Litigation Trust.  (Bankruptcy Court Order ¶ 2.)  AAII purportedly vested these causes of action in the Litigation Trust, (Litigation Trust Agreement ¶ 2.1(a)), for the litigation trustee (the "Trustee") to investigate, prosecute, settle, or abandon, (*id.* ¶ 3.4(a).)  The Bankruptcy Court Order approved the Litigation Trust Agreement, (Bankruptcy Court Order ¶ 2), which provides that the Bankruptcy Court shall retain jurisdiction over "all issues arising under or related to" the Litigation Trust Agreement.  (Litigation Trust Agreement ¶ 11.8.)  Moreover, the Bankruptcy Court also retained jurisdiction "with regard to all issues or disputes in connection with [the Bankruptcy Court Order] and the relief provided for" therein.  (Bankruptcy Court Order ¶ 26.)

3.      On September 9, 2011, the Trustee commenced this action in the Circuit Court of Jefferson County, Alabama, asserting claims related to the award and operation of two federal defense contracts between Boeing and the Air Force: the FY08 Recompete KC-135 PDM Contract (Contract No. FA8105-07-D-0002, issued pursuant to Solicitation No. FA8105-05-R-0014); and Contract No. FA8105-05-D-0004 (the "Bridge Contract").  (*See, e.g.*, First Amended Complaint ¶¶ 84, 106, 107, 114-17.)   Under these federal contracts, Boeing conducts maintenance for the United States Air Force's KC-135 Stratotankers, which provide aerial refueling for tactical fighters and bombers in military operations.  The contracts are rated under the Defense Priorities and Allocation System, which "ensures the timely availability of industrial resources for approved programs and provides an operating system to support rapid industrial response to a national emergency." 15 C.F.R. § 700.1(d).

4.      AAII previously litigated a bid protest, twice before the United States Government Accountability Office and once before a federal court, challenging the award of the FY08 Recompete KC-135 PDM Contract to Boeing on various grounds.  Those grounds — many of which have been re-alleged in this case — included Boeing's alleged possession of non-public information during the procurement process, alleged misconduct by members of the Air Force, the Air Force's alleged failure to adequately evaluate Boeing's proposed pricing, and the Air Force's alleged failure to adequately consider Boeing's alleged ethical improprieties. *See Alabama Aircraft Indus., Inc. - Birmingham v. United States & The Boeing Co.*, 83 Fed. Cl. 666 (2008).  That final bid protest ultimately resulted in an order from the United States Court of Appeals for the Federal Circuit rejecting AAII's claims.  *Alabama Aircraft Indus., Inc.- Birmingham v. United States & The Boeing Co.*, 586 F.3d 1372 (Fed. Cir. 2009).

5.      AAII serves as a subcontractor on the Bridge Contract pursuant to a series of Repair Agreements with Boeing.  Those subcontracts explicitly incorporate "Air Force prime contract FA8105-05-D-004 flow down clauses," which are terms of Boeing's contract with the government that apply to Boeing's subcontractors, and numerous provisions of the Federal Acquisition Regulation.  (Repair Agreement 06-003, Dated 31 March 2008, Section XXII; Repair Agreement 06-003, Dated 05 November 2009, Section XXII.)

6.      Defendants were served with the Trustee's original Complaint on September 9, 2011, and with the Trustee's First Amended Complaint on September 22, 2011.

7.      This notice is filed within thirty (30) days of service of the Trustee's original Complaint, and thus is timely filed pursuant to 28 U.S.C. § 1446(b) and Federal Rule of Bankruptcy Procedure 9027(a)(3).  Pursuant to 28 U.S.C. § 1446(a) and Federal Rule of Bankruptcy Procedure 9027(a)(1), this Notice of Removal is filed in the United States District

Court for the Northern District of Alabama, the district and division within which the state court action was filed.

## BASIS FOR REMOVAL

8.    There are three separate and independent grounds for removal.  Defendants remove this action (a) pursuant to 28 U.S.C. § 1441 because there is federal question jurisdiction over Counts Five, Six, Seven, Eight, Nine, and Ten, 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over the remaining counts, 28 U.S.C. § 1367; (b) pursuant to 28 U.S.C. § 1452 because this action is "related to" AAII's bankruptcy under title 11, 28U.S.C. § 1334(b); and (c) under 28 U.S.C. § 1441 because there is complete diversity between the Trustee and Defendants, 28 U.S.C. § 1332.

### A.    Federal Question Jurisdiction

9.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Counts Five, Six, Seven, Eight, Nine, and Ten of the First Amended Complaint raise substantial questions of federal law.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

10.    The gravamen of the First Amended Complaint is a challenge to the award and operation of the FY08 Recompete KC-135 PDM prime contract and the Bridge Contract between Boeing and the Air Force.  Adjudicating the Trustee's claims will necessarily require resolution of several substantial issues of federal law, which are plainly stated on the face of the First Amended Complaint and will be actually disputed between the parties.  The federal courts have special competence in the areas of federal defense contracts and federal procurement law, and the exercise of jurisdiction over this case comports with the congressionally approved balance of federal and state judicial responsibilities.  *See Grable*, 545 U.S. at 313-14.

11.     The Trustee pleads ten counts, at least six of which expressly rely upon rights and duties premised on federal law.  *See* First Amended Complaint, Count Five, ¶¶ 165-170 (AAII's rights under Bridge Contract with Air Force); Count Six, ¶¶ 172-177 (AAII's rights and Boeing's obligations under Bridge Contract with Air Force); Count Seven, ¶¶ 179 (misconduct leading to wrongful award of prime contract, and obligations under prime contract), 183 (conspiracy with members of the Air Force during federal procurement process and in performance of defense contracts); Count Eight, ¶¶ 188 (rights under federal contract), 189 (possession of non-public information during federal procurement process in violation of federal Organizational Conflicts of Interest rules); Count Nine, ¶¶ 196 (conspiracy with members of the Air Force during federal procurement process and in performance of Bridge Contract), 199-201, 206 (unequal access to information in violation of federal Organizational Conflicts of Interest rules during federal procurement process), 203 (AAII rights under federal contract with the Air Force), 206 (misconduct by Air Force representatives); Count Ten, ¶¶ 208 (work performed "at the request of Boeing and/or the USAF" pursuant to federal contracts).

12.     Though the Trustee attempts to plead around federal questions, the First Amended Complaint is in fact replete with substantial issues of federal law.  Both in the counts and the factual allegations underlying those counts, the Trustee asks the court to decide numerous substantial questions of federal law.

13.     For example, in Count Eight, the Trustee asks the court to order specific performance under a federal defense contract, which plainly raises federal questions.  Specifically, the Trustee asks the court to order Defendants "to fulfill all of their obligations to Plaintiffs with respect to the 2008 Recompete KC-135 PDM contract, number FA8105-05-R-0014," a federal military contract awarded by the U.S. Air Force to Boeing.  (First Amended

Complaint ¶ 192.)  The Trustee further wants the court to order Defendants "to assign or share work on up to 50% of the KC-135 aircraft that Defendants receive for PDM work" under this federal military contract.  (*Id.*)  The Air Force awarded this contract to Boeing, not AAII, and AAII has already unsuccessfully attempted to win the contract through a challenge in federal court, where such challenges are properly brought.  Moreover, the bid proposals Boeing submitted to the Air Force, which were explicitly incorporated into the final prime contract, provided that Boeing would conduct the planned depot maintenance work – work that the Trustee now demands the court assign to AAII.  Because a court cannot grant the relief requested without fundamentally altering the government contract approved and entered into by the Air Force, this case raises a federal question.  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (applying federal common law to suit between private parties where imposition of liability could "directly affect the terms of government contracts").  If AAII could ever receive 50% of the benefit of a federal defense contract through an order of specific performance (and Boeing contends they cannot), that decision presents a federal question that not only confers federal jurisdiction but can only sensibly be resolved by a federal court.

14.     Another example is Count Seven, which requests that the court award to the Trustee "monies received by Defendants under the FY08 KC-135 PDM solicitation or contract number FA8105-05-R-0014," (*see* First Amended Complaint ¶ 184) – that is, to remit to the Trustee funds paid by the Air Force to Boeing under federal defense contracts for work that AAII did not perform.  If that were not a clear enough invocation of federal question jurisdiction, the Trustee goes on to allege that this claim for unjust enrichment turns on a conspiracy between Boeing and "certain representatives of the Air Force . . .  in the Defendants' scheme to unjustly enrich themselves and as part of such unjust enrichment, to deprive Plaintiff of its rightful role in

the FY2008 KC-135 PDM Program," a federal military contract awarded and entered into by the Air Force.  (*Id.* ¶ 183.)  The Trustee's allegations are a stalking horse for its claim (already rejected by the Federal Circuit) that AAII should have been awarded the prime contract instead of Boeing, who was allegedly "awarded the FY 08 KC-135 PDM solicitation number FA8105-05-R-0014" "as a result of [its] actions, misconduct, deception and suppressions of material fact."  (*Id.* ¶ 179.)

15.     Count Nine takes the allegation a step further, and seeks to establish a claim of fraud on the ground that Boeing "acted in concert and conspiracy with . . . representatives of the Air Force . . . to deprive Plaintiff of its rightful share of revenues from the 2008 Bridge Contract," another federal military contract.  (*Id.* ¶ 196.)  The Trustee alleges that the Air Force "[gave] Boeing inside knowledge of the development of a new PDM approaches [sic] that the Air Force did not publicly announce," (*id.* ¶ 78), and that "the Air Force representatives involved also kept silent about such activities and about communications and dealings between them and the Defendants,"  (*id.* ¶ 206).  It goes without saying that an alleged conspiracy between the United States Air Force and a bidder on a defense contract to deprive another bidder of its rights under federal law to compete for that contract presents uniquely federal questions sufficient to invoke this Court's jurisdiction.  Indeed, these federal questions will inevitably require testimony and discovery from United States Air Force witnesses and other federal officers—judicial process that properly should be conducted by a federal court.

16.     The allegations in the First Amended Complaint necessarily will require the court to determine the parties' respective rights and obligations under multiple contracts with the Air Force.  The Trustee alleges that Boeing has been unjustly enriched through the "[award of] the FY 08 KC-135 PDM solicitation number FA8105-05-R-0014" "as a result of [its] actions,

misconduct, deception and suppressions of material fact." (*Id.* ¶ 179.)  These allegations are a direct challenge to the validity of the award of the prime contract to Boeing in the first instance, a claim that belongs in federal court — and indeed, has already been litigated in federal court. *See Alabama Aircraft Indus., Inc.- Birmingham v. United States& The Boeing Co.*, 586 F.3d 1372 (Fed. Cir. 2009).  The Trustee further alleges that Boeing breached obligations owed to AAII under the Bridge Contract and has deprived AAII of "its rightful role in the FY2008 KC-135 PDM Program, solicitation number FA8105-05-R-0014."   (First Amended Complaint ¶¶ 165-170, 172-177, 179, 183, 188, 203.)  Interpretation of the federal prime contracts, such as determining Boeing's "good faith obligations" under the Bridge Contract, (*see id.* ¶ 173), will therefore be a necessary prerequisite to evaluating the Trustee's claims.  Federal courts use federal common law to evaluate government contracts, and disputes related to government procurement for military operations implicate a "'uniquely federal interest.'" *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006) (quoting *Boyle*, 487 U.S. at 506-07); *see also New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996).

17.     The Trustee's claims also will require interpretation of federal rules and statutes governing federal contract procurement.  The First Amended Complaint repeatedly challenges the propriety of Boeing's actions in ways that must be evaluated under standards set by federal law.  First, the Trustee alleges that Boeing engaged in extensive misconduct during the bid process, including, *inter alia*, that it "possessed non-public information," (First Amended Complaint ¶¶ 139, 189), and conspired with the Air Force, (*id.* ¶¶ 183, 196).  In fact, the Trustee explicitly alleges "possible procurement integrity violations by Boeing," (*id.* ¶¶ 83, 84), and the only such rules that apply to federal government contracting are federal regulations, not state ones.  *See* Federal Acquisition Regulation, 48 C.F.R. § 9.500-9.508 (organizational conflicts of

8

interest).  Not only are these issues uniquely federal, but AAII has already brought these claims in federal court, where they were fully and fairly adjudicated in Boeing's favor.  *See Alabama Aircraft Indus., Inc.- Birmingham v. United States & The Boeing Co*., 83 Fed. Cl. 666 (2008).  Those claims are no less federal now just because the Trustee is attempting to re-litigate them in state court.

18.     Second, the Repair Agreements between Boeing and AAII explicitly incorporate numerous provisions of the Federal Acquisition Regulation.  (*See, e.g.*, Repair Agreement 06-003, Dated 05 November 2009 (incorporating FAR 52.246-24, 52.246-25, 52.245-2, 52.245-17; DFARS 252.228-7001, 52.212-4).)  Even if the dispute arose solely from AAII's subcontracts with Boeing, and not from Boeing's prime contract with the Air Force, resolving the Trustee's claims would necessarily require interpretation and application of federal law.  *See Applied Cos. v. Lockheed Martin Librascope*, 211 F.3d 1272, 2000 WL 253718, at *1 (9th Cir. Mar. 6, 2000); *Danis Industries Corp. v. Fernald Environmental Restoration Mgmt. Corp.*, 947 F. Supp. 323, 325 (S.D. Ohio 1996).

19.     These federal questions are substantial because the claims and allegations set forth in the First Amended Complaint directly implicate the interests of the Air Force, and resolving the questions of federal law may create controlling precedent that would affect the government's ability to form and execute its contracts.  In particular, the Trustee's prayers for relief explicitly call for the court to issue orders directly affecting the terms and performance of U.S. government contracts with Boeing.  As stated in the First Amended Complaint, AAII bid for the PDM contract work and lost.  (First Amended Complaint ¶ 71.)  The Air Force has a substantial interest in whether that work is belatedly awarded – outside the bid and bid protest process prescribed by federal law – to a company that failed to win the work in the first instance,

particularly now that AAII has entered into bankruptcy and has purportedly sold substantially all of its operating assets to another company.  The United States in general, and the military in particular, has a significant federal interest in not having bid decisions re-litigated in a losing bidder's home-town state court with the attendant risk of inconsistent rulings and conflicting obligations on both the United States government and the parties that win federal government contracts.

20.    Adjudication of these claims in federal court is fully consistent with "congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313.  The core of the First Amended Complaint arises from federal procurement contracts for work involving U.S. military operations, and the attendant state law issues were triggered by the dispute over these federal contracts and the federal bankruptcy case, both of which fall squarely within the special expertise of the federal courts.  At the same time, exercising jurisdiction over this case would have "only a microscopic effect on the federal-state division of labor," because the context of this case is unusual.  *Grable*, 545 U.S. at 309. Resolution of these issues in federal court does not threaten to open the floodgates to requests to adjudicate garden-variety contract claims in federal court.  *See McMahon*, 410 F. Supp. 2d at 1202.

21.    The Court has supplemental jurisdiction over Counts One through Four under 28 U.S.C. § 1367.

## B.    Bankruptcy Jurisdiction

22.    Removal of the claims asserted in the First Amended Complaint is also proper under 28 U.S.C. § 1452(a) because this Court has jurisdiction over the Trustee's claims under 28 U.S.C. § 1334(b), which provides that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall

have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added).

23.     "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000) (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).  It is obvious that this action could affect the Trustee because, according to the Trustee (but strongly disputed by Defendants), the AAII bankruptcy estate is owed damages "in excess of One Hundred Million Dollars."  (First Amended Complaint ¶ 1.)  See *Carter*, 220 F.3d at 1254 (holding civil proceeding was "related to" bankruptcy because outcome could impact amount of estate property available to satisfy creditors); *see also In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 441-43 (S.D.N.Y. 2008) (state law claims brought by trustee on behalf of litigation trust were "related to" bankruptcy in part because any funds recovered would be distributed to creditors).  The claims asserted in the First Amended Complaint are also plainly "related to" the AAII bankruptcy estates under title 11 for several additional reasons including, without limitation, the following:

a)     The Litigation Trust itself is entirely a creature of AAII's bankruptcy. (Litigation Trust Agreement at 1.)  The Litigation Trust was authorized by the Bankruptcy Court pursuant to the Bankruptcy Court Order.  (*Id.*)  AAII purportedly vested in the Litigation Trust certain causes of action with the bankruptcy estates of AAII as a beneficiary.  (*Id.* ¶ 2.1(a).)  The claims asserted in this action are precisely those that AAII vested in the Litigation Trust.

b)     Given the magnitude of the alleged damages of approximately $100 million (which Defendants vigorously contest), the bankruptcy estates' interest in the Litigation

Trust is an important asset of the bankruptcy estates.  Consequently, the outcome of this action will directly affect the Bankruptcy Court's administration of AAII's estate.

        c)     The Bankruptcy Court Order approved the Litigation Trust Agreement, (Bankruptcy Court Order ¶ 2), which provides that the Bankruptcy Court shall retain jurisdiction over "all issues arising under or related to" the Litigation Trust.  (Litigation Trust Agreement ¶ 11.8.)  Moreover, the Bankruptcy Court also retained jurisdiction "with regard to all issues or disputes in connection with [the Bankruptcy Court Order] and the relief provided for" therein. (Bankruptcy Court Order ¶ 26.)  The claims asserted by the Trustee in this action are "related to" the Litigation Trust and many of the issues that the parties will raise, and the disputes between the parties in this action, are "in connection with [the Bankruptcy Court Order] and the relief provided for" therein.

        d)     The claims raised in the First Amended Complaint are premised on allegations of harm caused by Defendants with regard to the FY08 KC-135 PDM Contract, which the Trustee alleges "destroy[ed]" AAII's profits, (First Amended Complaint ¶ 1), and "cripple[ed]" AAII's ability to "continue its business." (*Id.* ¶ 1(6).)  While Defendants strongly dispute the allegations in the Trustee's First Amended Complaint, it must be noted for purposes of this petition that the Trustee cannot both allege that the claims underlying this action contributed to AAII's bankruptcy and also dispute that the claims are "relat[ed] to" the bankruptcy.

      24.     Accordingly, this action may properly be removed under 28 U.S.C. § 1452, which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has

jurisdiction of such claim or cause of action under section 1334 of this title."   28 U.S.C. § 1452(a); *see also* Fed. R. Bank. P. 9027.

25.     Counts One through Ten are non-core claims that are "related to" the AAII bankruptcy.  Defendants are removing such claims to a United States District Court and do not consent to the jurisdiction of a bankruptcy court.  Defendants do not waive any of their rights to a jury trial.  Defendants do not consent to the entry of final orders or any judgment by a bankruptcy court on these non-core claims without de novo review by a federal district court.  And, if the case is referred to the bankruptcy court, Defendants reserve the right to move the Court to withdraw the reference.

### C.     Diversity Jurisdiction

26.     Defendants also remove based on diversity jurisdiction under 28 U.S.C. § 1441.  Jurisdiction in this Court is proper under 28 U.S.C. § 1332 because the Trustee of the Litigation Trust, Joseph Ryan, is completely diverse from Defendants, and the amount in controversy exceeds $75,000.   (First Amended Complaint ¶ 1 (estimating "damages in excess of One Hundred Million Dollars").)

27.     AAII purportedly vested these causes of action in the Litigation Trust for Ryan to manage.   Under the terms of the Litigation Trust Agreement, Ryan has the authority to "investigat[e], prosecut[e], settl[e], or abandon[]" the causes of action purportedly vested in the Litigation Trust, (Litigation Trust Agreement ¶ 3.4(a)), and possesses the "discretion to pursue or not to pursue, and settle or not settle" the causes of action.   (*Id.* ¶ 3.3(c).)  It is Ryan, not AAII, who has the exclusive authority to bring the causes of action purportedly vested in the Litigation Trust.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) (diversity jurisdiction must be based on the citizenship of "real and substantial parties to the controversy" and must disregard nominal or formal parties).  Accordingly — and as the First Amended Complaint itself confirms

13

— because this action is brought "by and through[] Joseph Ryan as the trustee of the Litigation Trust," (First Amended Complaint at 1), Ryan is the real party to the controversy and his citizenship controls for purposes of determining diversity jurisdiction. *See Navarro*, 446 U.S. at 464 ("[T]rustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefits of others."); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 123-24 (2d Cir. 2008) (recognizing that for diversity purposes, trustee's citizenship controls where trustee is the "real part[y] in interest"); *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1370 (10th Cir. 1998) (same).

28.     Upon information and belief, Ryan is a citizen of Maryland.  Defendants are citizens of both Delaware and Illinois for diversity jurisdiction purposes.   Because Ryan and Defendants are completely diverse, and the amount in controversy exceeds $75,000, jurisdiction in this Court is proper under 28 U.S.C. § 1332.   (First Amended Complaint ¶ 1 (alleging "damages in excess of One Hundred Million Dollars.").)

29.     The facts of this case precisely illustrate the underlying purpose of diversity jurisdiction.  The First Amended Complaint does little to hide the Trustee's plan to incite a local jury in state court with inflammatory allegations concerning purported bad acts by Boeing, an out-of-state defendant, against a small local employer, AAII.  Indeed, the Trustee begins his complaint by painting a picture of Defendants as a "behemoth" that "exerted its massive financial power and position upon AAI, a relatively small military aircraft maintenance expert of long standing and good repute . . ." (First Amended Complaint ¶ 2.)  The First Amended Complaint is full of newspaper accounts, press releases, and other litigation involving Defendants' *alleged* activities, which are wholly immaterial to the action.  (*See, e.g.*, First

Amended Complaint ¶¶ 23, 26, 92, 94, 95, 96, 99.)  This transparent attempt to force an out-of-state party to litigate in a forum favorable to AAII while simultaneously attempting to generate local bias against Defendants goes to the heart of the purpose for diversity jurisdiction and further supports the propriety of removing this case to federal court.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74 (1938) ("[D]iversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the state.").

30.     As required by 28 U.S.C. § 1446(d) and Federal Rule of Bankruptcy Procedure 9027(b) and (c), a copy of this notice will be served on opposing counsel and filed with the Circuit Court of Jefferson County, Alabama.

31.     Pursuant to 28 U.S.C. §1446(a) and Federal Rule of Bankruptcy Procedure 9027(a), a copy of all process and pleadings filed in the Circuit Court of Jefferson County, Alabama, is attached hereto as Exhibit A.

Respectfully submitted,


/s/ R. Thomas Warburton
One of the Attorneys for Defendants


OF COUNSEL

Kevin C. Newsom, Esq.
R. Thomas Warburton, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone:    (205) 521-8000
Facsimile:     (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that on October 07, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I have also served the following parties by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing address:

J. Michael Rediker
Roger A. Brown
Patricia C. Diak
Meredith J. Lees
R. Scott Williams
Peter J. Tepley
Vincent J. Graffeo
HASKELL SLAUGHTER YOUNG & REDIKER, LLC
2001 Park Place, Suite 1400
Birmingham, Alabama 35203

/s/ R. Thomas Warburton
R. Thomas Warburton