FILED

2016 Jan-13  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM, AND PEMCO AIRCRAFT ENGINEERING SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. AND BOEING AEROSPACE SUPPORT CENTER,<br><br>Defendant. | CIVIL ACTION NUMBER:<br>2:11-cv-03577-RDP |

## REPORT AND RECOMMENDATION

Before the Special Master is AAI's "Motion to Compel Boeing to Testify on Plaintiff's Rule 30(b)(6) Topics 30-32" ("the Motion" or "AAI's Motion"), which was filed with the Special Master on October 9, 2015.  The Motion has since been fully briefed, with Boeing submitting a Response on October 23, 2015 ("Boeing's Response") and AAI filing a Reply on October 30, 2015 ("AAI's Reply").  For the reasons explained below, it is the recommendation of the Special Master that AAI's Motion be **GRANTED**.

## I.    FINDINGS OF FACT

1.    AAI served Boeing with a Rule 30(b)(6) deposition notice ("the Notice") on July 1, 2014.  AAI's Motion, Ex. A ("Plaintiffs' Notice of Rule 30(b)(6) Deposition of Defendant Boeing").

2.    The Notice identified forty (40) topics to be addressed at deposition, including the three (3) that are the subject of AAI's Motion, Topics 30-32. AAI's Motion, Ex. A.  The disputed topics read as follows:

> 30.    The Boeing personnel who asked for or who received any Pemco data from 2005-2006 in the course of any activity relating to the "Joint Recompete," the data that was requested of and/or received from Pemco, and the documents that reflect such requests and/or receipts of information.

> 31.    The Boeing personnel who asked for or who received any Pemco data from 2003-2007 in the course of any activity related to the "Pre-Bridge Contract (Prime F42620-98-D-0054)," the data that was requested of and/or received from Pemco, and the documents that

reflect such requests and/or receipts of information.

32.  The Boeing personnel who asked for or who received any Pemco data from 2003-2007 in the course of any activity relating to the "Bridge Contract (Prime FA8105-D-0004)," the data that was requested of an/or received from Pemco, and the documents that reflect such requests and/or receipts of information.

AAI's Motion, Exhibit A at 10.

3.  Topics 30-32 cut to the heart of Counts Three and Four of AAI's Third Amended Complaint (Doc. 97), exploring the "who," "what," "when," and "where" questions associated with the transfer of potentially proprietary information from Pemco to Boeing. AAI's Motion at 2.  As characterized by AAI, "[t]hese topics essentially cover one overarching topic—what Pemco data Boeing requested and received and who (out of a limited list of individuals) requested and received such data." AAI's Motion at 3.

4.  Since the Notice was issued in July 2014, the parties have negotiated over Topics 30-32, both as to the scope of their subject matter and the methodology to be used in eliciting the information sought by such.

AAI's Motion at 4.   Negotiations intensified in the spring and summer of 2015, with the parties exchanging numerous proposals as to Topics 30-32. AAI's Motion, Exs. H & I; Boeing's Response, Exs. 1-3.

5.     AAI submitted its last proposal ("the Proposal") to Boeing on July 28, 2015.  AAI's Motion, Ex. I.  The Proposal primarily concerned the "method" to be used in obtaining answers to Topics 30-32, with AAI suggesting a three-step process. AAI's Motion, Ex. I at 3-4.   Under the Proposal, Boeing would first provide AAI with a list ("List A") that identified (a) every person on its sixty-member Recompete Team that asked for or received Pemco data during the relevant periods, and (b) the type of information (out of eighteen data categories created by AAI) asked for or received by the identified persons.  AAI's Motion, Ex. I at 3.  AAI would then supply Boeing with a list ("List B") of Bates-numbered documents that it wished to cover at deposition, giving Boeing the opportunity to prepare one or more witnesses to (a) authenticate the identified documents, and (b) testify as to which persons from List A had access to the identified documents.  AAI's Motion, Ex. I at 3.  Finally, AAI would depose Boeing's designated witness(es), limiting its questions to the List B documents. AAI's Motion at 7.

6.     Evidently, the Proposal proved unacceptable to Boeing, and, as such, Boeing informed the Special Master on July 31, 2015 that the parties had reached an impasse as to Topics 30-32. AAI's Motion at 4.

7.     Consequently, AAI filed its Motion with the Special Master on October 9, 2015, Boeing submitted its Response on October 23, 2015, and AAI filed its Reply on October 30, 2015.

## II.    CONCLUSIONS OF LAW

For the reasons outlined below, it is the undersigned's legal conclusion that Boeing should be compelled to comply with AAI's Proposal, provided that the Proposal is modified in accordance with the limitations suggested by AAI in its Reply.

### A.    AAI Is Entitled To Live Corporate Testimony Regarding Topics 30-32

It should initially be noted that AAI is undoubtedly entitled to live testimony from Boeing's corporate representative(s) regarding Topics 30-32, contrary to the argument advanced by Boeing in its Response. Boeing's Response at 2 ("For a number of topics, however, where it is more practical and efficient, the parties have agreed to provide written lists in lieu of live witness testimony.  Such is the case here.").  Indeed, it is well-established that "[t]he Federal Rules of Civil Procedure do *not* permit a party served with a Rule 30(b)(6) deposition notice or subpoena request 'to elect to

supply the answers in a written response to an interrogatory' in response to a Rule 30(b)(6) deposition notice or subpoena request." *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (quoting *Marker v. Union Fidelity Life Insurance*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)) (emphasis added); *see also QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) (citing *Marker*, 125 F.R.D. at 127).

Likewise, Boeing cannot excuse itself from its 30(b)(6) obligation to provide live witness testimony by arguing—as it has here—that its document production speaks for itself.[1] *QBE*, 277 F.R.D. at 689 ("In responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position and that a corporate deposition is therefore unnecessary") (citing *Great American*, 251 F.R.D. at 540); *see also In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 172 & 174 (D.D.C. 2003).

In short, regardless of the Court's ultimate conclusion on the proper form or scope of AAI's 30(b)(6) inquiry, AAI is fundamentally entitled to live

---

[1] Boeing's Response at 12 ("In short, Boeing's extensive document production, resulting from the collection of documents from scores of Boeing custodians, is the best and most accurate source of the information Plaintiffs now seek.  Plaintiffs can go through those documents just as easily as Boeing can, and they cannot and should not be allowed to foist that burden onto Boeing in the guise of a 30(b)(6) deposition.").

testimony from Boeing's corporate representative(s) regarding Topics 30-32.

**B.    AAI's Proposal (As Modified By Its Reply) Is Permissible Under Rules 26(b)(1) and 30(b)(6) of the Federal Rules of Civil Procedure**

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." FRCP 26(b)(1).[2]

Here, Boeing attacks the permissibility of AAI's Proposal under FRCP 26(b)(1), arguing, in general, that the Proposal is overbroad and unduly burdensome. Boeing's Response at 4 & 7.  Specifically, Boeing advances seven lines of argument in opposition to the Proposal: (1) AAI has no justification for seeking information about eighteen categories of data when it previously identified only fourteen categories of "proprietary" data in its interrogatory responses (Boeing's Response at 4-6); (2) AAI is inappropriately and unnecessarily burdening Boeing by seeking information as to all sixty members of the Recompete Team, rather than the twenty-five

---

[2] Proportionality under Rule 26(b)(1) takes into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1).

individuals that Boeing has previously identified as having been "substantially involved" in the relevant bid (Boeing's Response at 6-7); (3) AAI's Proposal contains vague and unclear terms, potentially broadening the scope of the Topics' subject matter and exposing Boeing to open-ended examinations (Boeing's Response at 7-8); (4) no corporate representative could possibly be adequately prepared to testify as to the authenticity or possession history of the myriad of documents that are potentially encompassed by the Proposal (Boeing's Response at 8); (5) the Proposal amounts to an end-run around the fifteen-deposition limit on fact witnesses (*i.e.*, AAI is trying to employ Topics 30-32 to depose as many Recompete Team members as possible without having to use one of its allotted depositions) (Boeing's Response at 9); (6) AAI previously objected to similar discovery proposals by Boeing, making the Proposal the vanguard of a double standard (Boeing's Response at 9-10); and (7) AAI is most capable of obtaining the information sought by Topics 30-32 through examination of Boeing's document production (Boeing's Response at 11-12).

However, despite Boeing's protestations otherwise, AAI's Proposal clearly falls within the scope of discovery described by Rule 26(b)(1). Indeed, the information sought in Topics 30-32 (*i.e.*, the circumstances

surrounding Boeing's receipt and possession of Pemco data) goes directly to the sole theory buttressing Counts Three and Four of AAI's Third Amended Complaint (*i.e.*, Boeing impermissibly utilized proprietary Pemco data in support of its independent Recompete bid), making it exactly the sort of "relevant" information contemplated by Rule 26(b)(1).  Granted, the 30(b)(6) discovery sought by AAI in Topics 30-32 must also be "proportional," and it is the "proportionality" prong on which most of Boeing's arguments focus;[3] however, Boeing's arguments are largely ineffectual as to this issue, emphasizing the burden that Boeing will be saddled with as a result of AAI's Proposal, but failing to demonstrate how such a burden deviates from the proportionality required by Rule 26(b)(1) or the general corporate obligation created by Rule 30(b)(6).  *QBE*, 277 F.R.D. at 689 (citing *Great American*, 251 F.R.D. at 541 & *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 38 (D. Mass. 2001)) ("Preparing a Rule 30(b)(6) designee may be an onerous and burdensome task, but this consequence is merely an obligation that flows from the privilege of using the corporate form to do business.").

---

[3] As mentioned above, Boeing primarily argues that AAI's Proposal is overly broad and unduly burdensome, factors that are considered as part of Rule 26(b)(1)'s "proportionality" analysis by inquiry into "whether the burden or expense of the proposed discovery outweighs its likely benefit." Boeing's Response at 4 & 7; FRCP 26(b)(1).

For instance, Boeing alleges that it is unnecessarily burdened by AAI's insistence on seeking information as to all sixty members of Boeing's Recompete team (Boeing's Response at 6-7), and while it is a given that an expanded subject group will require a more taxing self-inquiry by Boeing, such a reality does not—absent a more particularized demonstration of the irrelevance of the discovery sought—permit Boeing to unilaterally dictate the bounds of AAI's discovery request.  (This is particularly true when the Proposal has built-in, burden-relieving mechanisms—*e.g.*, permitting the use of data categories in lieu of specific documents when identifying the extent of the Recompete team members' access to Pemco data).[4]

The Proposal's Rule 26(b)(1) permissibility is even more apparent when the clarifications articulated by AAI in its Reply are taken into account. AAI's Reply at 6-8.  Indeed, in its clarified form, the Proposal

_____

[4] It should be noted that Boeing's assault on the Proposal's use of eighteen data categories is—like many of Boeing's other arguments—a red herring, appearing more persuasive in its context-less presentation than in studied consideration. Indeed, a detailed comparison of the eighteen categories set forth in the Proposal and the fourteen categories identified in an AAI interrogatory response largely bears out AAI's representation that "the 18 categories, to the extent they do not mirror the 14 category names, are merely specific listings of subparts of the 14 categories." AAI's Reply at 4. Other unfounded arguments include Boeing's assertion that AAI is attempting "to circumvent the Court's 15-deposition limit to, in effect, fit 60 fact witness depositions into a 30(b)(6) deposition" (Boeing's Response at 9) (in reality, AAI is not trying to depose each member of Boeing's Recompete team, but is instead trying to get a sense of how each team member interacted with the potentially proprietary information received from Pemco) and Boeing's suggestion that the information sought by AAI is more readily attainable from Boeing's document production (Boeing's Response at 11-12) (*see supra* at 7, for the clear legal fallacy of this argument).

evinces numerous valuable limitations, all of which go a long way toward stemming the potential unwieldiness that plagued the Proposal in its original form.

Chief among these is a limit on the number of "document families"[5] that AAI can include on List B (*i.e.*, the list of document that are "fair game" at deposition). AAI's Reply at 7 ("AAI is willing to state, definitively, that it proposes that it will not identify more than 200 families of documents in 'Step Two' of its proposal . . ."). This cap on List B documents not only assuages Boeing's apprehensions about the open-ended potential of the Proposal,[6] but also begins to address Boeing's legitimate, practical concern about its ability to adequately prepare a corporate representative to testify as to the whole universe of potential documents.[7] Boeing's Response at 7-8.[8]

---

[5] According to AAI, "[a] document 'family' typically includes a parent email and its attachments." AAI's Reply at 7, n.3.

[6] "Plaintiffs in effect are asking for Boeing's open-ended commitment to provide binding 30(b)(6) testimony potentially on any and every document that has been produced in this litigation." Boeing's Response at 7.

[7] "No corporate representative could be adequately prepared to accurately answer questions regarding the vast and detailed information now encompassed by Plaintiffs' open-ended request." Boeing's Response at 8.

[8] The List B limit also heads off Boeing's argument that AAI's Proposal would create a double standard, which is based, in part, on AAI's prior objection to an open-ended discovery request from Boeing. Boeing's Response at 9-10.

To that end, AAI also clarified that it "is <u>not</u> requesting that Boeing identify each and every time thousands of pieces of information or data were transferred or transmitted," but rather is simply seeking to determine "who at Boeing would have had access to [List B] documents within Boeing between January 1, 2005 and September 7, 2007." AAI's Reply at 8.  Like the limit on List B documents, this clarification makes the corporate representative's task of preparation less daunting; furthermore, it helps blunt Boeing's argument that AAI's prior objections to similar discovery requests created a double standard.[9] Boeing's Response at 10.

Finally, the permissibility of AAI's Proposal is bolstered by the stated boundaries of Rule 30(b)(6), which limits the required testimony of corporate representatives to "information known or reasonably available to the organization." FRCP 30(b)(6).  AAI explicitly recognized this inherent limitation in its Reply,[10] and Boeing should view its obligations under the

---

[9] "The unfairness of Plaintiffs' proposed double-standard is highlighted further by the fact that Plaintiffs now seeks information from Boeing beyond that which Boeing has ever requested from Plaintiffs.  Boeing's Interrogatory No. 2 asked only for information that was exchanged from Pemco to Boeing, but Plaintiffs' proposal goes even further, demanding testimony not only regarding the exchange of information from Pemco to Boeing, but also detailed information regarding any additional transfer of information *within* Boeing." Boeing's Response at 10 (emphasis added).

[10] "Rule 30(b)(6) only requires a corporation to produce information and testimony that is 'known or reasonably available' to the corporation.  That is all AAI seeks here." AAI's Reply at 6.

Proposal within this context as well.   Because AAI's modified Proposal offends neither Rule 26(b)(1) nor Rule 30(b)(6), it is the legal conclusion of the undersigned that AAI's Motion should be granted.

## III.   RECOMMENDATIONS

For the reasons outlined above, the undersigned makes the following recommendation to the Court:

- AAI's Motion should be **GRANTED**.   Boeing should be compelled to comply with AAI's Proposal, with the caveats that AAI will (1) include no more than two hundred document families on List B, and (2) limit its examination questions about those documents (aside from authenticity) to who at Boeing had access to the documents during the relevant period (as opposed to the entire internal transfer history of the documents).

Respectfully Submitted,

s/David J. Middlebrooks
David J. Middlebrooks ASB- 8553-D58D

OF COUNSEL:
LEHR MIDDLEBROOKS VREELAND
  & THOMPSON, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002
Fax: (205) 326-3008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

s/David J. Middlebrooks
OF COUNSEL

504826