# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM, and PEMCO AIRCRAFT ENGINEERING SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. and BOEING AEROSPACE SUPPORT CENTER, <br><br> Defendants. | Removed from the Circuit Court of Jefferson County, Alabama <br><br> Case No. 2:11-dv-03577-RDF <br><br> OPPOSED |

### BOEING'S MOTION TO ENFORCE DISCOVERY AGREEMENT AND COMPEL TENNENBAUM CAPITAL PARTNERS TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD FOR PRIVILEGE

Tennenbaum Capital Partners, LLC ("TCP") has withheld more than 1,500 documents from Boeing on the basis of privilege, but TCP's privilege logs show that many of these documents ***cannot*** be privileged, based on the facts in TCP's privilege logs.  TCP claims privilege for communications with people who were never its employees or lawyers, and it claims work product protection over lawsuits that never involved or could have been reasonably anticipated to involve TCP.  TCP claims privilege over communications with AAI's lawyers, Kaiser Aircraft's lawyers, and lawyers for the Plaintiff litigation trust, even while TCP's counsel is categorically proclaiming "TCP has no interest in Kaiser Aircraft whatsoever" (Exhibit C at 3) and "TCP never owned any interest in AAI (or in KAII, for that matter)."  (Exhibit D).  Moreover, Mr. Wilson, who was the subject of the Special Master's Report of January 28, also appears throughout the privilege log, though it is never clear whether TCP alleges him to be acting as TCP's lawyer, Mr. Tennenbaum's lawyer, AAI's lawyer, or Kaiser's lawyer.  The privilege log also lacks the detail necessary to determine what "hat"—whether lawyer, businessman, advisor, board member, or some other—Mr. Wilson is wearing for the particular communications at issue.

The Special Master has already emphasized that "[i]t is easy to lose track of the party making the underlying privilege assertions when faced with the panoply of related entities, directors, officers, and shareholders that populate the Tennenbaum universe."  (Doc. 180 at 4).  TCP's privilege log demonstrates exactly how complex—and convoluted—the privilege claims within the Tennenbaum universe are.  TCP's privilege claims are not the claims of a disinterested third party.  Indeed, the only unifying characteristic that Boeing can discern among TCP's claims of privilege with various third parties is that all of them are adverse to Boeing.

1

Boeing requests[1] an order requiring TCP to produce the documents improperly withheld for privilege.

I.    BACKGROUND

Boeing served a subpoena on TCP on February 18, 2015. (Exhibit E).[2] The parties commenced a long-running negotiation about document production. TCP produced some data on April 10 as an initial production to allow Boeing to determine what documents TCP might have. (Murtagh Letter, Exhibit F). Boeing used these records to provide a list of search terms and custodians. (Exhibit G). TCP later proposed a different set of custodians, which Boeing accepted. (Exhibit H).

The parties continued to negotiate, though TCP did not produce any more documents under the subpoena. As it became clear that TCP had a very large volume of responsive documents, the parties deadlocked over several issues such as cost-shifting, TCP's relationship to the issues in the case, and changes to the protective order. Boeing took the position that TCP and its employees were closely related to AAI and Kaiser, but TCP disputed this position by stating that it had no past or present interest in KAII or the lawsuit. (Exhibit C).

Just as Boeing was preparing motion practice, TCP ultimately proposed to produce documents to Boeing under an agreement instead of Boeing's subpoena. TCP proposed the custodians that would be covered by the production, proposed the dates on which productions would occur, and drafted the agreement that Boeing ultimately signed on November 12, 2015.

---

[1]    As it did with its Motion to Compel regarding Kaiser Aircraft, Boeing brings this motion to the Court directly. Boeing has no objection to having this motion referred to the Special Master and is providing the Special Master an electronic copy of this submission at the time of filing.

[2]    TCP challenged service in the Southern District, so Boeing served the same subpoena on TCP in the Central District on March 5, 2015. (Exhibit O).

2

(Doc. 170-1). The agreement was executed in Alabama and called for production of documents in Alabama—where the documents and privilege logs were, in fact, produced.[3] (*Id*. at 2–3). TCP also requested changes to the protective order, and Boeing proposed those changes to the Court. (Doc. 170). The Court entered the revised protective order on December 3, 2015. (Doc. 172).

TCP then produced hard copy documents by U.S. Mail on November 30 and electronic documents on December 22. With each production letter, TCP was clear that it was producing documents under its agreement with Boeing, not Boeing's subpoena. (Exhibits I and J).

Boeing received TCP's two privilege logs on January 19: a log for electronic documents (the "ESI privilege log," Exhibit A) and a log for hard-copy documents (the "hard copy privilege log," Exhibit B). On January 29, Boeing sent a letter to TCP challenging several of the privilege assertions and requesting further information, such as how TCP contended that its communications with AAI could be privileged and what litigation it was anticipating. (Exhibit K). Specifically, Boeing raised issues with four categories of documents: (1) documents TCP sent to or received from several non-TCP employees who worked for or represented AAI, Kaiser, or other entities; (2) documents sent to or from Chris Cox, a lobbyist for AAI; (3) documents TCP withheld under the work product doctrine, even though TCP has not been a party to any litigation related to this matter and has not otherwise identified what litigation it anticipated to justify withholding documents on that basis; and (4) documents involving Mr. Wilson, as TCP's descriptions of the documents involving Mr. Wilson are too vague to allow Boeing to determine the propriety of the privilege assertion. (Exhibit K at 1–2).

---

[3] Notably, TCP missed both of the production deadlines it proposed. The hard copy production arrived in Boeing's possession on November 30, ten days late. The email production was sent on December 22, 13 days late and 4 days beyond the extended deadline that TCP requested. In addition, all the productions were sent by U.S. Mail, which caused significant delays. The production dated November 30, for example, did not arrive until December 14.

Even though Boeing's letter provided TCP with the names of the persons affected by Boeing's privilege challenges, TCP responded by requesting that Boeing identify specific log entries that Boeing challenged. (Exhibit L). Boeing provided such a log on February 5. (Exhibit M). TCP then wrote back that it would not be producing the documents or communications in the first disputed category—the documents sent to AAI and others. (Exhibit N at 2). It agreed to look into production of the documents related to Mr. Cox, but has not yet produced them. (*Id.*). It did not agree to produce any documents withheld under the work product privilege, and did not identify any additional facts to support the numerous work product assertions in the log. (*Id.*). Instead, it requested that Boeing identify which items in TCP's log claim work product. (*Id.*). As to the documents related to Mr. Wilson, it indicated that it might agree to produce a supplemental privilege log "if we believe it to be warranted," but only after Boeing identified every document on which Mr. Wilson appears. (*Id.*).

Mr. Tennenbaum is scheduled to be deposed in this case on February 25, 2016. He is either a sender or recipient of a large number of these documents.

## II.   ARGUMENT

In the absence of any other fact, the sheer size of TCP's privilege logs is sufficient to show how central TCP is to this case. The privilege logs TCP produced run more than 110 pages. The ESI log alone contains 1,467 entries. TCP plainly possesses a large volume of materials for people who were involved in important matters relevant to this litigation. Indeed, many people on this privilege log appear on AAI's initial disclosures: Michael Tennenbaum, Doris Sewell, General Tom Richards, and Ron Aramini. Randy Shealy, a 30(b)(6) witness for AAI and a corporate representative who has been present at many depositions, appears frequently as well. Based on

what Boeing has seen, none of these people work for TCP, so the privilege does not extend to them.

As in all matters relating to privilege, the party asserting the privilege bears the burden of showing that the privilege applies to a particular document or communication. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013).

### A. TCP's communications with non-TCP employees and lawyers are not privileged.

TCP casts the attorney-client privilege far beyond its proper scope. As the Special Master has already recognized, communications must be confidential to fall within that privilege. (Doc. 180 at 6) (quoting *In re Grand Jury Proceedings 88-9*, 889 F.2d 1039, 1042 (11th Cir. 1990)). Moreover, "it is generally accepted that 'a client's and his attorney's communications are not deemed confidential when made in the presence of a third party.'" (*Id.*) (quoting *United States v. Gordon-Nikkar*, 518 F.2d 972, 975 (5th Cir. 1975)). "[T]he presence of a third party who is neither an attorney nor a co-defendant or co-plaintiff waives the attorney client privilege because the communication is no longer confidential." *Giraldo v. Drummond Co., Inc.*, 2012 WL 1340068 at *2 (N.D. Ala. Apr. 17, 2012) (Proctor, J.).

TCP's privilege log is replete with claims involving third parties and their lawyers. The following examples are just from TCP's ESI privilege log:

- **AAI Employees**: TCP claims privilege on hundreds of communications involving Randy Shealy, Ron Aramini, and Leah Barnett, all of whom worked for AAI, not TCP.

- **Non-TCP Board Members**: TCP claims privilege with Skip Bowling, Bob Joyal, General Ron Yates, and General Tom Richards who served on the boards of AAI or Kaiser Aircraft, but did not work for TCP.

- **Non-TCP In-House Lawyers**: TCP claims privilege on hundreds of communications involving Doris Sewell, who served as AAI's general counsel and works for Kaiser Aircraft, but has did not hold any position at TCP.

5

- **AAI Outside Lawyers**: TCP identifies communications with the lawyers who served as AAI's outside counsel in the bid protest litigation involving AAI, the Air Force, and Boeing. They include David Hazelton, Kyle Jefcoat, and Benjamin Wei.

- **Kaiser Outside Lawyers**: TCP claims privilege over communications involving the lawyers that represented Kaiser Aircraft in AAI's bankruptcy—Thomas Patterson and Ronn Davids. Kaiser's lawyers set up the litigation trust that is the plaintiff in this case.

- **Kaiser Employees**: Other Kaiser Aircraft employees and directors are also on the privilege log, such as Nicholas Burokow and Douglas McMinn.

- **Litigation Trust Representatives**: TCP even claims privilege on five communications with plaintiffs' counsel in this case and six more with the trustee of the plaintiff litigation trust.

TCP's privilege simply does not extend to these non-TCP people. They are third-parties to TCP and communications with them cannot satisfy the confidentiality element. These lawyers represent other entities or persons. These individuals work for other firms or serve on other boards. Anything conveyed to or received from them is not privileged and any privilege that had previously attached was waived.

Indeed, the positions TCP has taken in its correspondence leading up to production confirm that TCP's relationship with these persons and entities is not sufficient to render TCP's communications with them privileged. TCP asserted that Boeing "misperceive[ed] that TCP and Michael Tennenbaum are one and the same. They are not." (Exhibit C at 2). TCP maintains that TCP is "a separate, ongoing entity from Mr. Tennenbaum or the plaintiff." (*Id*.). When Boeing alleged a connection between TCP and Kaiser Aircraft, TCP fired back that the argument was "*far* too attenuated to even respond to. TCP has *no* interest in Kaiser Aircraft whatsoever." (*Id*. at 2–3) (emphasis added). TCP made clear that it has "*no* direct or indirect interest in *any* recovery in your litigation." (*Id*. at 3) (emphasis added).[4]

---

[4] These are not isolated quotes. As further examples, TCP also asserted that it "is a third party far removed from the issues in the underlying litigation with no interest in the outcome of the litigation….", (Exhibit C. at 3), and that "TCP never owned any interest in AAI (or in KAII, for that matter)", (Exhibit D at at 1).

6

These categorical assertions cannot be reconciled with TCP's privilege assertions related to these entities. TCP claims privilege on hundreds of documents where Mr. Tennenbaum is operating independently of TCP—either as a board member of AAI or Kaiser or for his own account. (*See* Doc ID 4305[5] (relating to the litigation trust); Doc. ID 1844 (relating to board minutes for AAI); Doc. ID 4021 (relating to pleadings and discovery in this case)). TCP claims privilege for communications involving AAI's board. (*See, e.g.,* Doc IDs 1975, 4547, and 9100.) Moreover, TCP claims privilege on hundreds more communications with AAI and KAII personnel. (*See, e.g.,* Doc ID 895.). Having disclaimed "any interest" in AAI or KAII, these claims simply cannot stand.

The Special Master has already found that no common interest privilege exists between plaintiffs and TCP. The extensive "interconnectedness" among the entities in the Tennenbaum universe "constitutes nothing more than a shared commercial interest" that was insufficient to render certain documents from Mr. Wilson privileged. (Doc. 181 at 9). The Special Master made this finding even though plaintiff was emphasizing the close relationship between TCP and AAI. (*See id*. (citing AAI's Response at 10–11)). Here, where TCP is emphasizing the *lack* of a shared interest, the Special Master's previous conclusion is all the more obviously correct.

Boeing requests an order requiring production of the documents on TCP's privilege logs that were sent to or received from any of the following people: Doris Sewell; Randy Shealy; Ron Aramini; Skip Bowling, Gen. Tom Richards; Gen. Ron Yates; Bob Joyal; Leah Barnett; Thomas Patterson, Ronn Davids; David Hazelton; Kyle Jefcoat; Benjamin Wei; Nicholas Burakow; Douglas McMinn; Joseph Ryan, or any of AAI's lawyers in this case.

---

[5] These references, and all references to documents by "Doc ID," are to TCP's ESI privilege log. The Doc ID is found in the second column from the left.

### B. TCP wrongly claims work product protection over documents that were not created in anticipation of any litigation involving TCP.

Despite its categorical denial of any involvement or interest in this lawsuit, TCP claims work product protection over 381 documents that are directly related to this case and litigation that came before it—116 on the hard copy privilege log and 265 more on the ESI privilege log. To fall within work product protection, a document must have been created in anticipation of litigation. FED. R. CIV. P. 26(b)(3)(A). TCP does not identify any litigation that it anticipated or in which it participated. TCP certainly has not been involved in any litigation with Boeing—whether in this case or in previous litigation (which appears to be the subject of many of the work product claims based on the people involved). The Special Master has already found as much: "neither Tennenbaum nor TCP were parties to the various stages of litigation between AAI and Boeing…." (Doc. 181 at 10). With no identified anticipated litigation, TCP's documents categorically cannot have work product protection. *See*, *e.g.*, *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (finding no work product protection applied to documents created by third party that did not anticipate litigation involving the third party); *Galambus v. Consol. Freightways Corp.*, 64 F.R.D. 468, 473 (N.D. Ind. 1974) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action.").[6] All of the work product claims should be rejected.

Moreover, the information provided in TCP's privilege log falls well short of what would be necessary to establish that a particular document actually falls within the privilege. Consider three examples:

---

[6] *Accord Davis v. Carmel Clay Schools*, 282 F.R.D. 201, 205 (S.D. Ind. 2012); *Chaney v. Slack*, 99 F.R.D. 531, 533 (S.D. Ga. 1983).

- Control Number 06595-0697[7] claims a privilege over a draft letter to be sent by Senators Sessions and Shelby and Representative Bachus to the Secretary of the Department of the Air Force. It is dated in 2006. For what litigation was this prepared? At whose direction? And how does a letter from elected officials to Air Force representatives fall within the privilege or relate to litigation at all?

- Control Number 011994-96 shows that Michael Tennenbaum prepared a chronology. Who directed him to do it? For what case or "legal proceedings"? For which entity?

- Control Numbers 013615 and 013616–19 are even more bare-bones. TCP gives no authors, no recipients, no connection to litigation, no hint of the documents' contents or purposes, and no idea of how or why these documents came to be. "Attachment to 6/1/09 email (above). W/P." That's it—and that's not enough.

These kinds of work product assertions (which are mere examples) are not sufficient to carry TCP's factual burden of establishing that the privilege actually applies to particular documents. TCP *never* identifies *any* specific litigation it anticipated, and—to the extent the litigation at issue involves Boeing—***TCP has never been involved in litigation with Boeing***. Moreover, without adequately describing the factual bases for its work product claims, TCP has not properly invoked the privilege, even granting the counter-factual assumption that TCP actually anticipated being involved in the litigation at issue.

### C. TCP's communications with Chris Cox of Navigators Global are not privileged.

TCP claims privilege as to seven documents involving Chris Cox, a lobbyist retained by AAI. (Doc IDs 1866, 2427, 2469, 2568, 2721, 4680, and 14213). The Special Master has already found that "lobbying efforts" are "a non-legal matter" and that communications regarding them are not privileged. (Doc. 180 at 16). As explained in Boeing's pending motion to compel AAI to produce documents related to AAI's lobbyists, no privilege applies to documents sent to a lobbyist and these documents are not privileged. *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y.

---

[7] These documents are from TCP's hard copy privilege log. The control number is found in the left-hand column.

9

2010) ("Courts would have no hesitation in allowing otherwise appropriate discovery of lay lobbyists [among others]. There is no sound reason for reaching a different result where someone with a law degree engages in similar activities."); *U.S. Postal Service*, 852 F. Supp. at 164 ("Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege."); *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986) (finding documents related to lobbying efforts not privileged, even though the lobbying efforts were "coordinated by the legal department."). All the arguments raised in that motion apply here, but with even stronger force because there is no evidence that Mr. Cox ever served as TCP's lobbyist.

### D. TCP's existing descriptions of Mr. Wilson's documents are too vague to support TCP's claims of privilege.

Lastly, TCP has not adequately supported any of its hundreds of privilege claims where the involvement of Mr. Wilson forms the basis for TCP's assertion. Mr. Wilson has already provided a declaration that he viewed himself as a lawyer for each of (1) TCP; (2) Mr. Tennenbaum personally; and (3) AAI. (Wilson Declaration at ¶¶ 4–9). TCP's privilege log accounts for none of these distinctions. Instead, as far as Boeing can tell, TCP has taken the categorical position that the mere participation of Mr. Wilson on a communication renders the document privileged as to TCP. For example, Control Number 07548–49 in the hard copy privilege log is a communication from Mr. Wilson to Mr. Tennenbaum, and the subject is "legal advice with regard to ongoing matter." What ongoing matter? And was Mr. Wilson giving advice as Mr. Tennenbaum's lawyer? If so, TCP's strong disclaimers with respect to Mr. Tennenbaum make the privilege claim impossible—TCP has strongly maintained that Mr. Tennenbaum and TCP are separate, so TCP does not have a privilege because the document is not confidential as to TCP or Tennenbaum. Was Mr. Wilson giving advice as a board member of AAI? If so, the privilege claim is likewise

10

untenable given that TCP has disclaimed any interest in AAI.  Was Mr. Wilson providing advice for Mr. Tennenbaum in connection with this lawsuit?  Or Kaiser?  Or the Litigation Trust?  Or TCP?  Was Mr. Wilson providing legal advice at all, or was he (as the Special Master found as to many of the documents over which AAI asserted privilege) providing non-legal advice?  The answers to these questions are necessary to determine the validity of TCP's privilege claim, and yet TCP has not given any of the information.

This is just one example out of hundreds and hundreds.  Mr. Wilson appears more than **1,900** times between TCP's two privilege logs.  Every one of those entries need to be clarified or the underlying document produced.

When plaintiffs took the same categorical position, the Special Master correctly found it untenable: "the very nature of the attorney-client privilege… requires a document-by-document analysis as to whether the attorney involved is actually acting as an attorney in that specific instance."  (Doc. 180 at 15).  The same rule should apply here.  TCP's obligation is to provide information sufficient to identify which documents TCP claims are privileged because Mr. Wilson was providing legal advice to TCP.  It should produce the rest.

### III.  CONCLUSION

Boeing requests an order requiring TCP to produce[8]

- The documents on TCP's privilege logs that were sent outside of TCP,
- The documents sent to Chris Cox,
- The documents for which TCP claims work product protection, and

---

[8] Boeing believes it has identified most, if not all, of these documents in the spreadsheet attached to Exhibit M, but requests an order that applies to the categories of documents, not just a list of entries.  The sheer size of TCP's privilege log makes it very difficult to confirm that all relevant entries have been identified.

- The documents related to Mr. Wilson in which Mr. Wilson was not providing legal advice to TCP.

As to the documents for which TCP claims that Mr. Wilson was providing legal advice to TCP, Boeing requests an order requiring TCP to produce supplemental privilege logs that substantiate its claims of privilege as to those documents.

Respectfully submitted this 11th day of February, 2016.

                                             /s/ R. Thomas Warburton
                                             One of the Attorneys for Defendants

**OF COUNSEL**
Kevin C. Newsom
R. Thomas Warburton
J. Thomas Richie
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800


Craig S. Primis, P.C. (*pro hac vice*)
Matthew E. Papez, P.C. (*pro hac vice*)
Erin C. Johnston (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

## RULE 37(A)(1) CERTIFICATE

      I hereby certify under Rule 37(a)(1) of the Federal Rules of Civil Procedure, that, prior to filing this motion, Boeing had in good faith conferred with TCP in an effort to resolve this matter without action by the Court, but was unable to resolve it without Court assistance.

                                                  */s/ R. Thomas Warburton*
                                                      R. Thomas Warburton

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Michael Rediker
Meredith J. Lees
Peter J. Tepley
Rebecca A. Beers
RUMBERGER, KIRK & CALDWELL, P.C.
Park Place Tower
Suite 1300
2001 Park Place North
Birmingham, Alabama 35203
(205) 721-2814

Joshua D. Lerner
RUMBERGER, KIRK & CALDWELL, P.C.
Brickell Bayview Centre
Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
(305) 995-5416

*Counsel for Alabama Aircraft Industries, Inc.*

and I further certify that I have sent by electronic mail and United States Postal Service first-class mail, postage prepaid, the document to the following non-CM/ECF participants:

Christopher A. Matthews
QUINN EMANUEL
865 South Figueroa Street
10th Floor
Los Angeles, California 90017-2543
(213) 443-3261

*Counsel for Tennenbaum Capital Partners*

and I further certify that I served the following party by hand delivery and certified mail, return receipt requested on

Tennenbaum Capital Partners
2951 28th Street
Suite 1000
Santa Monica, California 90405

                                                 */s/ R. Thomas Warburton*
                                                     R. Thomas Warburton