FILED
2016 May-13  PM 07:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| ALABAMA AIRCRAFT INDUSTRIES, INC.,<br>ALABAMA AIRCRAFT INDUSTRIES, INC. –<br>BIRMINGHAM, and PEMCO AIRCRAFT<br>ENGINEERING SERVICES, INC., | ) ) ) ) ) | |
|     Plaintiffs, | ) ) | **Case No. 2:11-cv-03577-RDP** |
| v. | ) ) | |
| THE BOEING COMPANY, BOEING<br>AEROSPACE OPERATIONS, INC., and<br>BOEING AEROSPACE SUPPORT CENTER, | ) ) ) ) | |
|     Defendants. | ) | |

**PLAINTIFFS' OBJECTION TO BOEING'S PLAN TO REOPEN
FACT DISCOVERY IN RESPONSE TO ITS SUBPOENA TO KAISER**

In accordance with the Special Master's April 22, 2016 Report and Recommendation, *see* Doc. 212 at 4, the Plaintiffs ("AAI") respectfully submit this Objection to Defendants'/Boeing's Response to AAI' and Kaiser Aircraft Industries, Inc.'s ("KAII") April 27, 2016 accounting of its searches and production in response to Boeing's discovery requests and Boeing' subpoena to Kaiser (the "KAII Subpoena"). For the reasons set forth below, Boeing is not entitled to the broad reopening of fact discovery that it now seeks at this late date.

**I.      INTRODUCTION.**

**A.      Overview of the Reasons Why Boeing's "Plan" or "Remedy" Should Be Rejected.**

    <u>Boeing's request to reopen fact discovery at this late date is not based upon actual facts.</u> AAI and KAII together submitted approximately 35 pages of a narrative accounting and hundreds of pages of listings of unproduced, irrelevant documents to the Court in response to the Special Master's Report and Recommendation that AAI and KAII "provide Boeing with a detailed accounting of KAII's records and their respective searches of the same." Doc. 212 at 2.

*See* Docs. 214 and 215. Despite all of the factual information and evidence contained in those submissions, Boeing has skipped over, misconstrued, mischaracterized, or perhaps even purposefully ignored much of the information that AAI and KAII provided to it and the Court. It is difficult to conceive how Boeing could make the statements and accusations that it makes in its May 4, 2016 submission if it had read AAI's and KAII's April 27, 2016 submissions and if Boeing had reviewed AAI and KAII's document productions in this action. Boeing's submission evidences a clear (or else tactics-driven) misunderstanding of AAI and KAII's document retrieval and search efforts and their resulting document productions. To be clear, as shown hereafter, both sides settled upon not disclosing search terms (and prior to the discovery cutoff, Boeing never requested AAI search terms). Yet, despite the foregoing, AAI has provided Boeing and this Court with all (and the only) search terms that it has ever used in keyword searches in this case, and no data or documents in this case have been lost. Indeed, the only KAII server that is currently non-functional is the email server that has already been thoroughly searched using the search terms that have already been disclosed to Boeing. Based on the parties' correspondence and AAI's April 27, 2016 submission, none of this information should have been news to Boeing.

Boeing's broad requests for new discovery are not relevant to the issue before the Court, which is whether KAII possesses relevant documents responsive to the KAII Subpoena that have not already been produced by AAI or KAII. *See* Doc. 206, ¶ 1. Based upon its mischaracterizations of the record detailed hereafter, Boeing now proposes that AAI and KAII undertake brand new searches that encompass scores of terms and topics that are clearly irrelevant to the claims and defenses involved in this action and are **facially unresponsive to the KAII subpoena – which is the _only_ discovery that is at issue here**. In proposing its "plan" or

"remedy," Boeing seeks to reopen broad discovery in this action, long after the fact discovery cutoff, that is both untimely and wholly unrelated to the KAII subpoena. The only discovery still at issue with regards to the KAII Subpoena are the previously-defined Litigation Trust Documents (which do not seem to be addressed at all in Boeing's proposed "plan" or "remedy") and the AAI Financial Documents. KAII has already produced a number of non-privileged Litigation Trust Documents in response to the KAII Subpoena. Moreover, AAI has already shown that the relevant Pemco/AAI financial documents have been produced, *see e.g.*, Doc. 214 at 14-21, and this fact is bolstered by the fact that only a very tiny portion of Boeing's proposed custodians and search terms are even targeted toward AAI Financial Documents that are covered by the KAII Subpoena. For these reasons, Boeing's proposed "plan" or "remedy" appears to have gone "off the rails" as to furthering any effort to ensure that all relevant documents responsive to the two categories of the KAII Subpoena at issue have been produced. It is clear that Boeing is now seeking an untimely (post-fact discovery cutoff) fishing expedition without any basis in fact.

Boeing's proposed "plan" or "remedy" calls for searching a server that has already been searched without providing an adequate basis – or any real basis in fact – for such redundant and time-consuming efforts at this late stage of the case. The server that Boeing proposes be searched in its "plan" or "remedy" is one server (out of seven that have been searched) that only stores AAI emails and attachments and that has in fact already been searched extensively using a set of search terms that AAI provided to Boeing and the Court in its April 27, 2016 submission. *See* Doc. 214 at 4-5. Boeing's "plan" (1) would reopen wide fact discovery; (2) would re-search an email server that has already been searched using already-disclosed search terms; (3) is not and would not be **targeted to retrieve documents that are actually covered by the KAII Subpoena and that have not already been produced**; and (4) would not "remedy" any issues

3

with AAI's document production, as no such "issues" exist. Boeing failed to identify any specific ways in which a new search of KAII's already-searched historical email server would solve any alleged "holes" in AAI's **financial** document production. Any restoration and re-searching of this email server would constitute overly broad and unduly burdensome, costly, untimely, and irrelevant discovery not permitted under the Federal Rules of Civil Procedure and would only serve to delay this case further.

Boeing's reliance on search terms in its proposed "plan" or "remedy" is rather amazing given Boeing's actions regarding search terms during discovery in this case. For instance during the seven-hour 30(b)(6) of Doris Sewell and the multiple letters concerning AAI's responses to Boeing 30(b)(6) Topic 40, Boeing *never* asked about AAI's search terms. In addition, Boeing has never provided AAI with its search terms and indeed initially objected to AAI's 30(b)(6) Topic 4 inquiring into Boeing's gathering, searching, and production of documents, claiming that information responsive to that topic – which would ostensibly include Boeing's search terms – would constitute protected attorney work product information. It is a fact that during the three years of discovery up through the fact discovery cutoff date (February 29, 2016), the parties basically arrived at a mutually-observed arrangement where document custodians would be identified by one party to the other and then searches of such custodians' documents (and identified servers) would be made, *without* the parties agreeing upon or disclosing search terms. In a complex case, there are two ways to go, and a level playing field and reciprocity principle comes into play:  either (as here) the two sides can exchange lists of custodians they wish to have searched, without listing of specific search terms (*i.e.*, relying upon the general concept of "responsiveness"); or (as was not done here), the two sides can meet and confer and reach agreement upon not only custodians but also negotiated and proportional search terms as a means

of addressing "responsiveness." AAI demonstrates below that the first alternative method of proceeding described above is what was used here by the parties up through the fact discovery cutoff. Boeing is not entitled to change the rules of the game after the final discovery buzzer has sounded, and thus its proposed "remedy" should not be permitted here.

**B.      AAI's Efforts to Get This Case Back on Track.**

While AAI maintains its position that the documents listed in the exhibits to its April 27, 2016 submission are not relevant to the claims and defenses in this action, AAI is already well into the process of producing the (additional and still irrelevant) documents that Boeing requested from those lists (with the exception of privileged documents and documents containing irrelevant personal information) in an effort to be cooperative and move this case along. AAI is also producing its financial report for the months in the first quarter of 2011 – **the one and only additional document** Boeing claimed was missing from AAI's document production – even though Boeing never requested such document from AAI. *See* Doc. 214 at 22. This first quarter 2011 information is not a Form 10-Q as Boeing asserts. As AAI has previously noted, it did not file or create any 10-Qs, which are a type of SEC filing for listed public companies, after it delisted in 2009. In addition, AAI has ascertained that the financial documents that were in the data room related to the bankruptcy sale, *see* Doc. 214 at 27-28, have either been fully produced by AAI and/or KAII or else are bankruptcy filings that Boeing received in the AAI bankruptcy case and which Boeing can pull off of Pacer just as easily as AAI can. Accordingly, Boeing already has in its possession or has unfettered access to the data room financial documents listed in AAI's submission. While AAI has shown a willingness to be cooperative to get this case moving again, AAI does, however, object to Boeing's attempt to reopen wholesale discovery in this case under the guise of seeking discovery responsive to the KAII Subpoena, particularly

when the server at issue has already been searched using disclosed search terms. AAI, which is already complying with Boeing's second and third requests in its proposal, *see* Doc. 219 at 16, objects to restoring a server that has already been searched and using Boeing's overbroad search terms to re-search that server, particularly when the search terms would return massive numbers of documents that are both generally irrelevant and **specifically not responsive to the KAII Subpoena**.

## II.   THE REASONS WHY AAI OBJECTS TO BOEING'S PROPOSED "PLAN" OR "REMEDY."

### A.   Boeing's Proposed "Plan" or Remedy" Is Based Upon Misrepresentations and Ignores AAI's Submission and Prior Representations.

Boeing attempts to justify its "plan" or "remedy" through the repeated use of misrepresentations and by ignoring AAI's submission and prior representations. Accordingly, it is necessary for AAI to correct the record. AAI respectfully submits the following to correct Boeing's misrepresentations regarding AAI and KAII's submissions to the Court and AAI's prior representations and extensive accountings regarding its production.

1.   **Boeing represents: "Neither Kaiser nor AAI provided search terms"** in their April 27, 2016 submissions, and "AAI does not know what search terms were used because counsel did not preserve them." Doc. 219 at 5.

   **Fact: As shown its April 27, 2016 submission, AAI knows what search terms were used in its retrieval of documents and indeed provided the only search terms that it ever used in searching for and retrieving documents and information from KAII's servers.** *See* **Doc. 214 at 4-5.**

Boeing states over and over again in its submission to the Court that AAI promised that it would provide search terms but failed to do so and that AAI has "lost" or did not record what search terms it used in searching KAII's servers for documents responsive to Boeing's discovery requests to AAI. *See, e.g.*, Doc. 219 at 1 ("AAI and Kaiser admit between them that AAI has no record of the search terms it used to search Kaiser's servers . . . ."); at 5 ("Neither Kaiser nor AAI

provided search terms" in their April 27, 2016 accounting, "and AAI admits for the first time that—despite its April promises—it does not know what search terms were used because counsel did not preserve them."); at 5 (functionality problems regarding KAII's "servers" "exacerbate[e] the loss of AAI's search terms"); at 6 ("Kaiser's and AAI's April 27 submissions contain shocking admissions. AAI admitted for the first time that ***it has no record of the search terms it used to gather documents from Kaiser***.") (Boeing's emphasis); at 6 (searches KAII relies upon "are the same undocumented searches that AAI admits it cannot substantiate and of which it has no records"); at 7 ("AAI also represented that it would provide search terms, which it should have known it could not do."); at 7 ("AAI's lack of documentation for its searches makes it impossible for AAI to defend the reasonableness of the searches it is relying on as a substitute for Kaiser's compliance with Boeing's subpoena."); at 7 ("If AAI cannot document its searches, then that searching becomes a black box . . . "); at 9 ("Apparently, AAI never even checked to see if it knew or could determine what search terms were used, all the while accusing Boeing of going on a fishing expedition and freely certifying about the comprehensiveness of what had been searched. Now we know that the search terms were not recorded."); at 9 ("Both the admitted loss of AAI's search terms and the apparent loss of Kaiser's documents during this litigation call for a remedy.").

While, for the vast majority of these representations, Boeing offers no citation to anywhere in KAII or AAI's papers where such an "admission" is allegedly made, the lone citation that Boeing does occasionally offer is a general citation to page 2 of AAI's Special Master-ordered accounting of its document search, review, and production activities. Notably, Boeing does not quote from or give any specific reference to where on page 2 of AAI's submission it contends that AAI makes such an admission. This is because AAI does not make

any such admission. Counsel for AAI has read and re-read page 2 of its April 27, 2016 submission, and the closest it could come to any sort of "admission" to which Boeing may be referring on that page is the following statement (which AAI quotes in full because the full quotation reveals Boeing's misrepresentations):

> When AAI's counsel began requesting and reviewing documents for this case over five years ago, they did not know and could not have reasonably anticipated that they would be required to account for their efforts and, therefore, did not contemporaneously keep records of what counsel *did* **on each occasion** when searches were made or documents were retrieved or reviewed, in such a manner to facilitate a later detailed accounting so long after the fact.

Doc. 214 at 2 (emphasis added). AAI does not state in this sentence or anywhere else in its April 27, 2016 submission that it does not have a record of the search terms that were used to examine KAII's servers for documents to produce in response to Boeing's discovery requests. AAI simply stated that it does not have "**records of what *counsel did* on each occasion when searches were made or documents were retrieved or reviewed**." *Id.* (emphasis added). AAI is unclear as to how Boeing could have legitimately interpreted this to mean that AAI conducted keyword searches of its electronic servers and yet failed to record or retain those search terms. That is not what the sentence says, and Boeing's imagined scenario did <u>not</u> occur.

Moreover, Boeing repeatedly states that AAI did not provide any search terms in its April 27, 2016 submission. *See* Doc. 219 at 1, 5, 7, and 9. Those statements are patently false. Beginning on page 4 and continuing onto page 5 of its April 27, 2016 submission, AAI sets out the list of search terms that were used in its keyword searches of KAII's email server to obtain emails and attachments responsive to Boeing's discovery requests. *See* Doc. 214 at 4-5. Despite Boeing's erroneous assertions, it simply cannot be disputed that AAI did in fact provide its search terms to the Court and to Boeing in its April 27 submission.

The search terms that AAI indisputably provided to Boeing and to the Court in its April

27, 2016 submission are **the only search terms that exist**, as they were the only search terms that were used to conduct keyword searches of any of KAII's servers in response to Boeing's discovery requests to AAI. While, at the direction of counsel, former AAI employees did "search" or review KAII's servers and electronic files for responsive documents, those searches of AAI's electronic records stored on KAII's servers were conducted "manually," in that counsel for AAI and former AAI employees with knowledge of AAI's files discussed the categories of documents that had been requested by Boeing and the types of AAI documents that would be responsive to those requests, along with other general categories of relevant documents, and the former AAI employees, sometimes with counsel present, "searched" or reviewed KAII's servers manually (*i.e.*, without keywords but rather personally reviewed the relevant file structures, file names and folders) and pulled the responsive and potentially relevant folders and documents and provided them to counsel for review and production.[1] Clearly, in document production, searches can be completed electronically using search terms and also by labor-intensive manual document reviews (in hard copy and for ESI by reviewing files on a computer screen). AAI, under direction of counsel, employed both methods of searching, which actually was cumulative in many instances. Manual searches were not constrained or limited by any "search term" list. Any inference by Boeing that the aggregate of AAI's searches (*i.e.*, when viewed in combination) was conducted in such a manner as to miss relevant and responsive documents is unfounded.

Other than the ones provided to the Court and to Boeing, no other search terms have ever existed, and thus there were no other search terms to provide. Boeing's unfounded arguments and

---

[1] Boeing engages in wild conjecture about AAI's searches of its documents by stating, "[a] troubling possibility exists that the searches run were slanted towards AAI's theory of the case and there is no way to go back and search the whole body of documents again." Doc. 219 at 9. This theory is belied by the facts – Boeing and the Court have access to the search terms that were used in the only keyword searches that were used (for AAI's emails on KAII's email server), and counsel for AAI directed manual searches of AAI's other electronic files based upon the specific categories of documents Boeing requested from AAI.

contentions otherwise are false.

> **2.** **Boeing represents:** In the meeting between the Special Master, Boeing, KAII, and AAI on April 15, 2016, "Boeing and the Special Master were informed for the first time . . . that there was a Kaiser server that may not be able to be powered up." Doc. 219 at 4.
>
> > **Fact:** AAI informed Boeing without delay that the KAII server on which AAI's emails were stored had experienced a technical failure precluding AAI from obtaining additional emails from it "for the first time" in correspondence dated February 8, 2016 – mere days after KAII and AAI learned of this server failure. *See* R. Beers Feb. 8, 2016 Correspondence to T. Warburton (attached hereto as Exhibit C) at 1-2.

This misrepresentation in Boeing's submission is puzzling. As AAI stated in its April 27 submission, in December 2015 and January 2016,

> at Boeing's request, Plaintiffs searched for additional emails for Eddie Dillard, Ernie Dykes, Gloria Godwin, Ken Martin, Betty Pass, Jeff Townsend, Rick Windsor, Robert Gardner, Larry Walden, Mark Logan, Jackey Pierce, Ray Wournell, Steve Miller, and Randy Pigg. Randy Pigg and Steve Miller's ghost images contained some emails and relevant, non-privileged emails were produced. On February 8, 2016, we informed Boeing that Plaintiffs could not produce additional emails for some of the former employees listed because of a failure with the server; however, additional emails were produced for Mark Logan in December 2015.
>
> FN 12 As Plaintiffs previously informed Boeing, emails to and from these former employees had already been produced from Plaintiffs' email searches in 2013. Plaintiffs were only unable to produce a small number of additional emails for these employees that were searched for as a result of specific requests from Boeing in the fall of 2015. A server failure sometime in January 2016 precluded Plaintiffs from being able to produce these additional emails for these specific former employees.

Doc. 214 at 14, n.12. AAI emails were stored on one particular server at KAII, which is <u>one of seven servers (including the later-failed server) that AAI searched for ESI in response to Boeing's discovery requests</u> (however, the email server was the only server that was searched via a keyword search utilizing a set of targeting search terms). *See* Ex. A at 34 (AAI's final written response for 30(b)(6) Topic 40 explaining that seven (7) different servers were searched for responsive documents). AAI's search of the other six servers' contents was extensive, labor-

intensive, and time-consuming and was not constrained by any list of terms. Rather, AAI's search of Kaiser's non-email servers was conducted via manual reviews for anything "relevant and responsive" to Boeing's requests, as Boeing's requests so specified.

As noted in AAI's submission, counsel for AAI sent a letter to Boeing on February 8, 2016, informing Boeing that the production of emails from the additional searches that AAI had already performed at Boeing's request was going to be cost-prohibitive because there had been a very recent failure of that email server.[2] *See* Ex. C. Boeing's counsel obviously received and read this letter, as Boeing responded to AAI's February 8, 2016 letter on February 26, 2016. *See* Warburton Feb. 26, 2016 Ltr. (attached hereto as Exhibit D). Accordingly, AAI cannot understand why Boeing would, two and a half months later, represent to the Court that AAI and KAII's discussion of the faulty email server in the April 15, 2016 conference was a disclosure that AAI had made "for the first time at that meeting." Doc. 219 at 4. Indeed, Boeing's counsel did not express any shock or surprise at this discussion on April 15, 2016, *see* Trans. of April 15 Meeting at 94:8-95:15 (cited at Doc. 219 at 4), which makes sense, as counsel for Boeing had received and responded to the February 8, 2016 letter in which this email server failure had previously been disclosed.

Boeing's accusations that AAI and KAII failed to alert Boeing to this problem in a timely fashion are nonsensical. Boeing contends that it is "frustrat[ed]" because, in its words, "AAI and

---

[2] Boeing uses loose language in referring to the KAII email server which is currently experiencing technical problems. In its submission, Boeing variously characterizes this server as a single server, *see, e.g.*, Doc. 219 at 2 (Boeing requests that "Kaiser and AAI . . . restore AAI's server at their expense" and that KAII "never indicated that there was a problem with the server"), 3 ("neither AAI nor Kaiser indicated that there was a server that was unable to be searched"), 4 ("there was a Kaiser server that may not be able to be powered up"), yet in other places Boeing hyperbolically refers to multiple potentially unworkable servers in the plural, *see, e.g.*, *id.* at 1 ("the information on Kaiser's servers may be lost"), 5 ("***Phase 3: broken servers, no search terms, and not all relevant and responsive documents***") (Boeing's emphasis), 5 ("Exacerbating the loss of AAI's search terms, Kaiser admits that it does not know if its servers are still functional . . . ."), 9 ("If Kaiser cannot search its servers, further inquiry may be necessary."). **To make the record clear and to clarify for Boeing – as it appears to be confused – there is only one KAII server that is experiencing technical difficulties in being "powered up" and that is the email server that holds AAI's historical emails and that has already been subjected to a thorough keyword search, as counsel for AAI previously informed Boeing on February 8, 2016.** *See* Ex. C at 1-3.

Kaiser have not been forthright about the facts." Doc. 219 at 8. The support that Boeing offers for this accusation is not fact-based and is simply inaccurate. Boeing reiterates its untruthful argument about "lost" search terms in support of its allegations against AAI, *see id.* at 9, which is belied by AAI's submission providing the only search terms that were ever used in this case, *see* Doc. 214 at 4-5, and by the facts surrounding AAI's search of KAII's servers, *see* discussion *supra*. As the second faulty pillar in its argument that "AAI and Kaiser have not been forthright about the facts," Doc. 219 at 8, Boeing misrepresents the facts and misquotes KAII's counsel. If anyone deserves to be frustrated here, it is AAI and KAII, not Boeing.

Boeing first states that "Kaiser could easily have said 'our server is broken and we don't know if we can fix it' over a year ago." *Id. See also id.* at 2 (stating that in a May 2015 letter, "Kaiser described the data that could be found on the server, including the size of the data contained thereon, but never indicated that there was a problem with the server"). This statement would have been "easy" for KAII to make as Boeing suggests only if KAII had had access to a crystal ball or a fortuneteller in 2015 because the failure of KAII's email server did not occur until sometime in January 2016, as AAI informed Boeing in correspondence on February 8, 2016 and as AAI and KAII informed the Special Master at the April 15, 2016 conference and in their April 27, 2016 submissions. *See* Ex. C at 1 (stating that "the server that these [Boeing-requested] emails are stored experienced a catastrophic technical failure due to events outside of AAI's control" after the server was searched in December 2016); Doc. 214 at 14 n.12 ("A server failure sometime in January 2016 precluded Plaintiffs from being able to produce these additional emails for these specific former employees."); Doc. 215 at 3 ("As previously reported to counsel for the parties and the Special Master, the server containing emails and electronic information of KAII and AAI will not power up."). Boeing also goes on to say that "Kaiser apparently never

turned the server on to check and see what documents are on it" before the April 15, 2016 conference with the Special Master, but this wild and untrue accusation is simply false based on the facts – which Boeing *knew* at the time of the April 15 conference and at the time that it filed Document 219. *See* Ex. C. This statement from Boeing seems to imply that KAII has a "broken" server that has never been searched – which is simply not the case, as the only damaged server is the email server, which has been searched and re-searched (and from which AAI has produced tens of thousands of emails and attachments) and which only experienced a technical failure in January 2016, years after the searches had been completed.

In support of its argument that AAI and KAII have not been forthright about the facts related to the damaged KAII server, *Boeing* is actually the party that misrepresents the facts related to the server by improperly putting its own words into a quote from a letter from KAII's counsel and using its own revisions to blatantly misrepresent what KAII's counsel was saying. This is clear from a plain reading of the letter and a comparison to Boeing's "quote." That letter states: "KAII does have a central network but no document management system. Some older electronic data is stored on individual computers. The volume of that data is believed to be less than 1.5TB." Doc. 158-12 at 2. However, Boeing represented this letter as stating that KAII in 2015 "made representations about the volume of electronic documents it had in its possession: it suggested '[t]he volume of that data [on the server] is believed to be less than 1.5 TB.'" Doc. 219 at 8. Boeing's use of bracketed language in this sentence is a misrepresentation of what counsel for KAII stated in its May 2015 letter to Boeing. Moreover, Boeing is conflating two separate matters—(1) KAII's discussion about its central data-storing network (located on various servers, as counsel for AAI previously disclosed to Boeing, *see* Ex. A at 34 n.4) and (2) electronic data stored on individual computers—with the damaged KAII email server – a server that counsel for

KAII separately addressed in its May 2015 correspondence, *see* Doc. 158-12 at 2 ("KAII has an email server that serves as an archive for some former employees of KAII, AAI and Pemco Aeroplex. Use of that server was discontinued 12 to 18 months ago. . . . The server is located at the KAII facility in Birmingham."). Boeing's confused and incorrect charges against KAII and AAI in its argument about KAII's "status of servers" are simply untruthful and were asserted in such a manner as to create a reasonable inference of intentional twisting of the record.

Moreover, Boeing repeatedly refers to documents on this failed server that may be permanently lost because AAI did not preserve its search terms. *See* Doc. 219 at 5 ("Exacerbating the loss of AAI's search terms, Kaiser admits that it does not know if its servers are still functional, which means that whatever documents AAI did not obtain may be permanently lost.") (citing Doc. 215 at 3 ("As previously reported to counsel for the parties and the Special Master, the server containing emails and electronic information of KAII and AAI will not power up. Fortunately, before the server was powered off its contents had been the subject of extensive searches as discussed below.")). The email server – the server that is currently experiencing technical difficulties – was searched in 2013 using the list of defined search terms that AAI disclosed to Boeing and the Special Master in its April 27, 2016 submission. *See* discussion *supra*. AAI produced all relevant, responsive, and non-privileged emails and attachments containing those search terms literally years before the email server suffered a technical failure in January 2016. Accordingly, Boeing's protestations regarding potentially lost documents on this server are simply wrong. For this reason, among a number of other reasons discussed elsewhere herein, there is no need to conduct additional searches on this faulty server (even if it is restored) using the search terms that Boeing has first proposed at this late date (many of which are duplicative or are more narrow iterations of the broad search terms

that were already used to search this email server, *compare* Doc. 219-1 *with* Doc. 214 at 4-5).

3. **Boeing implies that AAI should have already provided its search terms to Boeing prior to its April 27, 2016 submission.**

**Fact: The parties <u>never</u> negotiated search terms or requested search terms from each other until Boeing jumped on the search term band wagon for the first time after it moved to enforce the KAII Subpoena. To the contrary, the parties operated on a mutual basis of (1) identifying custodians whose records were to be searched and (2) conducting such searches for all "relevant and responsive" documents.**

In addition to stating, incredibly and in the face of hard evidence otherwise, that AAI did not provide the search terms used in its keyword searches in its April 27, 2016 submission, Boeing also seems to imply that AAI has somehow been delinquent in its prior disclosures regarding its document search and production efforts in this case because it had not disclosed those terms to Boeing previously. *See* Doc. 219 at 4 ("Most critically, AAI, after realizing that it had not already provided search terms to Boeing, indicated that it would do so."). It cannot be disputed that prior to the April 15, 2016 hearing, Boeing **<u>never</u>** asked to negotiate search terms with AAI and **<u>never</u>** requested a list of the search terms that AAI used to locate the nearly 1,000,000 pages of documents AAI has already produced in this case. Indeed, Boeing has never provided its search terms to AAI for the sound reason that the parties operated here in a reciprocal manner. Boeing's protestations regarding AAI's alleged failure to previously provide its search terms rings very hollow, as is evidenced by the following timeline and documents:

September 19, 2011 – AAI serves initial Requests for Production to Boeing with complaint, in Jefferson County Circuit Court. Such RFPs require production of at least twenty-four (24) specifically-named Boeing personnel (*i.e.* custodians).

October 2011 through March 2013 – Case effectively stayed because of Boeing's motion practice.

March 20, 2013 – Judge Proctor enters an order granting in part, denying in part Boeing's Motion to Dismiss the Second Amended Complaint. Doc. 55.

March 22, 2013 – Mike Rediker sends correspondence to counsel for Boeing

regarding commencing discovery. *See* Exhibit E.

March 27, 2013 – Tom Warburton sends correspondence to Mike Rediker regarding amending the scheduling order and other items related to discovery. **No mention of negotiating or exchanging search terms or custodians.** *See* Exhibit F.

April 1, 2013 – Counsel for AAI circulates a Proposal for Parties Document Production Formats and Protocols to counsel for Boeing. **No mention of negotiating or exchanging search terms or custodians.**

April 12, 2013 – Counsel for Boeing circulates Boeing's Proposal for Parties Document Production Formats and Protocols. **No mention of negotiating or exchanging search terms or custodians.**[3]

May 24, 2013 – Boeing serves its First Requests for Production to AAI. The only "Instruction" related to ESI states: "Electronically Stored Information (ESI) shall be produced in accordance with the parties' protocol for production of ESI. Defendants reserve the right to provide additional instructions regarding the production of ESI, in the event the parties cannot reach agreement on a protocol for production of ESI." **Boeing does not include a list of proposed search terms or identify proposed custodians.** *See* Exhibit G.

2013-2015 – AAI and Boeing produce documents in a rolling production format. **No negotiations regarding search terms take place. Boeing never asks AAI for search terms.**

July 1, 2014 – AAI serves Notice of Rule 30(b)(6) Deposition of Defendant Boeing (Exhibit H) which includes the following Topic:

> Topic 4:    Boeing's collection, gathering, searches, and production of documents and ESI in response to AAI's requests for production of documents, and Boeing's extent of compliance with AAI production requests.

July 28, 2014 – Boeing serves its Responses and Objections to AAI's 30(b)(6) Deposition Notice and **refuses** to respond to Topic 4 by objecting that the information sought was irrelevant and protected by the attorney-client privilege and the work product doctrine. *See* Exhibit I. This is an important event because in these responses and objections, Boeing recognized that it did not plan to reveal its search terms to AAI, and Boeing knew that if it requested from AAI its search terms, then such a request would undercut Boeing's own plan not to reveal its

---

[3] Actually, the parties never reached a full agreement on and never signed any such protocols, but both sides thereafter in practice have made efforts to align their productions (*e.g.*, for metadata) in a reciprocal manner and reasonably close to the last version of the parties' discovery protocols. Regardless, these protocols did not set forth search terms or call for the parties to exchange or disclose search terms.

search terms and thus would undermine its objections to AAI's 30(b)(6) Topic 4.

August 8, 2014 – After meeting and conferring with counsel for AAI, Boeing proposes in response to Topic 4 that it "will produce a source log of custodians and locations or networks from which Boeing collected documents in response to plaintiff's Requests for Production, as well as a brief description of additional targeted document collection efforts that Boeing has undertaken in response to plaintiff's RFPs." Boeing also proposes that AAI informally provide Boeing the same exact same information. **There is no mention of negotiating or even providing search terms.** *See* Exhibit J.

March 9, 2015 – Boeing serves its 30(b)(6) Deposition Notice to AAI, which included the following topic:

> Topic 40: Pemco/AAI's collection, gathering, searches, and production of documents and ESI in response to Boeing's requests for production of documents, and Pemco/AAI's extent of compliance with Boeing's production requests.

Here, Boeing was (in the nature of reciprocal discovery) tracking what Plaintiffs had requested of Boeing in Plaintiffs' 30(b)(6) Topic 4. **Boeing does not request a list of search terms used by AAI.** *See* Exhibit K.

March 27, 2015 – In response to Boeing's Topic 40, AAI states: "Consistent with the Parties' agreement regarding Plaintiffs' 30(b)(6) Deposition Topics 4 and 5 to Boeing, Plaintiffs will produce a source log of custodians and locations or networks from which Plaintiffs collected documents in response to Boeing's Requests for Production as well as a brief description of additional targeted document collection efforts that Plaintiffs have taken in response to Boeing's RFPs." *See* Exhibit L. This event is also very important. The principle of reciprocity in discovery scope and method of responding is cited and relied upon in AAI's statement. The reason why Boeing did not object is clear: Boeing did not wish to disclose its own search terms and searching methodology (and had objected to disclosing on work product grounds). This response states (as was true) that the parties had agreed to the reciprocal methodology of disclosing document searches and collections.

May 29, 2015 – Boeing provides AAI with a written response to Topic 4 which provides scant information regarding Boeing's search and production of documents. *See* Exhibit M. **Boeing does not provide AAI the search terms that it used to locate relevant and responsive documents.**

July 30, 2015 – AAI provides Boeing a written response to Topic 40 that is consistent with the parties' agreement regarding such topic. The written response to Topic 40 does not include a list of search terms because Boeing did not ask for and neither party had agreed to provide such a listing to the

other party. *See* Exhibit N.

<u>August 27, 2015</u> – For seven (7) hours, Boeing takes the deposition of Doris Sewell, former Pemco/AAI general counsel. AAI designated Ms. Sewell as the corporate representative for Boeing's Topic 40. During the seven (7) hours she was deposed as the corporate representative, including Boeing examination of how AAI conducted its document production and responses to Boeing requests, Boeing did not ask her a single question regarding any keywords AAI used in searching for and gathering documents.

<u>September 8, 2015</u> – Boeing writes counsel for AAI asking several questions about AAI's written Topic 40 response. *See* Exhibit O. **Boeing does not ask AAI to identify its search terms or question the completeness of AAI's response to Topic 40 because it does not list AAI's search terms.**

<u>October 13, 2015</u> – AAI provides Boeing with a letter and a supplemental written response to Topic 40. This supplemental response does not include a list of search terms because Boeing did not ask and neither party had agreed to provide such a listing to the other party. *See* Exhibit P.

<u>November 5, 2015</u> – Boeing again writes to AAI asking several questions about Topic 40. *See* Exhibit Q. **Boeing does not ask AAI to identify its search terms or question the completeness of AAI's response to Topic 40 because it does include search terms.**

<u>December 16, 2015</u> – Counsel for AAI sends correspondence to Boeing addressing the issues raised in Boeing's November 5, 2015 letter. *See* Exhibit R.

<u>January 27, 2016</u> – Counsel for AAI sends correspondence providing additional information to Boeing regarding Topic 40. *See* Exhibit S.

<u>February 17, 2016</u> – Counsel for Boeing again writes counsel for AAI asking additional questions about Topic 40. *See* Exhibit T. Boeing also asks AAI to supplement Topic 40 to include the information that AAI had provided in previous correspondence that was responsive to the questions Boeing asked about Topic 40. **Boeing does not ask AAI to identify its search terms or question the completeness of Topic 40 because it does not include search terms.**

<u>February 29, 2016</u> – AAI provides to Boeing a supplemental written response to Topic 40 which does not include a list of search terms because neither party had agreed to provide and Boeing had not asked AAI to provide search terms. *See* Exhibit A.

<u>March 3, 2016</u> – Boeing provides AAI a supplemental written response to

Topic 4 which provides scant information regarding Boeing's search and production of documents. *See* Exhibit B. **Boeing did not provide the search terms it used to locate relevant and responsive documents (because the parties had never discussed or demanded the disclosure of search terms).**

Boeing has had three years to inquire about the search terms that AAI used in retrieving documents but has failed to do so at every opportunity <u>until the parties were meeting with the Special Master on April 15, 2016</u>. If Boeing had wanted information about or input into AAI's search terms, it should have requested such information or input three years ago. **If Boeing had complied with Rule 37 at an appropriate time before the fact discovery cutoff on a new demand for disclosure of search terms, Boeing knows (and this Court well knows) that of course Plaintiffs would have demanded that Boeing likewise disclose its search terms, as well as how and to what extent Boeing actually used them, and the result of all of that would have been a need for meet and confer sessions and negotiations.** However, the time to negotiate search terms in this case has long passed. Boeing's attempt to require AAI to re-search KAII's email server at this late date (two and a half months after the fact discovery cutoff) and thus to re-initiate generalized fact discovery in this case far beyond the eight (8) topics specifically at issue in the KAII subpoena – as Boeing has proposed as its "remedy" – is completely without merit in light of Boeing's utter lack of concern about AAI's search terms throughout the lengthy discovery phase of this case and up until now – after the close of discovery.[4]

If AAI is required to restore and re-search the email server for the search terms Boeing has identified or any portion thereof, then Boeing should immediately be ordered to provide AAI with the list of search terms it used, and AAI should have the opportunity to demand that Boeing use additional search terms to locate documents that AAI knows are

---

[4] This lack of concern was likely intentional, as Boeing did not want to disclose how it was conducting searches.

missing from Boeing's production. Moreover, discovery deadlines and the scheduling order will have to be modified by court order, and Plaintiffs will seek an order compelling Boeing to pay the full costs of such email server restoration and such searches.

> **4.     Boeing makes numerous other misrepresentations in its submission to the Court that are clearly belied by the facts and the record.**

In addition to Boeing's misrepresentations discussed above, there are numerous other misrepresentations or inappropriate implications in Boeing's submission that must be corrected so that the record will reflect the actual facts about the prior proceedings in this action.

- **Boeing's repeated statement that AAI "admitted that it had never searched Kaiser's server for Pemco Purchase Documents" is deliberately misleading.** Doc. 219 at 4. *See also id.* at 8 ("AAI admitted that it did not search for the Pemco Purchase Documents."). The "Pemco Purchase Documents" are documents that Boeing requested from KAII related to KAII's analysis as to whether to purchase AAI assets out of bankruptcy. Boeing attempts to gain traction by depicting counsel for AAI as somehow shirking its duties in responding to discovery in this matter by not searching for or producing "Pemco Purchase Documents." However, AAI did not search for or produce Pemco Purchase Documents in this case (1) because those documents are KAII documents, not AAI documents and (2) because Boeing did not request KAII's Pemco Purchase Documents from AAI. Those documents actually came into being after AAI went into bankruptcy and at that point came into the possession of KAII, not AAI. As a result, Boeing's attempt to couch this obvious fact as an earth-shattering admission is of no import and should be disregarded as such. Regardless, it is AAI's understanding that KAII has already produced all relevant, responsive, and non-privileged Pemco Purchase Documents and had produced such documents prior to Boeing filing Document 219.

- **Despite Boeing's claim, AAI and KAII are not suggesting that the Court should "rely on AAI's production as a complete substitute for Kaiser's production."** Doc. 219 at 7. As previously noted, the KAII Subpoena contains some requests for KAII-specific documents that would not be in AAI's possession, custody, or control and were not AAI documents. Indeed, AAI understands that KAII has already produced all KAII-specific documents, including all documents responsive to Requests 1, 6, 7, and 8 in the subpoena, as well as some documents responsive to Request 2. AAI has argued that it has already produced all relevant documents that are responsive to Boeing's requests to KAII for Pemco financial documents (Requests 3, 4, and 5), but it is clear that AAI's document production does not and cannot serve as a complete substitute for all of KAII's production in response to all eight (8) items in the KAII Subpoena. Again, this point is evidenced by KAII's production of over 3600 pages of documents to Boeing in response to the KAII Subpoena. Therefore, Boeing's attempt to hold AAI's production to some elevated standard is improper, and Boeing's incorrect and untrue statements – such as asserting that AAI is claiming "that its searches were sufficient to grab every relevant document responsive to Boeing's subpoena to Kaiser," Doc. 219 at 7 n.2 – are to be disregarded.

- **AAI has not admitted or conceded that the documents listed in the appendices to its April 27, 2016 submission are relevant to the claims and defenses in this case as Boeing claims.** Boeing states that AAI has made a "concession" that the documents listed in the appendices to its April 27, 2016 submission are relevant and that "AAI does not even try to argue otherwise." Doc. 219 at 10. This statement is false. AAI explicitly stated,

  > **AAI's counsel does not believe that these documents are relevant and proportional to the needs of this case.** However, because AAI and its

21

> counsel want to move this case forward, they are willing to forego arguments over the relevance of these documents and are willing to produce any of the listed documents to Boeing with two conditions.

Doc. 214 at 21 (emphasis added). AAI offered to produce these documents in an attempt to reach a compromise with Boeing to move this dispute forward, but, as AAI has often had to say in this case, "no good deed goes unpunished." Despite AAI's statement and intent, Boeing somehow interpreted this offer to move forward as a "concession" that these unproduced documents are relevant. Despite AAI's position that these documents **are not relevant**, AAI is nonetheless in the process of producing the documents from these lists that Boeing has requested.

- **Of the thousands of unproduced and non-relevant documents that AAI has listed for Boeing, fewer than 100 lack a date, and all but three documents are listed with a descriptive title or subject or, at the very least, the document's file name and filepath.** In spite of these facts, Boeing brazenly represents to the Court and to the Special Master that "[m]any of the documents AAI identifies as unresponsive have no description or date whatsoever." Doc. 219 at 11 (emphasis added). This assertion is simply untrue and misrepresents the information that AAI provided to Boeing and filed with this Court. Boeing's claim further ignores the point that AAI previously reviewed the documents before determining that there was no need to produce them.

- **The caselaw that Boeing cites in support of its argument that AAI has inadequately described its efforts at obtaining, gathering, reviewing, and producing documents in this case is inappropriate and inapplicable.** Boeing states that "AAI's lack of documentation for its searches makes it impossible for AAI to defend the reasonableness of the searches it is relying on as a substitute for Kaiser's compliance with Boeing's

subpoena." Doc. 219 at 7. This statement is incorrect on several points. First, AAI *has* documented all relevant information for the only keyword searches that it undertook in retrieving and reviewing documents in this case, and AAI has also described its methodology for how it and its former employees conducted its non-keyword (*i.e.*, manual) searches of AAI's electronic data stored on KAII's servers. AAI has described both of the search methods it used.

Second, neither AAI nor KAII is relying on AAI's document production as a complete substitute for KAII's response to the KAII Subpoena, as KAII has already produced thousands of pages of documents in response to it. Boeing argues that because AAI is attempting to "substitute" its production for KAII's production, AAI's description of its production must be held to a higher standard. *See id.* Boeing fails to cite to any caselaw or any rule that states or supports this proposition (presumably because none exists).

Moreover, while Boeing makes it "clear" that it is "not arguing that AAI's searches were inadequate" for responding to Boeing's discovery requests, Boeing also fails even to attempt to show how AAI's document gathering and production failed to produce the non-privileged, relevant, and proportional documents implicated in the financial document requests in the KAII Subpoena. Boeing must make some showing that AAI has failed to produce relevant documents in response to Boeing's request for production to AAI in order to be entitled to wide-ranging additional discovery. *See FormFactor, Inc v. Micro-Probe, Inc.*, No. 10-03095, 2012 WL 1575093, at *7 (N.D. Cal. May 3, 2012) (denying motion to compel additional production because defendant "has not made a showing of what specific documents have been withheld and why those

documents are relevant to its defense of this case"). Boeing has not attempted to show and indeed cannot show how AAI's financial documents from 2004, which it seeks in the KAII Subpoena, are relevant to the claims and defenses in this action, particularly when it limited its request for financial documents propounded to AAI to the years 2005-2010 (the obvious and relevant time period). *See* Doc. 214 at 14 (discussing Boeing RFP 22).

Further, KAII and AAI have previously discussed how the only real difference between Boeing's financial document requests via the KAII Subpoena and via discovery requests to AAI is that Boeing's requests to KAII are overbroad and seek irrelevant documents while the requests to AAI are more narrowly tailored. Boeing does not and cannot demonstrate that AAI's meticulously-described process for the retrieval and production of financial documents was insufficient to produce all relevant documents responsive to Boeing's overbroad subpoena request for Pemco financial documents in its KAII Subpoena.[5] Further, as shown in AAI's submission, AAI has already established that it has already produced the relevant and proportional AAI financial documents. *See*

---

[5] Boeing's claim that AAI has merely "summarily list[ed] the number of pages [it] produced and the time and effort it has invested" is belied by even a cursory review of AAI's submission. Doc. 219 at 7 (quoting *Smith v. Life Ins. Co. of Am.*, No. 07-681, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009)). First, the *Smith* case that Boeing quotes from dealt with a motion to compel where the moving party (unlike Boeing here during the pre-cutoff time period) had requested that the other party produce a list of all of the search terms that it used in its electronic keyword search for responsive documents. *See Smith*, 2009 WL 2045197, at *7. Here, Boeing did not request a list of search terms during the fact discovery time period. Yet, AAI has provided to Boeing a complete list of all search terms that it has ever used in keyword searches. *See* Doc. 214 at 4-5. Second, AAI provided the Court and Boeing with over thirty (30) pages of information regarding its document searching, gathering, reviewing, and producing activities in this case. *See generally* Doc. 214. Prior to filing its accounting with the Court, AAI had also previously provided Boeing with numerous letters and detailed initial and final responses to its Rule 30(b)(6) Topic 40, which sought testimony from AAI on "Pemco/AAI's collection, gathering, searches, and production of documents and ESI in response to Boeing's requests for production of documents, and Pemco/AAI's extent of compliance with Boeing's production requests." For Boeing to argue that AAI has merely listed the number of pages it has produced in this case along with a list of the time and effort it has invested in producing those pages is absurd. The level of detail regarding AAI's searching and production efforts that AAI has provided to Boeing is far more than any that counsel for AAI has ever provided to any other court or opposing counsel in more than 100 years of combined litigation experience, including MDL proceedings, class actions, and other complex litigation. This assertion by Boeing is particularly inappropriate given a comparison of the information that AAI has provided on this topic with the scant, wholly-generalized information that Boeing provided AAI in response to a similarly-worded 30(b)(6) topic and in the face of questions from AAI regarding whether or not Boeing has actually searched for and produced all relevant and responsive documents in this case. *Compare* Ex. A at 33-37 *with* Ex. B at 1-4. *See also generally* Doc. 214.

Doc. 214 at 14-21.

Finally, the caselaw that Boeing does cite in support of its argument that AAI must be held to some sort of higher standard in describing its financial document search and production does not actually support this contention and moreover is simply factually and legally inapplicable. The *Victor Stanley* case that Boeing relies upon as "an influential opinion" may indeed be influential – but not as to the facts presented here. In that case, the issue before the Court was whether the defendants in the case had conducted a keyword search that was sufficiently adequate to prevent the defendants from having waived the attorney-client privilege with regard to privileged documents that were produced in spite of their keyword search. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 259 (D. Md. 2008) (evaluating defendants' ESI search process to determine "the reasonableness of the precautions taken to prevent inadvertent disclosure" in determining if defendants' inadvertent disclosure waived the attorney-client privilege). Obviously those searches and their underlying methodology would have been subject to intense scrutiny to determine if those processes were sophisticated enough to justify a determination that any privilege documents that slipped through the cracks were actually inadvertently produced. Here, a claimed waiver of attorney-client privilege is not at issue, so the *Victor Stanley* case is clearly distinguishable on its facts.

Moreover, the searches that were being evaluated in that case were all electronic keyword searches. Here, AAI used keyword searches only for its search of Pemco/AAI emails on KAII's server, and AAI has disclosed the terms used in those searches to the Court and to Boeing (even if Boeing ignored them). AAI's searches of other ESI in this action were extensive "manual" searches of electronic documents for any "relevant and

responsive" documents (unconstrained by a limited set of search terms), as previously described. Boeing simply has not raised any issues with AAI's keyword searches of its emails such that the fact-specific holding in *Victor Stanley* would be appropriate here.

**B.      The "Facially Relevant" Documents that Boeing Has Requested From AAI's Exhibits to Its April 27, 2016 Submission (and that AAI Has Already Produced to Boeing), Are Either Patently Irrelevant to This Case or Are Not Responsive to Boeing's Discovery Requests to AAI or the KAII Subpoena.**

In its submission to the Court and to the Special Master, Boeing demands that a large number of the "gray area" documents that AAI provided with its April 27 submission be produced, asserting that these documents are "highly relevant" to the claims and defenses in this case. Boeing even includes in the body of its submission charts that set out what AAI presumes are the best examples of AAI's "gray area" documents that Boeing represents have to be "facially relevant." Once again, Boeing representations to the Court are inaccurate. As will be shown below, AAI rightly excluded these documents from its prior productions after counsel for AAI had individually reviewed each of these documents.

**1.      Boeing's examples of "facially relevant" documents contained in its May 4 submission are anything but.**

Boeing levies weighty allegations against AAI regarding the documents listed on Boeing's charts regarding Exhibits B-F to Doc. 214.  Such accusations are misplaced and false, which Boeing should have known at the time of it filed Doc. 219 on May 4.  A simple review of the documents AAI already produced and AAI's Exhibits B-F would have revealed that many of Boeing's so-called "best examples" cited at pages 12-14 of Doc. 219 were not produced to Boeing because: (1) Boeing had not requested that AAI produce them; (2) they were duplicates of documents that AAI had already produced; or (3) were completely irrelevant to the issues in this case. In some instances, the actual documents listed on AAI's Exhibits B-E had in fact been

produced to Boeing.[6] It is incredible that Boeing would not have even checked AAI's prior production to determine if they had the actual (or duplicates) of the documents listed before accusing AAI of nefarious conduct.

## EXHIBIT B – RANDY PIGG DOCUMENTS

| DOC ID | DOC TITLE | DATE[7] | REASON NOT PRODUCED |
|---|---|---|---|
| RP0032162 | Cost Analysis Man Hours.xls | 3/22/2005 | This document is related to Project 400 for Alaska Airlines and has absolutely nothing to do with this case. |
| RP0032380 | Daily Performance.xls | 12/14/2004 | Boeing did not request financial information from AAI for 2004. AAI cannot be faulted for not producing documents that Boeing did not even request. Regardless, these spreadsheets showing daily performance are of marginal relevance because these documents deal with the day-to-day performance of the repair of the KC-135 airplanes. However, many of these documents were actually produced. *See, e.g.*, AAI_788245. If Boeing had actually looked at one of these documents that had previously been produced, it would know that the information contained in these documents is of no consequence to the actual issues in this case. |
| RP0033600 | Detailed Restatement Workbook | 6/23/2004 | Boeing did not request financial information from AAI for 2004. AAI cannot be faulted for not producing documents that Boeing did not even request. |
| RP0039741 | Monthly Performance Review Metrics.ppt | 6/23/2004 | Boeing did not request financial information from AAI for 2004. AAI cannot be faulted for not producing documents that Boeing did not even request. |
| RP0043600 | Profit Analysis.xls | 12/19/2004 | Boeing did not request financial information from AAI for 2004. AAI cannot be faulted for not producing documents that Boeing did not even request. |

---

[6]  AAI inadvertently listed some documents on Exhibits B-F that had actually been produced.

[7]  Boeing conveniently omits the date (that AAI provided to Boeing) of the documents that it lists in its May 4 submission. *See* Doc. 219 at 12-14. A simple review of the dates of these documents that AAI had not previously produced would show that these documents were not produced because they were outside the date range of documents that Boeing had requested AAI produce (2005-2010). Boeing's original requests for production to AAI – which contain a much more narrowly tailored and reasonable request for relevant Pemco financial documents than what is contained in the KAII Subpoena – only requested such financial documents from 2005 to 2010. *See* Ex. G at 10, ¶ 22 (requesting "[a]ll financial statements, financial projections, financial analyses, and financial audits for Plaintiffs between 2005 and 2010").

| RP0044010 | Q2        Board Presentation | 07/07/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. This document actually contains information related to FY 2001. |
| RP0054029 | Manpower Analysis for 25 Aircraft input 3-3-041 | 3/15/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |
| RP0058841 | Birmingham Recovery Plan.ppt | 9/20/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |
| RP0059263 | P&L  Model  – KC-135 Program.xls | 8/16/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |

**EXHIBIT C – STEVE MILLER DOCUMENTS[8]**

| DOCID | DOC TITLE | DATE | REASON NOT PRODUCED |
|---|---|---|---|
| SM035959 | Boeing    LB    Hr    Accural JE12_2004.xls | 1/18/2005 | Duplicate of documents already produced: AAI_936202; AAI_936214 |
| SM034436 | Averaged – Alternate Pricing Model Pricing_model_PEMCO.XLS | 9/29/2005 | Appeared to be duplicate of documents already produced: AAI_896789[9] |
| SM041225 | Low Band – Alternate Pricing Model Pricing_Model_PEMCO.xls | 9/29/2005 | Appeared to be duplicate of document already produced: AAI_182310 |
| SM043321 | R-( Steve Miller Revised Rates Attach                              2 Pricing_model_PEMCO 4%1.xls | 9/15/2005 | Appeared to be duplicate of documents already produced: AAI_182485 |
| SM050171 | Cash    Flow    review    for Tennenbaum1.ppt | 8/24/2004 | Boeing    did    not    request financial    information    from |

---

[8] As shown *infra*, many of the documents listed in Boeing's chart are actually duplicates of documents AAI had already produced. Boeing's claims that these documents are "facially" and "highly" relevant is directly belied by the fact that Boeing deposed Steve Miller for seven (7) hours and did not use a single one of the duplicates of the below-listed documents that had previously been produced as an exhibit in his deposition.  If these documents were truly "highly" and "facially" relevant as Boeing now claims, it defies logic that they would not have used ANY of these documents in his deposition.

[9] To the reviewer, these documents appeared to be duplicates of documents previously produced, as they are denoted with the same date and contain the same information. Upon a further review and a deeper dive into the metadata, it appears that these documents were saved at different times than the previously-produced documents.  Regardless, these documents are merely drafts, and the final versions of these documents were submitted to Boeing and the government. AAI has produced and Boeing has had the relevant final versions of these documents for years.

|  |  |  | AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |
|---|---|---|---|
| SM051176 | KC135 reduction.doc | 5/13/2005 | Appeared to be duplicate of document already produced: AAI_906246. |
| SM053775 | Beneficial Ownership at 123103.xls | 4/5/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |
| SM053830 | Board of Directors Memo on Revenue Recognition.doc | 3/12/2004 | Boeing did not request financial information from AAI for 2004.  AAI cannot be faulted for not producing documents that Boeing did not even request. |
| SM071678 | May ETC's for USG and KC135.xls | 6/16/2005 | Appeared to be duplicate of document already produced: AAI_906253. |

**EXHIBIT D – JEFF SMITH DOCUMENTS**[10]

| DOCID | DOC TITLE | DATE | REASON NOT PRODUCED |
|---|---|---|---|
| JS012270 | Total Profit by Aircraft 2007 Apr.xls | 5/23/2007 | Duplicate Produced at AAI_918287 |
| JS012278 | Total Profit by Aircraft 2007 Aug.xls | 9/4/2007 | Duplicate Produced at AAI_918295 |
| JS012286 | Total Profit by Aircraft 2007 Dec.xls | 1/21/2008 | Duplicate Produced at AAI_918303 |

**EXHIBIT E – RANDY SHEALY DOCUMENTS**

| DOCID | DOC TITLE | DATE | REASON NOT PRODUCED |
|---|---|---|---|
| 371772–377809 | Documents stored in a folder entitled "Bear Stearns Doc/Data Room CD" | 8/17/2005 | These documents had already been produced |
| 388162, | going concern memo.doc | 4/12/2006 | Duplicate produced at |

[10] Boeing's claims that these documents are "facially" and "highly" relevant is directly belied by the fact that Boeing deposed Jeff Smith for seven (7) hours and did not use a single one of the duplicates of these documents that had previously been produced as an exhibit in his deposition.  If these documents were truly "highly" and "facially" relevant as Boeing now claims, it defies logic that they would not have used ANY of these documents in his deposition.

| 388903 | | | AAI_949719 |
|---|---|---|---|
| 393496 | optionsavailableforgrant.xls | 7/12/2006 | Irrelevant – related to grants |
| 398280 | Boeing Impact Revised.doc | 11/16/2007 | Irrelevant – Draft SEC disclosure |
| 399240 | Ron's Quote.doc | 3/27/2008 | Irrelevant – Draft Press Release |
| 400305 | Tennenbaum Update | 4/3/2008 | Irrelevant – Draft portion of SEC filing |
| AAI_866040 | 04-10 KC135 analysis | 5/9/2010 | This document has already been produced as evidenced by the Bates Number listed as its DocID (this document was inadvertently listed on AAI's Exhibit E).  Clearly, Boeing did not even bother to look at the documents that have been produced in this case. |
| AAI_874044 | BOEINGCOS02_2006 | 3/21/2006 | This document has already been produced as evidenced by the Bates Number listed as its DocID (this document was inadvertently listed on AAI's Exhibit E).  Clearly, Boeing did not even bother to look at the documents that have been produced in this case. |
| AAI_877853 | Over and Above Revenue Calc.xls | 8/17/2006 | This document has already been produced as evidenced by the Bates Number listed as its DocID (this document was inadvertently listed on AAI's Exhibit E).  Clearly, Boeing did not even bother to look at the documents that have been produced in this case. |
| 403745 | 2003-2006 CAS 412 413 Valuations for Pemco Aeroplex Inc.msg | | Duplicate Produced at AAI_922002 |

## EXHIBIT F – MISCELLANEOUS DOCUMENTS

| DOCID | DOC TITLE | DATE | DESCRIPTION |
|---|---|---|---|
| 294018 | Board minutes from February 9, 2011 | 2/9/2011 | Boeing did not ask AAI for 2011 Board Minutes.  AAI cannot be faulted for not producing documents Boeing |

| | | | did not even request. |
|---|---|---|---|
| 335418 | Cost her hour by element R ships | | Irrelevant – Weekly review spreadsheet of costs per plane. AAI produced documents providing comprehensive costs |
| 335425 | Basic, Fixed, O&A for R-06 and R-07 | 00/00/0000 | Irrelevant – this is information related to specific aircraft. AAI provided documents providing comprehensive information relating to the aircraft. |
| 335466 | Meeting with AAI Audit Committee | 03/00/2008 | Overlooked by reviewer, but should have been produced by Grant Thornton in response Boeing's subpoena to Grant Thornton. |
| 335495 | Grant Thornton Response to Audit Committees | 3/21/2008 | Irrelevant – Generic marketing piece from Grant Thornton. |
| 335572 | COSO Internal Control over Financial Reporting FAQs | 06/00/2006 | Irrelevant – generic marketing piece from COSO |
| 335586 | COSO Internal Control over Financial Reporting VOL I, Executive Summary | 06/00/2006 | Irrelevant – generic marking piece from COSO |
| 359833 | Lean Summary chart of Lean Implementation Cost Through 30 April 2006 | 4/30/2006 | Appeared to be a duplicate to the reviewer. There are numerous documents in AAI's production with similar names. |

     2.     **The "gray area" documents that Boeing has requested AAI produce are also irrelevant to the claims and defenses in this litigation.**

Boeing's assertions that many of the documents that AAI agreed to produce (even though AAI did not believe them to be relevant) would turn out to be "highly relevant," Doc. 219 at 14, is without merit. Boeing only requested that AAI produce financial documents for the years 2005 to 2010, *see* Doc. 214 at 14, yet it asked non-party KAII for financial documents going back to 2004. Given the timeframe for Boeing's requests for financial documents to AAI, Pemco/AAI

financial documents for years prior to 2005 and after 2010 are simply not relevant here.[11] Further, it seems to go without saying that a defendant like Boeing would ask the plaintiff for all the documents it believed to be relevant. Thus, the 2005 to 2010 timeframe is the relevant time period for AAI financial documents that Boeing has established in this case, and it is consistent with the allegations in the Third Amended Complaint. However, a significant number of the documents that Boeing requested that AAI produce in Doc. 219 (and that AAI agreed to produce and is in the process of producing) fall outside that relevant time frame, and thus, by virtue Boeing's own discovery request to AAI, such extra documents could not be "highly relevant" as Boeing now claims. For instance, 2,769 of the additional documents that Boeing requested in Doc. 219 were last saved in 2004. In addition, even though Boeing limited the KAII Subpoena to documents from 2004 forward, it nonetheless requested in Doc. 219 that AAI produce 122 documents that had "2003" or "FY03" in the document title, explicitly demonstrating that these documents relate to periods outside those requested in the KAII Subpoena and thus are not responsive or relevant at all, let alone "highly relevant."  Despite this fact, AAI – in an effort to get this case back on track – will produce these patently irrelevant documents as it said it would.

In addition, Boeing requested in Doc. 219 that AAI produce a number of daily, weekly, and monthly financial reports that are not relevant or proportional to the claims and defenses asserted in this case. Boeing did not even attempt to elaborate on how such granular-level detail could be relevant to any matter at issue in this case. For example, 371 of the documents Boeing requested had the term "daily" in the document title that AAI provided to Boeing, and most of those documents were from 2004 and 2005. In addition, 126 of Boeing's requested documents had the word "weekly" or "week ending" in the document title that AAI provided, and most of

---

[11] Despite this fact, AAI already produced its 2004 financials – the Black Book and its 10-K – to Boeing. *See* Doc. 214 at 15.

these documents were also from 2004 and 2005. In addition, 81 of the documents Boeing requested were for monthly reports, even though all of the final monthly reports for the relevant time periods were already part of the AAI "Black Books" that AAI previously produced to Boeing. *See* Doc. 214 at 15. Boeing must not have actually *read* the massive amount of financial documents and granular-level detail which AAI has previously produced, because if it had done so, it could not in good faith have made these kinds of baseless assertions. Despite the fact that this granular level detail requested by Boeing is neither relevant nor proportional to any issue in this case, let alone "highly relevant" as Boeing claims, AAI – as it agreed to do – will produce these documents in an effort to move this case along. However, AAI's willingness to produce this irrelevant material is not, as Boeing baldly asserts, any indication that AAI believes this material to be relevant.

Unlike Boeing, AAI manually reviewed each of the documents Boeing has requested when AAI made its determinations whether to produce them. This manual review revealed important information that cannot be gleaned from a review of document titles, so AAI dug beneath the document titles and file names to conduct actual content review. For instance, Boeing also requested the production of 47 documents that concern employee merit pay raise calculations for sets of employees having absolutely nothing to do with this case. In addition, AAI's review of the "gray area" documents that Boeing has asked AAI to produce further disclosed that: (a) over 140 contain details on C-130 planes that are not at issue in this case and are not covered by the KAII Subpoena; (b) 52 are for headcounts a matter not at issue in this case and not covered by the KAII Subpoena; (c) 33 concern narrative processes or procedures that are not at issue in the case and are not covered by the KAII Subpoena; and (d) 16 describe the schedule for various accounting closings that are not at issue in the case and are not covered by

the KAII Subpoena.

By reviewing the documents on its lists, AAI's reviewers could tell that the following documents listed below – which Boeing requested and claimed were likely to be "highly relevant," Doc. 219 at 14 – were not relevant and did not need to be produced. These facts, which are clear from the face of the documents, are listed in the "Description" section below (which has AAI added for purposes of this submission) and establish that these documents are not relevant or proportional to any issue in this case and are not covered by the KAII Subpoena. Thus, AAI properly withheld these documents from its production.[12]

| **Docid** | **Datesvd** | **Doctitle** | **Description** |
|-----------|-------------|--------------|-----------------|
| 298191 | | Legal and Illegal Drugs.msg | Memo and flier on drugs |
| 298193 | | Legal and Illegal Drugs.pdf | Memo and flier on drugs |
| 360027 | | RE Critical Tools  to Help You Comply With The New Overtime Regulations (1).msg | Email re presentation on complying with new overtime rules |
| 360030 | | RE Critical Tools  to Help You Comply With The New Overtime Regulations.msg | Email re presentation on complying with new overtime rules |
| RP0012445 | 7/5/2005 | RPigg Pay Differential Calc.xls | Individual employee's calculation of difference between this current salary and the one he will receive from another employer |
| RP0017533 | 8/13/2004 | MatBulletin.doc | Memo about returning special tools to the tool control crib. |
| RP0019264 | 4/12/2004 | 04-540-04-03.doc | Claim for $30K against a transport company. |
| RP0028129 | 5/6/2005 | announcement.doc | Announcement of newly hired manager of ISO compliance |
| RP0033109 | 3/4/2004 | David Meeks.doc | Resume |

---

[12] In the interests of judicial economy and because AAI is producing all non-privileged listed documents that Boeing requested, just as AAI said it would do (although some of them will be redacted), AAI is only specifically addressing a small sampling of the documents Boeing requested. Lest Boeing claim otherwise, in doing so, AAI is **not** conceding that the documents outside this sample are relevant or proportional to this case or are covered by the KAII Subpoena.

| RP0033299 | 7/13/2004 | Dennis Wichert 2.DOC | Resume |
|---|---|---|---|
| RP0033806 | 6/6/2005 | Diversity JUNE 05.xls | Diversity Training attendee list |
| RP0033807 | 7/7/2004 | Diversity Training July 122004.xls | Diversity Training attendee list |
| RP0040214 | 6/22/2005 | Org Bulletin-RandyPigg_6-05.doc | Draft Announcement of Randy Pigg's new position at Vulcan |
| RP0040544 | 1/21/2005 | PAG-006  PERFORMANCE EVALUATION.doc | Blank performance evaluation form |
| RP0044269 | 4/8/2005 | Randy Pigg's Schedule.doc | Randy Pigg's Interview schedule |
| RP0045648 | 9/24/2004 | Travel Advance Balances.xls | Employee travel advance balances |
| RP0073287 | 2/15/2005 | Hurricane Ivan Indirect Labor Charges.xls | Indirect labor charges from 2004 related to Hurricane Ivan |
| SM033562 | 4/7/2004 | Accounting Manager or Assistant Controller.doc | Assistant Controller Responsibilities |
| SM034682 | 2/10/2004 | Beverly Rainey.doc | Resume |
| SM038726 | 4/21/2005 | Financial Analyst.doc | Employment requisition form |
| SM051747 | 07/28/2005 | Pelham.2xls | Pelham tennis league contact list |

**C.**  **Boeing's Request that AAI and KAII Restore KAII's Email Server and Re-Search It Using Boeing's Overbroad and Irrelevant Search Terms Would Effectively Reopen Fact Discovery for Boeing, All Under the Guise of the KAII Subpoena.**

As previously noted, Boeing attempts to justify its request for new and additional discovery by setting out two arguments. As demonstrated above, these two arguments – that AAI has lost search terms and that AAI has lost documents on broken servers – are false. Therefore, Boeing has absolutely no justification for seeking brand new, additional discovery and document production, going far beyond the eight (8) written topics of the KAII Subpoena. However, even *if* there was some valid basis for Boeing seeking broad, new discovery from AAI and KAII (which there is not), the discovery that Boeing has proposed by way of searching KAII's email server with new search terms and for new custodians is completely inappropriate. Incredibly, Boeing

has identified 81[13] separate search terms in its proposed "remedy." AAI and KAII should not be put through this unreasonably burdensome, expensive, and time-consuming proposition because: (1) many of these search terms are completely irrelevant to the KAII Subpoena or (2) AAI has already conducted searches using these proposed search terms, and AAI has already produced thousands and thousands of documents containing these terms, or both of the foregoing.[14]

First, the vast majority of the documents that would be captured via Boeing's proposed search terms and custodians **would not be responsive to the KAII Subpoena**. Boeing appears to have forgotten what this entire current proceeding is about. It is evident that Boeing is taking the Special Master's framework for ensuring that all relevant documents responsive to the KAII Subpoena have been produced and is now using it as a ruse to attempt to reopen wholesale fact discovery in this matter, as most of the search terms and custodians that Boeing has proposed have little if anything to do with the topics of Boeing's subpoena to KAII, and all of them constitute new discovery propounded after the fact discovery cutoff. Also, Boeing's brand-new injection of a unilaterally-developed search term list ignores the fact that as previously stated, AAI conducted extensive manual document reviews without limiting the searchers to any fixed set of terms. Boeing's attempt to reopen full fact discovery at this late date using an entirely new method of searching the same material when it never brought up such a request during three years of discovery up to the fact discovery cutoff date should be denied.

Second, as is demonstrated by a review of the list of search terms that AAI has already

---

[13] To avoid this submission being even longer than it already is, AAI is not attempting to address each of the 81 search terms. However, AAI has given many illustrative examples herein. The fact that AAI does not address a particular search term does not mean that AAI agrees to run a search for that particular term. AAI objects to conducting any new keyword searches.

[14] For example, in AAI's prior production, "DCMA" appears in 29,663 documents, "DCAA" appears in 1,154 documents, "Tennenbaum" appears in 2,302 documents, TCP appears in 1,311 documents, "Repair Agreement" appears in 5,859 documents, "06-003" appears in 721 documents, "lean" appears in 2,319 documents, "Evaluation Notice" appears in 567 documents, "F42620-98-D-0054" appears in 1,453 documents. In fact, the only search terms that yield zero results in AAI's production are terms that AAI never used in its operations (and AAI cannot understand why Boeing even brings these up): "loss rate," "rate of loss," and "hit rate."

used to search the server in question and that AAI provided to the Court and to Boeing (but that Boeing apparently overlooked or, worse, willfully ignored), many of the search terms that Boeing has proposed are duplicative (or are narrowed versions) of the broad search terms that AAI has already used. As should have been evident to Boeing in a simple search and review of AAI's production, AAI has already produced tens of thousands of documents that are responsive to Boeing's proposed search terms, and many of them were obtained via keyword searches on the very server that Boeing proposes be searched again at this late date.

1.    **A significant number of Boeing's proposed search terms do not relate to the discovery topics made the subject of the KAII Subpoena such that permitting Boeing's proposed search would re-open general fact discovery in this case.**

Incredibly, Boeing's proposed list of search terms includes terms that are absolutely not relevant to or responsive to the KAII Subpoena. Boeing **admits** that AAI's search and production of documents in response to Boeing's Requests for Production was adequate. *See* Doc. 219 at 7 n.2. So, why should KAII and AAI be forced to restore KAII's email server and re-search it for documents that are **not even possibly relevant or responsive to the KAII Subpoena** but instead are **ONLY** arguably responsive and relevant to Boeing's Requests for Production to AAI?

For example, the KAII Subpoena does not seek the production of documents and communications between the USAF (including DCAA and DCMA) and Pemco/AAI or other government officials.[15] Notwithstanding the actual document requests contained in the KAII Subpoena (which Boeing should know since it drafted the Subpoena), Boeing demands that AAI and KAII incur the expense of re-searching the email server for the following search terms

---

[15] Other examples of terms that are **completely irrelevant to the KAII Subpoena** include Widhagen, (AAI assumes Boeing means "Wildhagen"); FY08 Workspec, LIKE("Sustain* Engineering Service* Contract"), LIKE("FA8119-10-R-0023"); LIKE("RFQ FLT CTL"); Truman (which was a Boeing internal codename for its secretive scheme to dump Pemco at the proverbial last minute, and AAI certainly knew nothing about such secret project or its name); Panzera (former president of Space Vector, a completely separate entity from AAI); Casey (former vice-president of Pemco World Air Services, a separate entity that was sold in 2007).

unrelated to the KAII Subpoena's eight (8) topics:[16]

- {Sue OR Susan OR Susie OR "Mrs."} NEAR(4) Payton) – Mrs. Payton was the United States Assistant Secretary of the Air Force (Acquisition) from 2006 to 2010
- Moore NEAR(4) {"Maj." OR "Maj" OR Major OR Marc OR Mark} – Major Moore was a GFR/FCF Pilot with the USAF
- Koehler – Lieutenant Colonel Koehler was employed by the USAF at the Birmingham DCMA office
- Petros (AAI assumes that Boeing actually means Dianna "Petro**s**") – USAF Source Selection Evaluation Team Leader
- Poussard – USAF procurement officer in charge of the Recompetiton until May 2007
- Reichers – USAF procurement officer in charge of the Recompetition after May 2007
- Wetekam -- USAF Deputy Chief of Staff for Installations and Logistics
- Varner – USAF DCMA
- Moulton – USAF DCMA
- Shelby – ostensibly Senator Richard Shelby
- Sessions – ostensibly Senator Jeff Sessions

**KAII did not even exist when these persons were connected with the events in this case.**

Even though the KAII Subpoena does not seek the production of documents that are dated before 2004, Boeing demands that KAII and AAI re-search the email server for the term "Hauck." Clearly, documents related to Ray Hauck, Pemco's former president, could not possibly be responsive to the KAII Subpoena because **he left Pemco in 2003**, which Boeing should know from the depositions taken and the documents already produced in this case.[17] Moreover, documents related to Boeing's proposed search terms: "510 Master;" "520 Master;" and "530 Master" will also return documents from outside the time frame requested in the KAII Subpoena. Boeing is fully aware (or should be aware from deposing Harold Emery for two (2) days and from Defendant's Deposition Exhibit 3, *see* Doc. 214-1) that "510 Master" refers to year 2001; "520 Master" refers to year 2002; and "530 Master" refers to year 2003.[18] This is yet another

---

[16] AAI has produced numerous documents that contain ALL of these proposed search terms, which Boeing has ignored or does not know.

[17] Regardless of the foregoing. AAI has already produced **7,310** documents that contain the term "Hauck."

[18] It should be noted that AAI produced approximately 100 documents that contain the term "510 Master," 923 documents that contain the term "520 Master," and 1,222 documents that contain the term "530 Master." Moreover, there is no need for KAII or AAI to be forced to re-search the email for the term "540 Master" because AAI have

glaring example of Boeing not knowing the documents that have been produced in this case or Boeing purposefully ignoring AAI's production in order to harass KAII and AAI and/or just an attempt to delay this case in perpetuity.

The KAII Subpoena also does not seek documents related to public relations or lobbying efforts of either KAII or AAI. Again completely ignoring the actual documents requested in the KAII Subpoena, Boeing is demanding that KAII and AAI search for the following terms that are related to public relations firms and/or lobbying firms and unrelated to the specific topics of the KAII Subpoena:

- "Abernathy McGregor"
- Navigators
- Hixson
- Hilley
- Ian NEAR(3) Campbell
- Maltun

AAI has produced numerous documents containing EACH of these search terms, and Boeing has sent subpoenas to both Abernathy McGregor and Navigators for ALL documents related to their engagement by AAI or counsel for AAI. What else could Boeing possibly need in regard to these search terms that it currently does not possess? Moreover, how on earth could documents responsive to these search terms be responsive to Boeing's Financial Document requests to KAII?

2.    **AAI has already searched for and produced thousands of documents responsive to Boeing's proposed search terms.**

The following search terms proposed by Boeing are completely duplicative of the search terms that AAI have already used, *see* Doc. 214 at 4-5, to search Pemco/AAI's email server such that running additional searches using the following search terms that Boeing proposes would

---

already produced 1,176 documents that contain the term "540 Master." If Boeing had read AAI's submission, it would have seen that **AAI have produced Harold Emery's entire electronic files containing these terms**. Doc. 214 at 6.

not yield any additional results:

| Boeing Proposed Term | AAI Search Term[19] | Number of Documents AAI Has Produced |
|---|---|---|
| Boeing | Boeing | 99,348 – meaning nearly half of the documents that AAI produced contain the term "Boeing" |
| *135 NEAR (3) reduc! | 135 | 69,227 |
| {LTRC or LTRA OR LIKE ("Long-Term Requirement* Contract) OR LIKE("Long-Term Requirement* Agreement") OR propriet* OR protest*} NEAR (10) {Boeing} | Boeing | 99,348 |
| {MOA OR Memorandum} NEAR(3) Agreement(10) {Boeing} | MOA<br>Boeing | 1052 (MOA)<br>99,348 (Boeing) |
| Protest* NEAR(3) Agreement NEAR (1) {Boeing} | Boeing | 99,348 |
| "0004 Bridge" | Bridge | 3,670 |
| FY08 Recompete | Recompete | 1,374 |
| Alternat! NEAR(3) Pricing | Pricing | 13,161 |
| FY06 NEAR(5) Bridge | Bridge | 3,670 |
| (*135 OR revenue) NEAR(3) ("oa" OR "over and above") | 135 | 69,227 |

**3.    Boeing's list of proposed custodians for additional searches is both duplicative and puzzling.**

There is simply no valid reason for KAII and AAI to re-search the email server for documents associated with the custodians identified on Attachment 1. As is shown below, AAI has searched for and produced documents for each of the custodians that Boeing has identified in Attachment 1 to Doc. 219. In addition, AAI has produced numerous documents for the

---

[19] Again, it is important to note that AAI only utilized keyword searches using search terms, *see* Doc. 214 at 4-5, in searches on AAI/Pemco email server – the server that that is currently not working and that Boeing proposes be searched again using its duplicative or irrelevant search terms. Note that the total number of documents produced listed here refer also to non-email documents that were gathered and produced as a result of previously-described "manual" searches of the other KAII servers, as well as individual computers, backup files, hard files, etc. in addition to emails and attachments obtained via the aforementioned keyword search. **Thus, AAI produced far more documents through a combination of manual searches, document-by-document reviews, and email keyword searches than a search term-based collection, alone, would have yielded. Boeing's submission utterly ignores that fact and gives zero credit to the huge manual search efforts that AAI conducted.**

individuals listed on Attachment 1 who did not even have Pemco/AAI email accounts. AAI's search of the now currently inoperable KAII email server was exhaustive, and AAI made every effort to produce ALL responsive, relevant, and non-privileged emails and attachments.

      a.      <u>Boeing's list of custodians is duplicative of the custodians AAI has already searched.</u>

Since July 2015, Boeing has known that AAI has already searched the emails of the following custodians (using the keyword terms that AAI identified, per the Special Master's order, on pages 4-5 of Doc. 214). Boeing has provided no justification why KAII and AAI should have to incur the significant costs to it would take to re-search the email server for the **<u>EXACT</u>** same custodians that have previously been searched and then re-review, de-duplicate and re-produce the voluminous documents that have already been produced for **<u>each</u>** of these custodians:

| | |
|---|---|
| Ron Aramini | John Griffith |
| Leah Asencio (née Barnett) | John Lee |
| Harold Emery | Jeff Smith |
| Randy Shealy | Gene Sulprizio |
| Doris Sewell | Ray Hauck (Boeing lists as "Ray Hack") |
| Glenn Hess | Ed Dunlap |
| Tim Walker | James Herring |
| Jim Tuck | Alvin Kemp |
| Gil McSheehy | Sam Porter |
| Brian Cheek | Gene Barnett |

In December 2015, at Boeing's request, AAI searched for **<u>additional</u>** emails for the following custodians identified on Attachment 1 (and others that Boeing does not even list on Attachment 1):

      Jeff Townsend
      Robert Gardner
      Larry Walden
      Mark Logan
      Jackey Pierce
      Steve Miller

In December 2015 and January 2016, AAI produced emails for Mark Logan, Randy Pigg, and Steve Miller (the emails produced for Pigg and Miller had been located on those individuals' "ghost" hard drive images that had been created when they left Pemco/AAI). On February 8, 2016, AAI informed Boeing that it was unable to produce the **additional** relevant emails that had been returned in the searches for the custodians who were searched in December 2015 because of a failure with the server in January of 2016.[20] Regardless of the January 2016 issues with KAII server containing AAI's emails, AAI has already produced the following numbers of emails that were retrieved and produced from the email server:

| Custodian | Number of Emails "To," "From," or "CC" Custodian That AAI Has Already Produced |
|---|---|
| Ron Aramini | 2,210 |
| Randy Shealy | 1,048 |
| Leah Barnett | 701 |
| Doris Sewell | 2,946 |
| Gil McSheehy | 1,469 |
| Jeff Smith | 3,334 |
| Mark Logan | 704 |
| Jackey Pierce | 4,723 |
| Robert Gardner | 4,942 |
| Brian Cheek | 2,885 |
| John Griffith | 1,967 |
| Glenn Hess | 11,882 |
| Harold Emery | 58,598 |
| Tim Walker | 9,390 |
| Jeff Townsend | 1,530 |
| Larry Walden | 2,448 |
| Sam Porter | 5,900 |
| Jim Tuck | 17,354 |
| Steve Miller | 3,893 |

---

[20] As AAI previously informed Boeing, emails to and from these former employees had already been produced from AAI's email searches in 2013. AAI were only unable to produce a small number of additional emails for these employees that were searched for as a result of specific requests from Boeing in the fall of 2015. A server failure sometime in January 2016 precluded AAI from being able to produce these additional emails for these specific former employees. Without question, AAI has already produced voluminous documents for each of these custodians.

| James Herring | 5,132 |
|---|---|
| Gene Barnett | 9,428 |
| Gene Sulprizio | 3,246 |
| Ray Hauck | 2,816 |
| Randy Pigg | 1,084 |
| Ed Dunlap | 3,197 |
| Alvin Kemp | 3,348 |

It is clear that AAI has already searched for and produced thousands of documents from the custodians' emails that Boeing now, at this late date, wants to re-search using its irrelevant and duplicative search terms. These searches – to be performed on a server that has <u>already</u> been searched using keyword terms – would not render any new, relevant documents responsive to the KAII Subpoena, and Boeing's request to re-open discovery at this late date should be denied.

        b.    <u>Boeing has identified custodians that never worked at AAI and have never been custodians on AAI's computer systems.</u>

Boeing is aware or should be aware that **the following individuals did not work as employees for AAI and would not be "custodians"** on AAI's servers that AAI could even search:[21]

    Michael Tennenbaum – former outside director of Pemco/AAI
    Hugh Steve Wilson – former outside director of AAI
    Robert Goldschein – in-house counsel at Tennenbaum Capital Partners, LLC
    Bob Joyal – former outside director of counsel for AAI
    Nicholas Burkow – former Kaiser Group Holdings employee
    Douglas McMinn – former Kaiser Group Holdings employee
    Gen. Tom Richards – former outside director of AAI
    Gen. Ron Yates – former outside director of AAI
    Harold "Skip" Bowling – former outside director of AAI

Regardless, AAI has produced numerous documents and communications between these

---

[21] Moreover, Boeing was <u>already</u> aware of this fact, as it had previously asked AAI to conduct additional email searches for General Tom Richards and Michael Tennenbaum, and counsel for AAI explained to Boeing that AAI could not conduct searches for these individuals because they were not AAI employees. *See* Ex. D at 3 (explaining that General Richards is a former member of the AAI board of directors but that he did not have a Pemco or AAI email address); Ex. at 5 (explaining that counsel for AAI had requested Mr. Tennenbaum's emails and documents that he had in his possession and that all of those documents had already been searched and responsive non-privileged documents had already been produced).

individuals if and to the extent those documents were housed on KAII's server. *See* chart *supra*.

## **CONCLUSION**

The Special Master instructed Boeing to "submit a list of inadequacies in the prior searches of KAII/AAI and a plan for remedying such inadequacies through further search and production." Doc. 212 at 3-4. Obviously, this instruction concerns documents that are requested in the KAII Subpoena, which is the **only** issue before the Special Master to be addressed here. The Special Master did not invite a reopening of discovery, nor any expansion of discovery beyond the eight (8) topics of the KAII Subpoena. In all of Boeing's submissions ot the Special Master and AAI that occurred before February 29, 2016, Boeing portrayed its concerns as being limited and as being tied to those eight (8) topics. Now, belatedly, and after the fact discovery cutoff has passed, Boeing raised two alleged inadequacies – "lost" search terms and "faulty," unsearched servers. As has already been demonstrated, these "inadequacies" are merely made-up issues that were pulled from thin air and are directly belied by the evidence submitted to this Court. Despite this lack of factual basis, Boeing attempts to use these alleged inadequacies as a justification for requesting that the Special Master effectively reopen fact discovery from AAI over two months after the close of discovery under the guise of seeking documents responsive to the KAII Subpoena.

In providing support for this request, Boeing misrepresents the prior proceedings in this case, misquotes counsel for AAI and KAII, ignores AAI and KAII's prior statements to the Court, misconstrues some of AAI and KAII's statements, twists those statements for its own benefit, and broadly mischaracterizes documents that it has not even seen or reviewed. While Boeing's request that AAI and KAII restore and re-search its email server should be disregarded out of hand given the improper justification that Boeing provides for this wild request, even if

AAI *had not* searched the server in question and *had not* preserved the search terms that it used (**which AAI most affirmatively did search**), Boeing's overbroad request for discovery that has been sought at this late date, that is irrelevant to the claims and defenses in this action, and that is **not relevant to the topics in the KAII Subpoena** would nonetheless be due to be denied. AAI is complying with Boeing's requests two and three in its May 4, 2016 submission as AAI said it would, but Boeing's first request is inappropriate, improper, overbroad, and untimely and thus is due to be denied.

Respectfully submitted this the 13th day of May, 2016.

*/s/ Peter J. Tepley*

One of the Attorneys for Plaintiffs

**OF COUNSEL**
J. Michael Rediker (mrediker@rumberger.com)
Joshua D. Lerner (jlerner@rumberger.com) (admitted *pro hac vice*)
R. Scott Williams (swilliams@rumberger.com)
Peter J. Tepley (ptepley@rumberger.com)
Meredith J. Lees (mlees@rumberger.com)
Rebecca A. Beers (rbeers@rumberger.com)
RUMBERGER KIRK & CALDWELL, P.C.
2001 Park Place North, Suite 1300
Birmingham, Alabama 35203
205.327.5550 (telephone)
**Counsel for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, on this the 13th day of May, 2016, served a true and correct copy of the foregoing on the following via the Court's CM/ECF electronic filing system:

R. Thomas Warburton, Esq.
J. Thomas Richie, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104

Craig S. Primis, Esq.
Erin C. Johnston, Esq.
Matthew E. Papez, Esq.
Tia T. Trout-Perez, Esq.
Alexia R. Brancato, Esq.
KIRKLAND & ELLIS, LLP
655 Fifteenth Street NW
Washington, D.C. 20005

/s/ Peter J. Tepley
OF COUNSEL

46