IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM, AND PEMCO AIRCRAFT ENGINEERING SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. AND BOEING AEROSPACE SUPPORT CENTER,<br><br>Defendant. | CIVIL ACTION NUMBER:<br>2:11-cv-03577-RDP |

## REPORT AND RECOMMENDATION

Before the Special Master is Boeing's Motion to Compel Documents in Response to Request for Production No. 31 ("the Motion" or "Boeing's Motion"), which was filed with the Special Master on June 8, 2016. The Motion has since been fully briefed, with AAI submitting a Response on June 21, 2016 ("AAI's Response") and Boeing filing a Reply on June 28,

2016 ("Boeing's Reply").[1]  For the reasons explained below, it is the recommendation of the Special Master that Boeing's Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.  FINDINGS OF FACT

1. On September 22, 2015, AAI issued its Second Requests for Production ("AAI's Second RFPs") to Boeing. Boeing's Motion, Ex. A. Included among AAI's Second RFPs was Request No. 8, which sought the following:

> [A]ll communications You have had with any third parties related to any subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, whether it be a subpoena duces tecum or otherwise.  This request includes but is not limited to all communications with Tennenbaum Capital Partners, LLC; Kaiser Aircraft Industries, Inc.; The Abernathy MacGregor Group; Ernst & Young; Grant Thornton LLP; Shipley Associates; Michael B.

---

[1] Boeing's Motion, AAI's Response, and Boeing's Reply were all submitted to the undersigned in the form of letters, rather than briefs.  While such informal briefing departs from normal practice, both parties—by emails dated August 17, 2016—rejected the opportunity to supplement their submissions in a more formal manner.  As such, the undersigned considers the matter fully briefed.

2

> Taggart; and Dayton Aerospace, Inc. related to subpoenas issued to those entities/individuals.

Boeing's Motion, Ex. A at No. 8.

2. On December 7, 2015, Boeing issued its Third Requests for Production ("Boeing's Third RFPs") to AAI. Boeing's Motion, Ex. B. Boeing's Third RFPs included a request that was largely identical to Request No. 8 from AAI's Second RFPs; indeed, Request No. 31 similarly sought:

> [A]ll communications Plaintiffs have had with any third parties related to any subpoena issued by Plaintiffs or by Defendants pursuant to Rule 45 of the Federal Rules of Civil Procedure, whether it be a subpoena duces tecum or otherwise. This Request includes but is not limited to all communications with Burdeshaw Associates, Ltd.; Slay Enterprises, Inc.; L-3 Communications; Tennenbaum Capital Partners, LLC; Kaiser Aircraft Industries, Inc; The Abernathy MacGregor Group; Ernst & Young; Grant Thornton LLP; Navigators

3

>   Global LLC; Shipley Associates; Michael B. Taggart; and Dayton Aerospace, Inc.

Boeing's Motion, Ex. B at No. 31.

3. AAI objected to Boeing's Third RFPs on January 6, 2016 ("AAI's Objections"), specifically refusing to produce any of the documents sought by Request No. 31 ("the Requested Documents"). Boeing's Motion, Ex. D at 3. In refusing to produce the Requested Documents, AAI cited (1) relevance, and (2) privilege, both in the form of the attorney-client privilege and the work product doctrine. *Id.*

4. On January 13, 2016, Boeing produced documents responsive to AAI's Request No. 8. Boeing's Motion at 2.

5. Over the next four months, AAI and Boeing exchanged a number of letters addressing AAI's refusal to produce the Requested Documents (Boeing's Motion, Exs. E-I), ultimately concluding in May 2015 that they were at an impasse over the issue. Boeing's Motion at 2.

6. So, on June 8, 2016, Boeing filed a Motion to Compel Production of Documents in Response to Request No. 31 ("the Motion" or "Boeing's Motion"). AAI responded on June 21, 2016 ("AAI's Response), reiterating its relevance and privilege objections, but focusing its privilege

4

arguments primarily on the work product doctrine. AAI's Response at 5-8. Boeing replied on June 28, 2016 ("Boeing's Reply").

## II.  CONCLUSIONS OF LAW

For the reasons outlined below, it is the undersigned's legal conclusion that (a) the Requested Documents are relevant; (b) the Requested Documents are not protected by the attorney-client privilege; and (c) the Requested Documents are likely protected by the work product doctrine, but AAI must submit a privilege log if it wishes to continue invoking the work product doctrine as to such documents.

### A.  Relevance

AAI's threshold argument in resisting production is that the Requested Documents are not relevant, AAI's Response at 4 ("Boeing's letter 'motion' in no way sets forth any reason why the communications in FRP 31 could possibly be relevant. The requested post-litigation communications between AAI and its counsel and the subpoenaed parties in this action provide absolutely no information that bear on whether or not Boeing did or did not breach its contractual obligations to AAI between 2005 and 2007."), and, while the undersigned recognizes the underlying merit of AAI's logic, its relevance argument falls on deaf ears, as AAI

5

cannot be permitted to pursue a particular class of documents from Boeing, but then resist Boeing's efforts to obtain the same on grounds of relevance.

AAI attempts to escape the inescapable equity of this conclusion by arguing that Boeing, like AAI, could have resisted production on the basis of relevance and that Boeing's failure to do so does not prevent AAI from making such an objection. AAI's Response at 3 ("AAI concluded that just because Boeing may have produced a few documents in response to a similar RFP does not alter Plaintiffs' relevancy determination or discovery obligations.") (internal citations omitted). However, AAI's argument misses the point: the relevancy of the Requested Documents does not flow from Boeing's production or AAI's objections, but, instead, was determined by AAI's <u>request</u>. Indeed, AAI's Request No. 8 was a declaration of relevance, one that now encompasses the Requested Documents.

### B. Attorney-Client Privilege

AAI also attempts to resist production of the Requested Documents by asserting the attorney-client privilege. It is well established that "[t]he attorney-client privilege exists to protect *confidential* communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88-9*, 899 F.2d 1039, 1042 (11th Cir. 1990) (internal citation omitted) (emphasis added). As would be expected by use

of the term "confidential," it is generally accepted that "a client's and his attorney's communications are not deemed confidential when made in the presence of a third party." *United States v. Gordon-Nikkar*, 518 F.2d 972, 975 (5th Cir. 1975). However, there exists an exception to this general rule—the "common interest doctrine"—and, in both its Objections and Response, AAI invokes this exception in attempting to justify its privilege assertions as to the Requested Documents.[2]

It should initially be noted that the common interest doctrine is "an amorphous concept," existing in different forms and being applied with divergent standards throughout the country. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 714 (5th Cir. 2001).[3] That being said, the concept can be broadly described as follows: "In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential

---

[2] AAI's Objections, Exhibit A at 3 ("[T]his request improperly calls for the production of documents and communications that are protected from disclosure by either the attorney-client privilege or the attorney work-product doctrine *pursuant to the common interest doctrine* . . .") (emphasis added); AAI's Response at 2 ("AAI's primary objections to Boeing's RFP 31 were based upon relevancy grounds and upon claims of privilege/work-product, *including the common interest doctrine.*") (emphasis added).

[3] The Eleventh Circuit has yet to directly address the common interest doctrine, leaving the undersigned to look to the law of other Circuits in applying the doctrine. *See Hope For Families & Community Service, Inc. v. Warren*, 2009 WL 1066525 at *13, n.16 (M.D. Ala. April 21, 2009) (referencing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007)) ("The parties have not cited, and the court is unaware, of any published Eleventh Circuit cases discussing the common legal interest doctrine, as defined in *Seidman*. Nor has any precedent been cited from this circuit that rejects the doctrine. The court finds *Seidman's* analysis persuasive and applies it.").

7

communications . . . where the [communicating] parties [have] undertake[n] a joint effort with respect to a common legal interest . . . [and the] communications [were] made to further an ongoing enterprise." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). "The common interest doctrine, then, has both a theoretical and a practical component. In theory, the parties among whom privileged matter is shared must have a common legal, as opposed to commercial, interest. In practice, they must have demonstrated cooperation in formulating a common legal strategy." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

The leading approach to the common interest doctrine requires that the parties' shared interest be (1) identical, and (2) legal. *In re Teleglobe Communications Corp.*, 493 F.3d at 365. This approach was most famously articulated in *Duplan Corp. v. Deering Milliken, Inc.*, where the court noted: "A community of interest exists among different persons or separate entities where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." 397

8

F. Supp. 1146, 1172 (D.S.C. 1974). Here, AAI has failed to demonstrate that it shared an identical legal interest with the Subpoenaed Parties.

There is little doubt that the Subpoenaed Parties are not strangers to AAI, as AAI has, at one time or another, maintained business relationships with all of the Subpoenaed Parties; however, shared business relationships—even those involving related or mutually-owned companies—do not equate to identical legal interests. *See, e.g.*, *Neighbors Law Firm, P.C. v. Highland Capital Management, L.P.*, 2011 WL 761480 at *4 (E.D. N.C. Feb. 24, 2011) (citing *United States v. Okun*, 281 Fed. Appx. 228, 231-32 (4th Cir. 2008)) ("Defendant conclusorily [sic] asserts that the common interest privilege applies, relying on the fact that [it] is an equity shareholder in HySky and that plaintiffs have asserted a veil-piercing claim about their relationship. But the fact that [Defendant] is an equity shareholder in HySky does not necessarily entitle it to the benefit of the common interest privilege."); *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817 at *8 (D.N.J. June 26, 2008) ("[T]he relationship between plaintiff and IDT was that of a corporation and its controlling shareholder. Simply because in-house counsel enforced the corporation's patents, which would benefit its shareholders, does not mean that they shared a legal interest. Put differently, a legal interest cannot arise simply because a company acts

9

in a way that advances the economic interests of its majority shareholder."); *Bank Brussels*, 160 F.R.D. at 447 ("[T]he common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation."). Indeed, none of the Subpoenaed Parties have ever been involved as party in the various stages of litigation between AAI and Boeing, and the ultimate outcome of such litigation carries no consequences for the Subpoenaed Parties, save for its effect on any attenuated commercial interests that they may share with AAI.

As such, the undersigned concludes that the common interest doctrine is inapplicable in the present situation and cannot be used to justify AAI's assertion of the attorney-client privilege as to the Requested Documents.

### C. Work Product Doctrine

Perhaps acknowledging the uphill battle it faces in withholding the Requested Documents on the basis of the narrow attorney-client privilege (and recognizing the friendlier confines of the broader, more waiver-averse work product doctrine),[4] AAI focuses much of its Response on the

---

[4] Because "the purpose of the work product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client," Charles Alan Wright, Arthur R. Miller, and Richard L.

10

applicability of the latter, arguing that the Requested Documents fall squarely within the ambit of the work product doctrine. AAI's Response at 7 ("[C]ounsel for AAI engaged in communications with those subpoenaed third parties or their counsel to prevent the production of documents protected from disclosure by a privilege or other recognized protection. Those communications are the epitome of the kind [of] documents that are protected under the work product doctrine.").

"The work-product doctrine 'protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation.'" *Hope For Families*, 2009 WL 1066525 at *8 (quoting *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979) (internal citations omitted)). "The core goal of the doctrine is 'to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye towards litigation," free from unnecessary intrusion by his adversaries.'" *Haugh*, 2003 WL 21998674 at *4 (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (internal citations omitted)). Indeed, "[t]he doctrine protects a lawyer's ability to prepare his client's case, protects

---

Marcus, *8 Federal Practice & Procedure* § 2024 (2d ed. 1994) (internal citations omitted), the doctrine is "not automatically waived by the disclosure to a third party." *Hope For Families*, 2009 WL 1066525 at *9 (M.D. Ala. April 21, 2009) (quoting *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000)).

against the disclosure of the attorney's mental impressions, conclusions, strategies, or theories, and also avoids the unfairness that would occur if one party were allowed to appropriate the work of another." *Id.*

Unlike its assertion of the attorney-client privilege, AAI's invocation of the work product doctrine appears to be well founded: evidently, the Requested Documents consist of subpoena-related communications between AAI's attorneys and the Subpoenaed Parties. As such, the Requested Documents would appear to satisfy the two core elements of the work product doctrine, *i.e.*, that covered documents be prepared (1) by an attorney, and (2) in anticipation of litigation.[5] Likewise, if the Requested Documents conform to the undersigned's understanding, they would also be free from any waiver issues.[6]

---

[5] Although withholding parties often try to satisfy the "in anticipation of litigation" requirement by employing a literal—and incorrect—interpretation of the phrase (*i.e.*, the withheld documents would not have been created, but for the ongoing litigation), there seems to be little doubt—at least on the surface—that the Requested Documents come within the more accurate interpretation of the phrase (*i.e.*, the withheld documents were created by or at the direction of an attorney for purposes of advancing a party's litigation position), as AAI was communicating with the Subpoenaed Parties in an attempt to ensure that the Parties were making proper privilege assertions, so as to prevent Boeing from obtaining privileged documents that would jeopardize AAI's ability to pursue its claims at trial.

[6] Given the established relationships between AAI and the Subpoenaed Parties, AAI's disclosure of its work product to such entities does not result in waiver, as the Subpoenaed Parties are not AAI's adversaries. *See, e.g., Niagra Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989) ("Generally, the work product protection is waived when documents are voluntarily shared with an adversary or . . . when protected materials are disclosed in a manner

However, it is axiomatic that the work product doctrine can only be applied on a document-by-document basis, *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) ("Blanket assertions of privilege before a district court are usually unacceptable . . . instead, [an attorney] must present himself with his records for questioning, and as to . . . *each* record elect to raise or not to raise the defense.") (emphasis *not* added), and, accordingly, AAI should be required to produce a privilege log if it wishes to continue asserting the work product doctrine as to the Requested Documents.[7]

## III.   RECOMMENDATIONS

For the reasons outlined above, the undersigned makes the following recommendations to the Court:

---

which substantially increases the opportunity for potential adversaries to obtain the information. However, sharing work product material with a friendly party does not waive the work product protection as it applies to an adverse third party.") (internal citations omitted).

[7] In its Response, AAI not only asserted that the Requested Documents were guarded from disclosure by the work product doctrine, but, as to those involving communications with Tennenbaum Capital Partners and Kaiser Aircraft Industries, Inc., also claimed the protection of "joint defense agreement[s]." AAI's Response at 6 ("AAI has refused to produce these documents . . . because they are protected from disclosure under the work product doctrine and pursuant to a joint defense agreement."). However, given the lack of available information regarding the nature of such joint defense agreements, the undersigned declined to factor the same into his legal conclusions. That being said, if AAI wishes to reassert this privilege basis, it may do so in its privilege log, expounding the parameters of the joint defense agreements, as well as their privilege implications.

- To the extent that Boeing's Motion seeks immediate production of the Requested Documents, the Motion is **DENIED**. However, the Motion is **GRANTED** to the extent that the undersigned recognizes Boeing's entitlement to any Requested Documents not covered by the work product doctrine. To that end, AAI should be required to produce a privilege log **on or before September 21, 2016** that details the application of the work product doctrine on a document-by-document basis. If Boeing wishes to challenge any of AAI's work product assertions, it may do so, filing challenges **on or before October 6, 2016** that detail either (1) why the work product doctrine is inapplicable to the Requested Documents, or (2) why Boeing has *substantial need* for the Requested Documents and why Boeing cannot obtain the information contained in the Requested Documents by other means without *undue hardship*. After review of Boeing's challenges, the undersigned will conduct an *in camera* review of the Requested Documents, if warranted.

Respectfully Submitted,

s/ David J. Middlebrooks
David J. Middlebrooks ASB- 8553-D58D

OF COUNSEL:
LEHR MIDDLEBROOKS VREELAND & THOMPSON, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002
Fax: (205) 326-3008

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Counsel for Alabama Aircraft Industries, Inc., Alabama Aircraft Industries, Inc. – Birmingham, and Pemco Aircraft Engineering Services, Inc.

Counsel for The Boeing Company, Boeing Aerospace Operations, Inc. and Boeing Aerospace Support Center

s/ David J. Middlebrooks
OF COUNSEL

532350