FILED
2020 Apr-17  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **ALABAMA AIRCRAFT INDUSTRIES, INC.,** ) | |
| **ALABAMA AIRCRAFT INDUSTRIES, INC. –** ) | |
| **BIRMINGHAM, and PEMCO AIRCRAFT** ) | |
| **ENGINEERING SERVICES, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | **Case No. 2:11-cv-03577-RDP** |
| ) | |
| **v.** ) | |
| ) | |
| **THE BOEING COMPANY, BOEING** ) | |
| **AEROSPACE OPERATIONS, INC., and** ) | |
| **BOEING AEROSPACE SUPPORT CENTER,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT UNDER**
**FED. R. CIV. P. 59(e) TO ADD PREJUDGMENT INTEREST**

**INTRODUCTION**

Plaintiffs Alabama Aircraft Industries, Inc., Alabama Aircraft Industries, Inc. –

Birmingham, and Pemco Aircraft Engineering Services, Inc. (collectively "Pemco"), move under

Fed. R. Civ. P. 59(e) for prejudgment interest on: (1) the $2,132,038 out-of-pocket expenses

awarded by the jury; and (2) the $374,932.20 sanctions award.

Prejudgment interest on the state law claims is governed by Missouri law, so Missouri's

9% rate applies to the request for prejudgment interest on the jury's $2,132,038 award. But,

because there is no federal rate for prejudgment interest, this Court may exercise discretion as to

whether to award prejudgment interest on the sanctions award and, if so, what rate to use. *See*

*Davidson v. Worldtex, Inc*., 2011 WL 13232560, at *2 (N.D. Ala. 2016) (citing Eleventh Circuit

authority). This Court, however, has applied the 6% legal rate established by Alabama law to

liquidated amounts, *id*., and other courts have used even higher interest rates for a sanctions

award. *See, e.g., Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 21 (1st Cir. 2003).

By statute, Missouri law requires an award of prejudgment interest at 9% per annum when (1) expenses are due; (2) the amount of the claim is reasonably ascertainable; and (3) the obligee has made a demand for the amount due. *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 737 F.3d 1188, 1193 (8th Cir. 2013); *see also* Mo. Rev. Stat. § 408.020. In this case, the expenses became a compensable item of damages owed by Boeing when the Defendants (collectively "Boeing") breached the contracts with Pemco in 2006. And the expenses became "reasonably ascertainable"—and thus liquidated under Missouri law—no later than November 18, 2008 when Pemco submitted declarations and substantial supporting documentation demonstrating the costs of Pemco's bids in the Federal Court of Claims action—where Boeing was a party. Moreover, Pemco made a demand on Boeing by filing this action (initially in state court) on September 9, 2011, which complies with Missouri law on demands for interest. Notably, Pemco used the same methodology when calculating these expenses and submitted the exact same documents as evidence of this $2,132,038 item of damages in both the Court of Claims action and this case—an amount that Boeing did not challenge at the jury trial.

Thus, Boeing owes Pemco prejudgment interest at the 9% Missouri rate on $2,132,038 from September 9, 2011 through the date of judgment—March 20, 2020. This period consists of 3,115 days which, when multiplied by the per diem amount of interest ($525.71), results in $1,637,586.65 as the total amount of prejudgment interest owed by Boeing on the jury award. Accordingly, Pemco respectfully requests that the Court amend the judgment to add this amount of prejudgment interest on this item of damages. In doing so, the Court should note that the amount of interest is a direct result of Boeing's scorched earth litigation tactics, which unnecessarily extended this lawsuit over eight years. Indeed, this prejudgment interest is a tiny fraction of the costs Pemco incurred as a result of Boeing's obstructionist litigation tactics.

#73702260_v5

In addition, the Court should award $67,608.11 in prejudgment interest on the $374,932.20 sanctions award because Boeing insisted on paying this liquidated sum into the registry of court rather than to Pemco, thereby depriving Pemco of the use of these funds. This prejudgment interest amount is calculated by applying Alabama's statutory rate for prejudgment interest in contract cases—6%—to $374,932.20 from March 19, 2017, when Pemco's costs became liquidated (through its fee application to the Special Master) until entry of the judgment. It is appropriate to use the Alabama rate on this damage item because Pemco originally filed this suit in Alabama state court where the sanctions issue would have been decided but for Boeing's removal of the case to federal court. *See Davidson*, 2011 WL 13232560, at *2. Indeed, arguably the Court should apply the even higher rate of 1.5% per month (18% per annum) because Boeing's spoliation could be analogized to an insurer's failure to comply with a statutory mandate, which prompts the 18% per annum rate. *See Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995); *see also Goya Foods*, 344 F.3d at 21 (upholding prejudgment interest at 10.5% per annum on sanctions award).

Again, this prejudgment interest award is the direct result of Boeing's obstructionist tactics. After all, it was Boeing that knowingly destroyed key ESI, causing Pemco to expend substantial resources on that issue. Boeing, therefore, should be held responsible for the full consequences of its course of conduct, including the obligation to pay prejudgment interest on the expense Pemco suffered as a result of Boeing's spoliation. The Court should order prejudgment interest on this item of damage at Alabama's statutory rate for contract cases—6%—which is a reasonable rate considering that the Court would be well within its discretionary power to use an even higher rate.

## FACTUAL BACKGROUND

On March 20, 2020, after a two-week jury trial, this Court entered a Final Judgment in favor of Pemco and against Boeing in the amount of $2,506,970.20, which includes: (1) the jury award of $2,132,038.00, which represents Pemco's out-of-pocket bid costs for the original joint bid with Boeing and its subsequent solo bid; and (2) the award of $374,932.20 that the Court ordered for attorneys' fees and costs in connection with Pemco's Motion for Sanctions. (Doc. 574). The Final Judgment states that these totals are "with interest as provided by law." (*Id.* at 2). And the following facts are relevant to the calculation of prejudgment interest.

Boeing terminated the Recompete MOA with Pemco on June 6, 2006. (Doc. 492 at 7, Undisputed Fact ¶ 23). After the United States Air Force ("USAF") awarded the Recompete Contract to Boeing, following certain bid protests by Pemco, Pemco filed a complaint in the Court of Federal Claims. *See Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1374 (Fed. Cir. 2009). Boeing filed a motion to intervene in that action, which the court granted on July 3, 2008. *Ala. Aircraft Industries, Inc. – Birmingham v. United States*, No. 08-470C (Fed. Ct. Claims), Doc. 16 (attached hereto as Exhibit A).

Pemco's jury award damages were readily ascertainable and liquidated by November 18, 2008 at the very latest. On October 29, 2008, Pemco filed the first Declaration of Randall C. Shealy in the Court of Federal Claims in support of its request for bid costs. (Attached hereto as Exhibit B). Mr. Shealy calculated that Pemco incurred $2,157,933.51 in bid and proposal costs in responding to the USAF's Requests for Proposal for the KC-135 Programmed Depot Maintenance contract. (*See id.* at ¶ 14). In his thorough calculations, Mr. Shealy relied on a significant amount of supporting documentation which Pemco filed in the Court of Claims on October 28, 2008, which was also introduced at trial in this action. (*See* PX 335). On November

4

18, 2008, Pemco filed a second Declaration of Randall C. Shealy in the Court of Federal Claims. (Attached hereto as Exhibit C). This declaration corrected an earlier error, which reduced Pemco's claim to $2,148,164.96. (*Id.* ¶ 3). The revised Declaration did not affect the supporting documentation that was filed on October 28, 2008, but it was supported by additional supporting documentation, which Pemco also filed in the Court of Claims. (*See* PX 337). Therefore, Pemco's damages were readily ascertainable and liquidated through the supporting documentation filed in the Court of Federal Claims no later than November 18, 2008. (*See* PX 335; 337).[1]

Pemco made an express demand on Boeing for these damages on September 9, 2011, when Pemco filed its original complaint in this action in the Circuit Court of Jefferson County, Alabama. (*See* Doc. 1-1). For Count I, which relates to breach of the MOA, Pemco demanded "judgment against Defendants, jointly and severally, for compensatory damages and other damages in an amount to be determined by a jury, plus costs and such other relief as may be appropriate. (Doc. 1-1, at 74). For Count II, which later became Count III in the operative complaint, for breach of the Non-Disclosure Agreement, Pemco demanded "judgment against Defendants, jointly and severally, for compensatory damages and other damages in an amount to be determined by a jury, plus costs and such other relief as may be appropriate." (Doc. 1-1, at 77). As discussed below, Missouri law requires nothing more of a prejudgment interest demand.

The jury awarded the precise amount sought by Pemco for Boeing's breach of the MOA and NDA, $2,132,038. (Doc. 574). The per diem interest charge under Mo. Rev. Stat. § 408.020 at 9% per annum is $525.71. (*See* Prejudgment Interest Calculation, attached hereto as Exhibit

---

[1] Following the Court of Claims' January 28, 2009 Opinion and Order, Pemco slightly reduced this figure to $2,132,038, the amount of the jury award. But the supporting documentation remained the same and Boeing did not contest Mr. Shealy's calculations at the jury trial.

#73702260_v5

D). There were 3,115 days between September 9, 2011 (the date of the original complaint) and March 20, 2020 (the date of the Final Judgment). (*See id.*). Therefore, the amount of prejudgment interest due for the jury award portion of the Final Judgment is $1,637,586.65, which is 3,115 days multiplied by $525.71. (*See id.*).

For the sanctions portion of the Final Judgment, Pemco made a demand on Boeing on July 20, 2016, when it filed its sanctions motion. (Doc. 227). The amount became reasonably ascertainable by March 19, 2017, when Pemco submitted its fee application to the Special Master. (*See* Doc. 422 at 2, ¶ 2). The Special Master issued his Report and Recommendation on February 23, 2018. (Doc. 422). The Court adopted the Special Master's Report and Recommendation on March 20, 2018. (Doc. 432). And on June 15, 2018, the Court granted in part and denied in part Boeing's Motion to Stay Payment of AAI's Fee Award, and directed that Boeing post a cash bond in the amount of $375,000 pending the ultimate resolution of the court's sanctions Order. (Doc. 442). This amount consists of $358,734.00 in fees, plus costs in the amount of $16,198.20, for a total of $374,932.20, rounded up by $67.80. (*Id.* at 3 n.1). The Court also noted that "[i]nterest will be dealt with at a later date, if necessary." (*Id.*).

The sanctions award portion of the Final Judgment is $374,932.20. (Doc. 574). The per diem interest amount on the $374,932.20 sanctions award, using the 6% rate specified in Ala. Code § 8-8-1 is $61.63. (*See* Ex. D). There were 1,097 days between March 19, 2017 (the date Pemco submitted its fee application to the Special Master) and March 20, 2020 (the date of the Final Judgment). (*See id.*). Therefore, the amount of prejudgment interest due on the sanctions award portion of the Final Judgment is $67,608.11, which is 1,097 days multiplied by $61.63. (*See id.*).

Finally, given Boeing's dilatory tactics throughout this case, it is unsurprising that the prejudgment interest may seem large as compared to the underlying awards. Below are only some examples of Boeing's litigation tactics that significantly prolonged this case:

- By filing multiple motions to dismiss (*see* Doc. 1-1 at 4 and 152; Doc. 6, Doc. 32, Doc. 34, Doc. 39, Doc. 55, and Doc. 56), Boeing did not file its answer until May 6, 2013 (*see* Doc. 60), which was nearly <u>20 months</u> after Pemco filed its original Complaint on September 9, 2011 (s*ee* Doc. 1-1 at 4).

- Pemco served its First Request for Production of Documents ("Pemco's RFPs") with the summons and complaint on September 19, 2011. (Doc. 1-1 at 110-50; Doc. 542-3). Boeing did not serve its responses and objections until May 13, 2013 (*see* Doc. 75-2), <u>20 months later</u>.

- Boeing also did not begin producing responsive documents until July 11, 2013 (*see* Doc. 75 at 3), nearly <u>two years</u> after it was served with Pemco's RFPs. Boeing did not complete what it claimed was its final document production until February 1, 2016, <u>four and a half years</u> after the original complaint. (*See* Boeing counsel T. Warburton letter producing TBC-01121795 to TBC-01121824, attached hereto as <u>Exhibit E</u>.).

- Pemco served its initial interrogatories to Boeing on October 9, 2013, asking Boeing to identify all Pemco proprietary information received by Boeing and identifying all Boeing personnel who had access to such Pemco proprietary information. Boeing's initial Interrogatory responses served November 25, 2013 contained only objections and obfuscations. Boeing did not provide even a minimum of substantive and responsive information in response to those particular Interrogatories until <u>two years later</u>, when on August 7, 2015, Boeing served its "Amended Responses and Objections" to Pemco's 2013 Interrogatories.

- In February and March of 2015, Boeing served two procedurally-defective, overly-broad subpoenas on Tennenbaum Capital Partners ("TCP"). Through extensive negotiations to appropriately narrow the scope of the documents subpoenaed, TCP agreed, informally, to produce over 20,000 pages of documents, but withheld approximately 1,500 documents for privilege, and provided Boeing a detailed privilege log. In an effort to force TCP to produce documents withheld for privilege, Boeing filed a motion to compel in this Court, instead of the court from which the subpoena was issued (*see* Doc. 185), which was denied on March 21, 2016. (Doc. 202).

- On April 7, 2016, Boeing served a third subpoena on TCP demanding the production of documents identified on TCP's privilege logs, to which both TCP and Pemco objected. Over the next 22 months, Boeing's actions forced the parties to engage in extensive motion practice in the United States Central District of California, this Court, and before the Special Master. In the end, the Special Master and this Court found that numerous documents were privileged. *See* Doc. 424. Out of the thousands of documents TCP

produced, Boeing identified only four of them on its Trial Exhibit List (DX 299 through DX 302, *see* Doc. 528), none of which Boeing used at trial.

- Boeing also issued an overly-broad subpoena to Kaiser Aircraft Industries, Inc. ("KAII") (Doc. 158-3; Doc. 158-4). KAII tried to lessen the expense to KAII by asking Boeing to modify the subpoena to eliminate privileged documents and documents that had already been produced, but Boeing refused. (*See* Docs. 158-10 through 158-12). Boeing then filed a motion to compel (*see* Doc. 158), which resulted in extensive briefing, several reports and recommendations by the Special Master, orders by the Court, and the moving of expert disclosure deadlines. (*See, e.g.*, Doc. 193; Doc. 200; Doc. 201; Doc. 206; Doc. 212; Doc. 214; Doc. 215; Docs. 219-221). On May 20, 2016, the Special Master issued an Order (Doc. 222) that if Boeing wanted this ESI, it would need to pay to fix the KAII server, which had stopped working. Boeing declined to do so. After this discovery dispute, which lasted for over a year, Boeing identified only one KAII document as a trial exhibit (DX 298)—which Boeing did not use at trial (*See* Doc. 528 at 18).

- In January 2016, Boeing agreed to the 30(b)(6) topic and made multiple commitments that its 30(b)(6) witness would be prepared to testify on same. But the 30(b)(6) witness Boeing produced at the February 2016 deposition was so woefully unprepared that she was unable to testify about the components of the incurred costs that Boeing reported and, on numerous instances, could not even say what the entries on documents were or why they were included in Boeing's list of responsive documents. As a result, Pemco had to file an emergency motion for sanctions. On March 11, 2016, the Special Master issued a report and recommendation (Doc. 197), and on April 5, 2016, the court adopted that order (Doc. 208). And months after the original deposition was set, Boeing produced another witness on April 29, 2016 to testify on the Agreed Topic.

- Pemco served its initial Requests for Admission ("RFAs") on April 21, 2014 and October 8, 2014, requesting Boeing's admission and stipulation regarding records in the Joint Appendix from the protest litigation and similar identification of joint and solo bid documents that were contained in Boeing's "TBC" production. But Boeing more than once changed its RFA responses and did not provide final RFA responses on those subjects until August 5, 2016, two years later and more than five months after discovery cutoff under the court's amended Scheduling Order.

In light of these and other actions taken by Boeing which delayed the progress of the case, Boeing should not be heard to complain about the amount of prejudgment interest. Though it may seem like a large percentage when compared to the jury and sanctions awards, that is the direct result of Boeing's own litigation tactics that stretched this case out for so many years.

## ARGUMENT

"Prejudgment interest makes the claimant whole because that party has been wrongly denied the use of its money." *Comm'l Union Assur. Co. of Australia, Ltd. v. Hartford Fire Ins. Co.*, 86 F. Supp. 2d 921, 932 (E.D. Mo. 2000) (citing *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)).

### A.  Prejudgment interest on the Jury's Award for Breach of Contract

In diversity cases, the question of prejudgment interest is controlled by state law. *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007); *see also Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 737 F.3d 1188, 1193 (8th Cir. 2013). As this Court has held previously, Missouri law applies to Pemco's breach of contract claims.

The Missouri statute on prejudgment interest is Mo. Rev. Stat. § 408.020. *Comm'l Union*, 86 F. Supp. 2d at 931. "Under Missouri law, where the statute applies, the award of prejudgment interest is <u>mandatory</u>; it is not a matter submitted to the Court's discretion." *Comm'l Union*, 86 F. Supp. 2d at 931 (emphasis added); *see also Jerry Bennett Masonry, Inc. v. Crossland Constr. Co.*, 171 S.W.3d 81, 90 (Mo. Ct. App. 2005) (holding the trial court erred by not awarding interest at 9% statutory rate); *Comens v. SSM St. Charles Clinic Med. Grp., Inc.*, 335 S.W.3d 76, 82 (Mo. Ct. App. 2011) (holding the trial court erred in finding damages were not liquidated and readily ascertainable in order to award prejudgment interest).

The Missouri statute provides that creditors shall be allowed interest at the rate of nine percent per annum, "when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and a demand of payment is made." Mo. Rev. Stat. § 408.020. Thus, there are three requirements for prejudgment interest: "(1) the expenses must be due; (2) the claim must be liquidated or the amount of the

#73702260_v5

claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due." *Macheca*, 737 F.3d at 1193 (quoting *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 106 (Mo. Ct. App. 2012)).

The "liquidated" amount requirement is relaxed in Missouri. "In order to be liquidated so as to allow interest, a claim must be fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard." *Macheca*, 737 F.3d at 1196 (quoting *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 111 (Mo. Ct. App. 2004)). "[A]n exact calculation of damages need not be presented in order for the claim to be considered liquidated. Damages may still be ascertainable, even in the face of a dispute over monetary value or the parties' experts compute different estimates of the loss." *Macheca*, 737 F.3d at 1196 (quoting *Comens*, 335 S.W.3d at 82); *see also MEMC Elec. Materials, Inc. v. Sunlight Grp., Inc.*, 2012 WL 918341, at *2 (E.D. Mo. Mar. 19, 2012) ("A defendant's denial of liability or of the amount claimed does not alter the fact that the amount claimed can be sufficiently ascertainable to require the award of prejudgment interest."); *Graybar Elec. Co. v. Fed. Ins. Co.*, 567 F. Supp. 2d 1116, 1129 (E.D. Mo. 2008) ("An award of damages that is less than the amount requested does not prevent the court from awarding prejudgment interest on the determined damages."). "The mere fact that a party denies liability or defends a claim against him, or even the existence of a bona fide dispute as to the amount of indebtedness, does not preclude recovery of interest; for it is the character of the claim and not of the defense to it that determines whether it is liquidated." *Jerry Bennett Masonry*, 171 S.W.3d at 90 (quoting *Twin River Constr. Co. v. Pub. Water Dist.*, 653 S.W.2d 682, 685 (Mo. Ct. App. 1983)).

In addition, "[i]f a demand for payment was not made prior to filing of a lawsuit, then the filing itself constitutes a demand." *Macheca*, 737 F.3d at 1196 (quoting *Watters*, 136 S.W.3d at

111); *see also Hawk Isolutions Grp., Inc. v. Morris*, 288 S.W.3d 758, 762-63 (Mo. Ct. App. 2009) (absent an earlier demand, "filing the lawsuit constitutes a demand."); *Rois v. H.C. Sharp Co.*, 203 S.W.3d 761, 767 (Mo. Ct. App. 2006) ("In the absence of a demand for payment prior to filing a lawsuit, the filing of the suit itself is sufficient to constitute a demand."). And "[a]n express allegation in the petition seeking prejudgment interest is not a prerequisite to an award of such interest." *Hawk*, 288 S.W.3d at 763 (quoting *Watters*, 136 S.W.3d at 111); *see also Rois*, 203 S.W.3d at 767 ("[T]he petition need not make a specific request for prejudgment interest. This Court has held that a petition which prays that the court grant 'such other relief as may be proper' is sufficient.") (citing *Watters*, 136 S.W.3d at 111).

This case meets all the requirements under Missouri law for an award of prejudgment interest. *See Comm'l Union*, 86 F. Supp. 2d at 931; *MEMC*, 2012 WL 918341, at *2. Pemco's damages for the jury award portion of the Final Judgment were readily ascertainable by Boeing by November 18, 2008 (the date of the second Declaration of Randall C. Shealy in the Court of Federal Claims). Boeing intervened in the Court of Federal Claims action in which Pemco filed two declarations calculating its bid costs and demonstrating a significant amount of evidence supporting those costs. (*See* Exs. A-C; PX 335; PX 337.) The extensive detail provided in Mr. Shealy's declarations and supporting documentation satisfies the standard that a claim be "fixed and determined or readily determinable" or "ascertainable by computation or by a recognized standard." *Macheca*, 737 F.3d at 1196. And, in any event, "an exact calculation of damages need not be presented in order for the claim to be considered liquidated." *Id.*; *see also MEMC*, 2012 WL 918341, at *2.

At the very latest, Pemco made a demand on Boeing on September 9, 2011. On that date, Pemco filed its original complaint in this action in state court, which constitutes a demand under

#73702260_v5

Missouri law. *See Macheca*, 737 F.3d at 1196; *Hawk*, 288 S.W.3d at 762-63; *Rois*, 203 S.W.3d at 767. For both of the relevant counts in that complaint, Pemco demanded "judgment against Defendants, jointly and severally, for compensatory damages and other damages in an amount to be determined by a jury, plus costs and such other relief as may be appropriate." (Doc. 1-1 at 74, 77.) This is sufficient under Missouri law. *See Hawk*, 288 S.W.3d at 763; *Watters*, 136 S.W.3d at 111; *Rois*, 203 S.W.3d at 767. Accordingly, Pemco is entitled to $1,637,586.65 in prejudgment interest for the jury award portion of the Final Judgment, measured from September 9, 2011, the date of its original complaint. *See supra* at 5-6; Ex. D. Indeed, courts applying Missouri law, including the Eight Circuit, have applied the Missouri statute's mandatory prejudgment interest provision covering extensive time periods. *See, e.g.*, *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 735 F.3d 993, 1007 (8th Cir. 2013) (awarding $3,424,105 in prejudgment interest on $9,504,892 judgment for period covering over four years).

**B.  Prejudgment Interest on the Expenses Caused by Boeing's Spoliation**

For the sanctions portion of the Judgment, Pemco made a demand on Boeing on July 20, 2016, when it filed its sanctions motion. (Doc. 227.) The amount became reasonably ascertainable by March 19, 2017, when Pemco submitted its fee application to the Special Master. (*See* Doc. 422 at 2, ¶ 2.) Thus, as discussed above, Pemco is entitled to $67,608.11 in prejudgment interest on the sanctions award. *See supra* at 6; Ex. D; *see also Goya Foods*, 344 F.3d at 21 (affirming 10.5 % prejudgment interest on sanctions award).

## CONCLUSION

Accordingly, when the prejudgment interest on the contract award is added to the prejudgment interest on the sanctions award, Pemco is entitled to have $1,705,194.76 in prejudgment interest added to the Final Judgment.

#73702260_v5

Respectfully submitted this the 17th day of April, 2020.

/s/ Laurie Webb Daniel
One of the Attorneys for Plaintiffs

**OF COUNSEL**
Laurie Webb Daniel (admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
1180 West Peachtree Street, Suite 1800
Atlanta, Georgia 30309
(404) 817-8500
laurie.daniel@hklaw.com

J. Michael Rediker
Joshua D. Lerner (admitted *pro hac vice*)
Peter J. Tepley
Meredith J. Lees
Rebecca A. Beers
RUMBERGER KIRK & CALDWELL, P.C.
2001 Park Place North, Suite 1300
Birmingham, Alabama 35203
(205) 327-5550
mrediker@rumberger.com
jlerner@rumberger.com
ptepley@rumberger.com
mlees@rumberger.com
rbeers@rumberger.com

***Counsel for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, I have, on this the 17th day of April 2020, served a true and correct copy of the foregoing on the following via the Court's CM/ECF electronic filing system:

R. Thomas Warburton, Esq.
J. Thomas Richie, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

Craig S. Primis (admitted *pro hac vice*)
Erin C. Johnston (admitted *pro hac vice*)
Tia T. Trout-Perez (admitted *pro hac vice*)
Alexia R. Brancato (admitted *pro hac vice*)
Kasdin Miller Mitchell
KIRKLAND & ELLIS, LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel (admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
1180 West Peachtree Street, Suite 1800
Atlanta, Georgia 30309
(404) 817-8500
laurie.daniel@hklaw.com

14