IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. – BIRMINGHAM, AND PEMCO AIRCRAFT ENGINEERING SERVICES, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. AND BOEING AEROSPACE SUPPORT CENTER, <br><br>    Defendants. | Case No. 2:11-cv-03577-RDP |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Post-Remand Complaint. (Doc. # 658).[1] The Motion has been fully briefed. (Docs. # 659, 665, 669).

AAI's Post-Remand Complaint contains one count alleging a violation of the Missouri Uniform Trade Secrets Act ("MUTSA"). (Doc. # 651). In support of its Motion, Boeing makes the following arguments: (1) AAI's MUTSA claim cannot proceed as there are no remaining available damages for AAI to recover because the Limitation of Liability ("LOL") Clause in the parties' September 6, 2005 Memorandum of Agreement ("MOA"), which applied to limit damages on AAI's breach of contract claims, also applies to limit damages on AAI's MUTSA claim; and (2) AAI's Post-Remand Complaint containing the MUTSA claim fails to comply with the Federal Rules of Civil Procedure in multiple respects as it is improperly filled with legal argument, altered

---

[1] For the sake of convenience, Plaintiffs will be referred to as AAI, and Defendants will be referred to as Boeing.

quotes from judicial opinions, and extraneous footnotes that are too burdensome to address. (Doc. # 659 at 7-8).

In response to Boeing's Motion, AAI argues: (1) that Boeing waived the argument that the LOL clause applies to the MUTSA claim (Doc. # 666 at 6); (2) that the LOL clause does not apply to the MUTSA claim, which is independent of the parties' Non-Disclosure Agreement ("NDA"), MOA, or any other contract, and because Missouri public policy prohibits its application to a tort claim (*Id.*); and (3) that the law of the case (by necessary implication) requires this court to conclude that the LOL clause does not apply the MUTSA claim (*Id*. at 7-8).

In reply, Boeing contends that: (1) the LOL clause applies to the MUTSA claim because the claim arose from the relationship governed by the MOA; (2) Missouri public policy only bars exculpatory clauses that exonerate a party from liability, not contract provisions that limit remedies—such as the limitation of liability provision at issue here; and (3) there is no procedural bar to enforcing the limitation of liability provision here because the law of the case does not prohibit the application of the LOL clause to the MUTSA claim. (Doc. # 669 at 7-8).

**I.    Background**

The court presumes some familiarity with the facts of this case[2] and will only set forth facts relevant to the current issues before the court: whether the LOL clause in the parties' MOA applies to AAI's Post-Remand MUTSA claim, and whether that claim is adequately pled.

AAI and Boeing performed Programmed Depot Maintenance ("PDM") work for the United States Air Force's KC-135 Stratotanker fleet. (Doc. # 97 at ¶ 8). In April and May 2005, AAI and Boeing were negotiating language for a new MOA, Work Share Agreement ("WSA"), and NDA, as it was contemplated that the parties would jointly bid on a new PDM recompete contract – with

---

[2] *See, generally*, Docs # 445, # 637-1.

Boeing acting as the prime contractor and AAI as a subcontractor. (Docs. # 365-23, 395 at 11, 296-19, 350-12).

On April 28, 2005, Boeing internally circulated a first draft of a Recompete MOA which included a limitation of liability clause at Section 11.0. (Doc. # 367-4). On May 3, 2005, AAI sent its first draft of the MOA to Boeing, which contained the following provision: "IN NO EVENT SHALL ANY PARTY HERETO BE LIABLE FOR ANY LOST PROFITS, LOST SAVINGS, CONSEQUENTIAL, INCIDENTAL, OR SPECIAL DAMAGES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES." (Docs. # 367-5 at 10; 377-17 at 5). On May 6, 2005, Boeing sent AAI a revised draft MOA, which included a different limitation of liability clause at Section 11.0. (Doc. # 367-6 at 2, 11). On May 11, 2005, AAI sent Boeing another revised draft of the MOA that accepted Boeing's May 6 limitation of liability language. (Doc. # 367-7 at 2, 11). The clause provided that the parties disclaimed any incidental damages, punitive and exemplary damages, and any consequential damages, including but not limited to any profits that the Non-Breaching Parties expected to earn. (Doc. # 367-7 at 11). After May 11, 2005, no further relevant changes were made to the LOL clause. (Docs. # 367-7 at 11, 367-8 at 9-10).

After several months of negotiations, and after multiple drafts of the MOA had been exchanged, Boeing sent AAI "Boeing's final offer for the Re-compete MOA for KC-135 PDM." (Doc. # 350-28). The final MOA was signed on June 3, 2005. (Doc. # 365-18). Exhibit A to the MOA was the WSA, and Exhibit B was the NDA. (Docs. # 341 at 18, 395 at 15, 365-18). The NDA recites its Purpose as follows:

> The Purpose of this Agreement is to set forth the rights and obligations of the parties with respect to the use, handling, protection, and safeguarding of Proprietary Information which is disclosed by and between the parties hereto relating to the

      KC-135 Program Depot Maintenance (PDM) for the purpose of negotiating a Memorandum of Agreement leading to a long-term subcontracting relationship relating to the aforementioned program.

(Doc. # 367-8 at 17).

The final LOL clause, found in § 11.1 of the MOA, under the Section titled "Limited Obligation," provides as follows:

> 11.1  The Parties recognize that one Party ... may fail to perform its obligations under this Agreement ... and thereby cause damage to the other Parties ... . The Parties, having full consideration to the nature of this transaction, agree that *the following categories of damages are disclaimed* by each Party, and the Non-breaching Parties neither expect[], nor will seek, to recover from the Breaching Party *any incidental damages, punitive and exemplary damages and any consequential damages*, including but not limited to the following: (a) any profits that the Non-breaching Parties expected to earn on the Prime Contract or any other contract related to the Program; (b) any costs incurred by the Non-breaching Parties related to resolving the dispute with the Breaching Party arising out of the Breach, including litigation or arbitration expenses and attorneys' fees.

(Doc. # 450-1 at 8) (emphasis added).

Both the MOA and the NDA contain merger clauses. The MOA's merger clause reads:

> **17.0  ENTIRE AGREEMENT**
>
> This MOA *together with its Exhibits and Attachments* contains the entire agreement between the Parties concerning the subject matter thereof and supersedes any previous understanding, commitments or agreements, oral or written.
> . . . .

(Doc. # 40-6 at 10) (emphasis added). The NDA's merger clause reads:

> 13.  Entire Understanding. This Agreement contains the entire understanding between the parties concerning the subject matter hereof, superseding all prior or contemporaneous communications, agreements, and understandings between the parties with respect to the disclosure and protection of Proprietary Information relating to the purpose of this Agreement. The rights and obligations of the parties shall be limited to those expressly set forth herein.

(Doc. # 367-8 at 18-20).

On June 6, 2006, Boeing faxed a letter to AAI titled "Notice of Termination of September 6, 2005 Memorandum of Agreement Between Boeing … [AAI] and L3IS Integrated Systems re: KC-135 PDM Competition." (Doc. # 369-24). The letter explained that "[t]he reduction in requested quantities [of aircraft] is so unfavorable to Boeing that further participation in the Program pursuant to the MOA is no longer practical or financially viable." (Doc. # 244-2). AAI initiated this action on September 9, 2011. (Doc. # 1-1 at 4).

On June 22, 2012, AAI filed a Second Amended Complaint in this action. (Doc. # 34). Count Three of the Second Amended Complaint alleged that Boeing breached the NDA by using AAI's proprietary information in preparing its own successful bid for the KC-135 PDM recompete after terminating the MOA with AAI. (Doc. # 34 at 73-78). Count Five of the Second Amended Complaint was a Misappropriation of Proprietary and Trade Secret Information under Missouri Trade Secrets Act. (Doc. # 34 at 91-100). AAI specifically pled that the breach of the NDA claim was "brought alternatively to Count Five below (alleging violations of the Missouri Trade Secrets Act)." (Doc. # 34 at 73). AAI also pled that its Misappropriation of Trade Secrets claim in Count Five was "brought in the alternative to Counts Three and Four (breach of NDA contract and declaratory judgment as to unenforceability of Limitation of Liability Clause)." (Doc. # 34 at 91-92).

Boeing moved to dismiss the Second Amended Complaint. (Doc. # 39). As to the Misappropriation of Trade Secrets claim, Boeing argued that the Alabama Trade Secrets Act governed the claim, and that under Alabama law, the claim was time barred. (Doc. # 40 at 14-17). On March 30, 2013, the court dismissed the Trade Secrets Act claim in Count Five on statute of limitations grounds. (Docs. # 55, 56). Thereafter, AAI filed a Third Amended Complaint. (Doc. # 97). Count Three of AAI's Third Amended Complaint is the Breach of the NDA claim. (Doc. #

5

97 at 72-84). For obvious reasons -- it had been dismissed -- the Trade Secrets Act claims was not included in the Third Amended Complaint.

The parties each filed motions for summary judgment on the claims asserted in the Third Amended Complaint. (Docs. # 340, 343). The court allowed two breach of contract claims, breach of the MOA and breach of the NDA, to go to trial. (Doc. # 446). However, the court enforced the LOL clause in relation to both pending claims. (*Id*.). That is, the court determined that the LOL clause applied to AAI's claim for breach of the NDA as well as to its claim for breach of the MOA because the NDA was "incorporated" into the parties' main agreement. (Doc. # 445 at 41-43). Thereafter, the court clarified that the LOL clause "specifically bars as consequential damages the lost profits AAI expected to earn related to the Program, *i.e.*, the 'Program Depot Maintenance for the KC-135 Aircraft' or the 'FY08 Recompete.' []. Alternatively, the court conclude[d] that such lost profit damages are consequential, not direct, as a matter of law, and, thus are barred by operation of § 11.1." (Doc. # 454 at 11).

The case went to trial in February 2020. The jury returned a verdict in favor of AAI on both contract claims, finding that Boeing breached not only the MOA but also the NDA. (Doc. # 637-1 at 17). The jury awarded $788,510 to AAI for breach of the MOA, which was the entirety of the costs AAI claimed it had spent in teaming with Boeing to prepare their joint bid. And, the jury awarded $1,343,528 to AAI for breach of the NDA, which was the entirety of the costs AAI claimed it had spent preparing its solo bid. (Doc. # 569).

Both parties appealed. Although AAI prevailed at trial on the breach of contract claims, AAI challenged the dismissal of its trade secrets claim. AAI did not appeal this court's decisions enforcing the LOL clause on both the breach of the MOA and the breach of the NDA. The Eleventh

Circuit made no mention of the LOL clause in its decision. It simply was not before that court. (Doc. # 637-1).

On appeal, AAI argued that, under the NDA's choice of law provision, Missouri's longer statute of limitations applied to its misappropriation of trade secrets claim and it should not have been dismissed as untimely. AAI argued that the NDA's choice-of-law provision was broad enough to govern not only claims for breach of the parties' contracts, but also AAI's misappropriation of trade secrets claim. (Doc. # 637-1 at 21). The Eleventh Circuit agreed. That court held, "[i]n this case we find the language of the NDA's choice-of-law provision sufficiently broad to encompass [AAI's] misappropriation-of-trade-secrets claim." (*Id.* at 23). The court explained that limiting NDA's choice-of-law provision to the contract claims would leave the provision's reference to the "rights and liabilities of the parties to this Agreement" with "no independent meaning." (Doc. # 637-1 at 24). The circuit court remanded the misappropriation of trade secrets claim to this court for further proceedings.

**II.    Standard of Review**

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a >probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

## III.   Analysis

Again, the sole remaining claim in this case is AAI's MUTSA claim. The questions before the court are as follows:  (1) is the Limitation of Liability ("LOL") Clause in the MOA broad enough to limit available damages on AAI's MUTSA claim; and (2) is AAI's Post-Remand Complaint properly pled. (Doc. # 659). The court will address each question, in turn.

### A.   The MOA's LOL Clause is Broad Enough to Apply to the MUTSA Claim

Boeing argues that, because the LOL clause bars recovery of "punitive and exemplary damages," which are not available in contract, the clause necessarily applies to reach at least some non-contract claims. (Doc. # 659 at 14). Employing the Eleventh Circuit's reason for applying the NDA's choice of law provision to the MUTSA claim, Boeing argues that any ruling that concludes the MOA's LOL cause applies only to contract damages would render the provision's reference to the "punitive and exemplary damages" with "no independent meaning." (*Id*.; Doc. # 637-1 at 24).

#### 1.   The Law of the Case Doctrine Does Not Apply Here

AAI argues that this court has already "held" that "the liability limitation applies only to contract claims, and not tort claims." (Doc. # 666 at 6). AAI further argues that this court's

8

purported "holding" is the law of the case because it "went unchallenged on appeal." (Doc. # 666 at 7). The court disagrees.

First, this court's statement that "[u]nder these circumstances, where the liability limitation applies only to contract claims, and not tort claims, it is not unconscionable" is simply not a holding. (Doc. # 445 at 41 (citing *Sports Cap. Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone*, 2014 WL 1400159, at *4 (E.D. Mo. Apr. 10, 2014)). Rather, the cited portion of *Sports Cap. Holdings* addressed Plaintiff's argument in that case that it would be unconscionable for a defendant to "contractually release itself from future liability for" a tort. 2014 WL 1400159, at *4. As the *Sports Cap. Holdings* court explained, "[a]t this time, there is not a negligence claim pending against [the defendant] and, accordingly, there is no determination to be made regarding negligence. The issue of whether [the defendant] can contractually release itself from its own gross negligence is not before this Court." *Id*. The same was true here. Any comment this court made regarding the potential application of the LOL clause to a tort claim was clearly dicta, not a "holding," because (just as in *Sports Cap. Holdings*) there was no tort claim before this court at the time it made that remark.

"Under the law-of-the-case doctrine, an appellate court's findings of fact and conclusions of law are generally binding in all subsequent proceedings in the same case." *Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021) (citing *This That & the Other Gift & Tobacco, Inc. v. Cobb Cty.*, 439 F.3d 1275, 1283 (11th Cir. 2006)); *see also United States v. Collins*, 794 F. App'x 825, 826 (11th Cir. 2019) ("Under the law-of-the-case doctrine, district and appellate courts are bound by findings of fact and conclusions of law made by an appellate court in a prior appeal in the same case, unless the case fits within one of the narrow exceptions to the law-of-the-case doctrine." (citing *United States v. Anderson*, 772 F.3d 662, 668 (11th Cir. 2014)). But here, the

Eleventh Circuit made no findings of fact or conclusions of law regarding the parties' LOL clause. AAI appealed the dismissal of the MUTSA claim on statute of limitations grounds — a question that did not in any way implicate the limitation of liability provision. The LOL clause and its application to the MUTSA claim was simply not before that court — even by implication.

The law of the case doctrine "does not bar consideration of matters that could have been, but were not, resolved in earlier proceedings." *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991) (citation omitted); *see also Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 663 (5th Cir. 1974) (providing that the law of the case doctrine "does not include all questions which were present in a case and which might have been decided but were not"). The Eleventh Circuit could not have resolved the application of the LOL clause to the MUTSA claim -- even by implication -- because this court had never addressed the issue with a tort claim pending. *See United States v. Stein*, 889 F.3d 1200, 1202 (11th Cir. 2018) (declining to consider in the first instance arguments that were never presented to the district court). "'[A] court of appeals, [] reviews claims of judicial error in the trial courts.'" *Stein*, 889 F.3d at 1202 (quoting *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)). As the *Stein* court further explained,

> "[A]s a court of appeals, we review claims of judicial error in the trial courts." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). "If we were to regularly address questions ... that district[ ] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id*.

*Id*. The only question regarding the MUTSA claim that this court addressed was related to the timeliness of the claim. Prior to the appeal, this court never addressed (nor did it have the occasion to examine) the application of the LOL clause to the trade secrets claim. And, the Eleventh Circuit could not have decided by necessary implication any issue not first examined by this court.

10

Further, to the extent it even considered advancing the assertion, AAI would be "misguided in arguing that the 'law of the case' doctrine should [bar] the district judge below from ruling contrary to [itself]." *Robinson v. Parrish*, 720 F.2d 1548, 1549-50 (11th Cir. 1983). Thus, even if this court's statement referenced above were a holding (and, again, it was not):

> To hold that a district court must rigidly adhere to its own rulings in an earlier stage of a case would actually thwart the purpose of the doctrine. New developments or further research often will convince a district court that it erred in an earlier ruling, or the court may simply change its mind. We believe it would be wasteful and unjust to require the court to adhere to its earlier ruling in such an instance.

*Robinson*, 720 F.2d. at 1550. Therefore, the law of the case doctrine, whether by implication or otherwise, simply does not support Boeing's argument that the LOL clause applies to AAI's MUTSA Claim.

### 2. Application of the LOL to Related Tort Claims Gives Meaning to All Language of the Clause

"Sophisticated parties have freedom of contract—even to make a bad bargain, or to relinquish fundamental rights." *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. 2001). "This freedom includes the right to contractually limit future remedies for consequential damages." *Union Elec. Co. v. Chicago Bridge & Iron Co.*, 2015 WL 1262941, at *3 (E.D. Mo. Mar. 19, 2015), *order clarified*, 2015 WL 2193809 (E.D. Mo. May 11, 2015).

"The 'cardinal rule' of contract interpretation is to 'ascertain the intention of the parties and to give effect to that intention.'" *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1075 (8th Cir. 2013) (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). "We must construe a contract 'as a whole so as to not render any terms meaningless,' favoring 'a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions.'" *Affordable Communities of Missouri*, 714 F.3d

at 1075 (quoting *State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n*, 215 S.W.3d 76, 84 (Mo. 2007)).

The Missouri Supreme Court has explained that "a plethora of cases—with which we agree—[hold] that punitive damages are not available where the basis of the complaint is breach of contract, even where the breach is intentional, willful, wanton or malicious." *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 903 (Mo. 1990); *see also McNeil v. Best Buy Stores, LP*, 2014 WL 2442145, at *1 (E.D. Mo. May 30, 2014) (same, citing *Peterson*). Because punitive damages are not available in contract, Boeing is correct that the LOL clause is necessarily broad enough to reach to at least some non-contract claims. Any other construction would leave the provision's reference to punitive damages with "no independent meaning." (Doc. # 637-1 at 24).

Furthermore, the misappropriation of trade secrets claim is related to the contracts between AAI and Boeing. In its Post-Remand Complaint, AAI alleged as part of its MUTSA claim that it "disclosed and delivered its Trade Secrets to Boeing, and Boeing acquired [AAI's] Trade Secrets" pursuant to AAI's "contractual commitments." (Doc. # 651 at ¶ 114). In applying the NDA's choice of law provision to the MUTSA claim for statute of limitations purposes, the Eleventh Circuit observed that it was "clear that [AAI's] misappropriation-of-trade-secrets claim [] arose from the exchange of proprietary information in connection with the parties' teaming arrangement." (Doc. # 637-1 at 24-25). The MOA, which contains the LOL clause, and the NDA, governed the teaming arrangement from which the MUTSA claim arose.[3]

---

[3] Paragraph 6.0 of the MOA expressly incorporates the NDA into the MOA: "PROPRIETARY INFORMATION … Proprietary Information will be treated according to the Non-Disclosure Agreement executed separately by the Parties, incorporated herein by reference as Exhibits 'C' and 'D'." (Doc. # 367-8 at 8). Paragraph 17 of the MOA is a merger clause titled "ENTIRE AGREEMENT" that states "[t]his MOA together with its Exhibits and Attachments contains the entire agreement between the Parties concerning the subject matter hereof[.]" (Doc. # 367-8 at 11) (emphasis added). The NDA was executed on June 3, 2005. The MOA was executed at the end of August and the beginning of September 2005. Thus, the parties deliberately incorporated the pre-existing NDA into the revised MOA, and the latter contains the LOL clause.

In its appellate decision, the Eleventh Circuit held that, because AAI's trade secrets claim "arose from the exchange of proprietary information in connection with the teaming arrangement," that claim is subject to the NDA's choice of law provision. (Doc. # 637-1 at 24-25). If the choice of law provision in the NDA applies to AAI's MUTSA claim, so too does the MOA's LOL clause. This is so because, by its terms, the LOL clause is clearly not limited to contract claims. Any other interpretation of the clause would leave portions of it wholly superfluous — *i.e.*, with "no independent meaning." (Doc. # 637-1 at 24).

### 3. The LOL Clause Does Not Violate Missouri Public Policy

AAI argues that, if of the LOL clause is applied to its statutory tort claim, that would violate Missouri public policy because it would allow Boeing to "exonerate" itself from future liability for an intentional tort. (Doc. # 666 at 14). However, that argument misses the target for a straightforward reason: the LOL clause is not exculpatory. Indeed, AAI's position ignores the distinction between *limiting* liability and exonerating a party from liability.

The principle on which AAI bases its argument is that "one may never exonerate oneself from future liability for intentional torts or for gross negligence." *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996). However, *Alack* was "a case involving adhesion contracts between a business and consumers," not contracts between two sophisticated businesses. *Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 671 (8th Cir. 2021). In *Jacobson Warehouse*, the Eighth Circuit questioned whether the *Alack* principle "applies with equal force to a contract negotiated at arm's length between sophisticated commercial entities." 13 F.4th at 671 (citing *Alack*, 923 S.W.2d at 338 n.4 and *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. banc 2001) ("Sophisticated parties have freedom of contract ... [and] may contractually limit future remedies.")). It then explained that, even if the principle applied, "the

13

Limitation of Liability Provision does not *exonerate* XPO from future liability." *Id.*; *see also In re NHB, LLC*, 287 B.R. 475, 478–79 (E.D. Mo. Bankr. 2002) ("[S]hort of complete exoneration, sophisticated parties may contractually limit their liability to each other for willful acts and gross negligence. Exoneration versus a limitation of liability is a distinction *with* a difference.") (emphasis added). Here, as in *Jacobson Warehouse*, "the Limitation of Liability Provision [] contractually limits both parties' liability to each other, but does not exonerate them. It is, therefore, not contrary to Missouri public policy." 13 F.4th at 672.

### 4. AAI Has Already Recovered All Available Damages

Interestingly, AAI originally pled its breach of the NDA claim and its misappropriation of trade secrets claim in the alternative. That is, AAI pled that the breach of the NDA claim was "brought alternatively to Count Five below (alleging violations of the Missouri Trade Secrets Act)." (Doc. # 34 at 73). And, it pled that its Misappropriation of Trade Secrets claim in Count Five was "brought in the alternative to Counts Three and Four (breach of NDA contract and declaratory judgment as to unenforceability of Limitation of Liability Clause)." (Doc. # 34 at 91-92). Thus, by all appearances, AAI recognized that these separate claims arose out of the same course of conduct. Moreover, as the Eleventh Circuit panel stated, it is "clear that [AAI's] misappropriation-of-trade-secrets claim [] arose from the exchange of proprietary information in connection with the parties teaming arrangement." (Doc. # 637-1 at 25). AAI prevailed on its breach of the NDA claim, and has already been awarded all available damages for Boeing's breach of the NDA.

> Under Missouri law,
>
> A party cannot be compensated for the same injury twice.... whether the injury arises out of contract or tort. Although a plaintiff is entitled to proceed on various theories of recovery, he or she cannot receive duplicative damages; instead he or

14

> she must establish a separate injury on each theory. While a single transaction may invade more than one right, a plaintiff may not be made more than whole or receive more than one full recovery for the same harm.

*Kforce, Inc. v. Surrex Sols. Corp.*, 436 F.3d 981, 984 (8th Cir. 2006) (quoting *Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo.Ct.App.2004) (citations omitted)). This is true even where a plaintiff proceeds against two different defendants. *Kforce,* 436 F.3d at 984. AAI, like Kforce, "received a full recovery under a contract claim and cannot now pursue a tort or MUTSA action for the same injury arising from the same course of conduct." *Id.* at 985. In *Kforce*, the Eighth Circuit held that the district court was correct to dismiss Kforce's MUTSA claim. *Id.*; *see also Mihlfeld & Assocs., Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163, 171 (Mo. Ct. App. 2009) (a plaintiff "is not entitled to multiple recoveries for the same injury. A plaintiff is entitled to proceed on various theories of recovery, but cannot receive duplicative damages."). Because AAI has already been awarded all available damages for its breach of the NDA claim, which was originally pled alternatively to the MUTSA claim, the MUTSA claim is due to be dismissed.[4] *Kforce,* 436 F.3d at 985.

## IV.    Conclusion

The MOA's LOL clause is broad enough to apply to AAI's MUTSA claim. This argument is not barred by the law of the case doctrine, and application of the LOL to related tort claims gives

---

[4] AAI's Post-Remand Complaint asserts one claim. Yet it spans eighty-seven (87) pages, contains a two-page table of contents, and has thirty-nine (39) footnotes (some of which are lengthy). (Doc. # 651). The Post-Remand Complaint contains numerous irrelevant facts; it sets forth allegations about pretrial stipulations, the jury's verdict, and various court's rulings. It also makes legal arguments. Just the "summary" of AAI's MUTSA claim spans five pages and seven paragraphs, including subparagraphs and a single-spaced footnote that takes up half a page. (Doc. # 651 at 33-38).

The Post-Remand Complaint clearly "flouts the 'short and plain statement' requirement of Rule 8(a)(2)." *Rattner v. 1809 Brickell LP*, 2022 WL 4770402, at *4 (S.D. Fla. Aug. 23, 2022). Pursuant to Rule 8(a)(2), a complaint must articulate "a plausible 'short and plain' statement of the plaintiff's claim, *not an exposition of his legal argument*." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (emphasis added). If the sole claim in AAI's Post-Remand Complaint were not subject to dismissal (for the reasons discussed above), the court would, at a minimum, require repleading.

meaning to all language in the clause. Enforcement of the LOL clause in relation to the MUTSA claim does not violate Missouri public policy. Boeing has not been exonerated. AAI has already been compensated for the available damages on its breach of the NDA claim (which was originally pled in the alternative to the MUTSA claim). AAI's remaining MUTSA claim is due to be dismissed because AAI already "received a full recovery under a contract claim and cannot now pursue a [] MUTSA action for the same injury arising from the same course of conduct." *Kforce,* 436 F.3d at 985. Accordingly, Boeing's Motion to Dismiss Plaintiffs' Post-Remand Complaint (Doc. # 658) is due to be granted.

     A separate order will be entered.

     **DONE** and **ORDERED** this October 26, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE